David R. Markham (SBN 071814)
*dmarkham@markham-law.com*
Peggy Reali  (SBN 153102)
*preali@markham-law.com*
Janine Menhennet (SBN 163501)
*jmenhennet@markham-law.com*
Maggie K. Realin (SBN 263639)
*mrealin@markham-law.com*
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, CA  92101
Tel: (619)399-3995; Fax: (619) 2067

**UNITED STATES DISCTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DESERAE RYAN, and TRENT RAU, individually and on behalf of all others similarly situated;<br><br>          Plaintiffs<br>     vs.<br><br>MICROSOFT CORPORATION, a Washington corporation;<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO.:

**ANTITRUST CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiff Deserae Ryan ("Ryan"), and plaintiff Trent Rau ("Rau"), individually and on behalf of all others similarly situated, (collectively, "Plaintiffs") allege the following:

## I.  <u>INTRODUCTION</u>

1.     This class action is brought by Plaintiffs, on behalf of themselves, and on behalf of all others similarly situated, who have sustained injuries or incurred damages arising from Defendant's (defined below) violations of the antitrust and unfair competition laws of the United States and the State of California.

2.     This class action challenges a conspiracy by Defendant by way of Anti-Solicitation Agreements and Restricted Hiring Agreements (both defined below) to fix and suppress the compensation of its greatest assets—its employees.

3.     Without the knowledge or consent of their employees, senior executives from Microsoft Corporation ("Microsoft" or "Defendant") and numerous other companies in the high-technology industry entered into express anti-solicitation agreements with one another, including Microsoft.  Collectively, these agreements shall be known as the "Anti-Solicitation Agreements."

4.     The Anti-Solicitation Agreements, in short, precluded technology companies from "cold calling" (i.e. trying to recruit) each other's employees.

5.     The Anti-Solicitation Agreements effectively stifled competition for skilled employees in the technology field.

6.     Further, without the knowledge or consent of their employees, senior executives from Microsoft entered into an agreement with Google not to pursue manager level and above candidates from one another for "Product, Sales, or G&A [General & Administrative]" positions.  The aforementioned agreement shall be known as the "Restricted Hiring Agreement."

7.  The Restricted Hiring Agreement effectively stifled competition for skilled managerial labor.  Collectively, the Anti-Solicitation and the Restricted Hiring Agreement shall be known as the "Unlawful Agreements."

8.     The Unlawful Agreements that involved Microsoft were not publicly disclosed

ANTITRUST CLASS ACTION COMPLAINT

1  until May 17, 2013.  Before that time, the identities of the companies who were parties to the

2  Unlawful Agreements were unknown to Plaintiffs and unknown to the public.  Not until that

3  time did Plaintiffs have the ability to become aware that, for example, Microsoft and others

4  were parties to the Unlawful Agreements.

5        9.     The intended and actual effect of these Unlawful Agreements was to fix and

6  suppress employee compensation, impose unlawful restrictions on employee mobility, deprive

7  employees of competitive wages, and hinder employees' abilities to advance their careers at

8  other companies.  Defendant's conspiracy and agreements restrained trade and are *per se*

9  unlawful under federal and California law.  Plaintiffs seek injunctive relief and damages for

10  violations of: Section 1 of the Sherman Act, 15 U.S.C. § 1; the Cartwright Act, Cal. Bus. &

11  Prof. Code §§ 16720, *et seq.*; and California Business and Professions Code sections 16600 and

12  17200, *et seq.*

13        10.    Plaintiffs petition this Court to allow them to represent and prosecute claims

14  against Defendant in this class action proceeding on behalf of all those similarly situated.  This

15  class action is brought under Rule 23 of the Federal Rules of Civil Procedure.

16        11.    Plaintiffs, on their own behalf and on behalf of the class defined herein, seek to

17  recover, among other things, the difference between the wages and salaries that class members

18  were paid and what class members would have been paid in a competitive market, and to enjoin

19  Defendant from continuing its Unlawful Agreements.

20  **<u>JURISDICTION</u>**

21        12.    The Unlawful Agreements out of which the claims of the Plaintiffs and the

22  Plaintiff Class arise were discussed, negotiated, agreed upon, performed, and enforced by

23  Microsoft and others in California - particularly in Silicon Valley.  This Court has subject

24  matter jurisdiction over this action under 15 U.S.C. §§ 4 and 16 and 28 U.S.C. §§ 1331 and

25  1337.

26        13.    This Court has personal jurisdiction over Defendant because Defendant

27  employed individuals in the state of California during the class period, and has had substantial

28  contacts within the state of California in furtherance of the injuries and conspiracy described

1  herein.

2      14.    Venue is proper in this judicial district under 15 U.S.C. § 22 and 28 U.S.C. §

3  1391(b)(1)-(2) because a substantial part of the unlawful acts or omissions giving rise to the

4  claims set forth herein occurred in this judicial district, a substantial portion of the affected

5  interstate trade and commerce was carried out in this district, and Defendant resides in this

6  district.

7  **INTRADISTRICT ASSIGNMENT**

8      15.    Under Civil Local Rule 3-2(c) and (e), assignment of this case to the San Jose

9  Division of the United States District Court for the Northern District of California is proper

10  because a substantial part of the events and omissions which give rise to Plaintiffs' antitrust

11  claims occurred within the this division.

12  **PARTIES**

13      16.    Plaintiff Ryan, an individual, is a former employee of Microsoft.  Ms. Ryan

14  worked for Microsoft from approximately April of 2007 to September of 2012 as a Senior

15  Product Manager of the Xbox LIVE Go-to-Market and a Senior Product Manager for

16  Defendant's web based search "Bing" in Redmond, Washington.

17      17.    Ms. Ryan is a resident of the State of California.  Ms. Ryan was injured in her

18  business or property by reason of the violations alleged herein.

19      18.    Plaintiff Rau an individual, is a former employee of Microsoft.  Mr. Rau worked

20  for Microsoft from approximately June 2006 to June 2010 as a Lead Systems Engineer Senior in

21  Seattle, Washington.

22      19.    Mr. Rau is a resident of the State of Washington.  Mr. Rau was injured in his

23  business or property by reason of the violations alleged herein.

24      20.    Defendant Microsoft Corporation Is a Washington corporation with its principal

25  place of business located at One Microsoft Way, Redmond, Washington 98052.

26

27  **FACTUAL BACKGROUND**

28  **A.**    **Microsoft – the Company**

ANTITRUST CLASS ACTION COMPLAINT

21.     Microsoft is an American multinational corporation that develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services, and is best known for its software products such as the Microsoft Windows line of operating systems, Microsoft Office, Internet Explorer web browser, Bing, its Xbox game console and the Microsoft Surface series of tablets.

22.     Microsoft was founded by Bill Gates and Paul Allen on April 4, 1975.  It rose to dominate the personal computer operating system market with MS-DOS in the mid-1980s, followed by Microsoft Windows.  Since the 1990s, it has increasingly diversified from the operating system market and has made a number of corporate acquisitions. In May 2011, Microsoft acquired Skype Technologies for $8.5 billion in its largest acquisition to date.

23.     As of 2013, Microsoft is market dominant in both the IBM PC-compatible operating system and office software suite markets (the latter with Microsoft Office). The company also produces a wide range of other software for desktops and servers, and is active in its web based search product named Bing, the video game industry, the digital services market (through MSN), and mobile phones.  In June 2012, Microsoft entered the personal computer production market for the first time, with the launch of the Microsoft Surface, a line of tablet computers.

**B.     Microsoft's Managers and Above**

24.     Technology industry managers, such as Plaintiff Ryan, were highly sought after and come at a premium because their experience and knowledge base places them in a finite pool of candidates qualified for the challenges and needs specific to managing high technology, sales, or administrative employee groups in the high technology industry.  Likewise, qualified employees above the management level are even more valuable to employers such as Microsoft.  Managers and above at these companies, such as Microsoft, are responsible for supervising and managing a number of employees, employee groups, or divisions.  Plaintiff served as a senior product manager for two of Microsoft's newest innovations – their web based search program named "Bing," as well as its gaming console Xbox.

ANTITRUST CLASS ACTION COMPLAINT

25.     The Anti-Solicitation Agreements and Restricted Hiring Agreements suppressed the wages of Plaintiff Ryan and the Plaintiff Class because it prevented any other companies actively recruit or pursue Plaintiff or the Plaintiff Class thereby letting their salaries and benefits stagnate while the owners and shareholders reaped higher and higher monetary gains.

**C.     Microsoft's Technology Industry Professionals**

26.     Technology personnel such as engineers are in high demand among computer and high technology companies such as Microsoft because they have knowledge and skill base that are essential to the profitable operation of most high technology companies.  Such employees are often responsible for improving operations, developing or contributing to the development of new and/or improved systems, products and services that increase high technology companies' efficiency, productivity, and profitability.  Plaintiff Rau served as a Lead Systems Engineer at Microsoft, where, among other things, he contributed to the re-architecture of a central service that increased revenue of a dependent product from $300 million to $500 million, due to an increase in capacity.

27.     The Anti-Solicitation Agreements suppressed the wages of Plaintiff Rau and the Plaintiff Class because it prevented any other companies actively recruit (i.e., cold call) Plaintiff or the Plaintiff Class thereby letting their salaries and benefits stagnate while the owners and shareholders reaped higher and higher monetary gains.

**D.     The Anti-Solicitation Agreement (i.e. "Do Not Cold Call" List)**

28.     Microsoft was one of several parties to an Anti-Solicitation Agreement otherwise known as the "Do Not Cold Call" list.  Around May 2007, Microsoft agreed to be a party to the Anti-Solicitation Agreement, or "Do Not Cold Call Agreement."  The Anti-Solicitation Agreement provided that Microsoft, and each of the other parties to the Anti-Solicitation Agreement agreed in pertinent part as follows:

"Not to directly cold call into those companies [or their respective subsidiaries]."

29.     These sorts of Anti-Solicitation Agreements have a negative effect on the true

ANTITRUST CLASS ACTION COMPLAINT

value of labor.  In a lawfully competitive labor market, each of the parties to the Anti-Solicitation Agreements would have competed for employees through use of a recruiting method called "cold calling," whereby companies solicit current employees of one or more other companies.  Cold calling includes communicating directly—including orally, in writing, telephonically, or electronically—with another employer's employee who is not expecting the contact, has not specifically asked to be contacted, or who otherwise has not applied for a job opening.

30.    Cold calling serves as an essential and effective recruiting method, particularly because current employees of other companies are often the most highly qualified individuals but are often unresponsive to other recruiting strategies, but that can be lured by promises of higher salaries, bonuses, or better benefits.

31.    By using cold calling to solicit current employees from rival companies, companies benefit by taking advantage of rivals' efforts expended in soliciting, interviewing, and training skilled employees, while simultaneously inflicting a cost on rival companies by removing employees on an employee whom the rival may depend.

32.    For these reasons, cold calling serves as a critical competitive tool companies use to recruit skilled employees, particularly in the high technology industry where companies benefit from obtaining employees with advanced skills and abilities.  By placing restrictions on cold calling, important information regarding certain positions from certain companies is precluded.  For instance, information regarding employee salaries at competing companies are for the most part unknown, decreasing the pressure of an employee's current employer to match a rival's offer and vice versa.  Restrictions on cold calling also limit an employee's leverage when negotiating his or her salary with his or her current employer.  As a result, the effects of cold calling impact all salaried employees of participating companies, regardless of whether or not an employee would have received cold calls but for the agreements.

33.    Agreements not to cold one another's employees benefits companies in two major ways.  One, it alleviates pressure to retain good employees by paying higher salaries.  Two, it suppresses wages because other rivals are not actively soliciting employees through

promises of higher salaries and benefits.

34.     Microsoft's conspiracy and consent to the Anti-Solicitation Agreement suppressed Plaintiffs' and the Plaintiff Class' compensation, while simultaneously restricting competition in the labor market in which Plaintiffs and the Plaintiff Class sold their services.

35.     The Anti-Solicitation Agreement covered most all employees and was not limited by geography, job function, product group, or time period.  Microsoft employees were not informed and did not consent to this agreement.

**E.      The "Restricted Hiring" Agreement**

36.     Additionally, around May 2007, Microsoft, along with several other technology companies, entered into a Restrictive Hiring Agreement, agreeing not to place restrictions on hiring each other's employees by refraining from pursuing each other's employees at any management level or above, even if the employee had unilaterally applied for employment to any of these participating "Restricted Hiring" companies.  Under the Restricted Hiring Agreement, Microsoft and the other parties to that agreement agreed, in pertinent part, as follows:

> "Not to pursue manager level and above candidates for Product, Sales, or G&A roles – even if they have applied to [any of the other parties to the Anti-Solicitation Agreement.]"

37.     The Restricted Hiring Agreement entered into by Microsoft eliminated skilled labor for companies with the intent and effect of suppressing the compensation and mobility of their employees.  Senior executives of Microsoft expressly agreed, through direct communications, to restrict their recruitment and employment of each other's employees. Senior executives from Microsoft actively concealed their unlawful Restricted Hiring Agreements and its participation in the conspiracy.  Other than the most senior executives, managerial employees and above at these companies were not aware of, and did not agree to, these restrictions.

**F.      Department of Justice Investigation**

38.     In approximately 2009, the Antitrust Division of the United States Department

of Justice (the "DOJ") investigated several companies, including Google, and their mutual conspiracy to not solicit one another's employees. The DOJ examined Google's Anti-Solicitation Agreements in question and found that the agreements were "facially anticompetitive" and violated the Sherman Act *per se*. According to the DOJ, the Anti-Solicitation Agreements "eliminated significant forms of competition" and substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities." The DOJ concluded that the Anti-Solicitation Agreements "disrupted the normal price-setting mechanisms that apply in the labor setting."

39.     At the time of the DOJ's investigation and findings, the only defendant disclosed as being a part of the Anti-Solicitation Agreements was Google. After the DOJ's findings, Google signed a settlement enjoining it from making such non-solicitation agreements again. Thereafter, on or about May 17, 2013, the identity of all (or almost all) of the companies who were parties to the Anti-Solicitation Agreements became publicly available; thus, in May 2013, for the first time ever, the public and Plaintiffs were able to learn that Microsoft was a party to the Anti-Solicitation and the Restricted Hiring Agreements.

**G.     Effects of the Unlawful Agreements.**

40.     The Anti-Solicitation and Restricted Hiring Agreements unreasonably restrained trade in violation of the Sherman Act, 15 U.S.C. § 1, and the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*, and constituted unfair competition and unfair practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* and 16600. These agreements resulted in Microsoft artificially decreasing competition amongst itself and the other parties to the Unlawful Agreements for skilled labor, thus, stifling and suppressing the growth of their respective employees' wages, so that the companies would be more profitable while allowing the owners and shareholders to reap the benefits of suppressing the employees' wages.

41. In a lawfully competitive labor market, the Defendant and each of its co-participants in the Unlawful Agreements would have competed against each other for employees and would have

ANTITRUST CLASS ACTION COMPLAINT

cold-called employees and hired employees according to the needs of their business and the going market rates for employee wages. And, in such a lawfully competitive labor market, the participants in the Unlawful Agreements would have engaged in such employee hiring in direct competition with one another, resulting in employees accepting offers from the company who makes the most favorable offer of employment. This competitive process helps to ensure that companies benefit by taking advantage of rivals' efforts expended soliciting, interviewing, and training skilled employees. It also benefits the public through fostering flow of new non-proprietary information and technologies across competing industry leaders. And, this competitive process benefits our country's work force by compensating employees for the fair market value of their skills knowledge, and experience.

42. For these reasons, competitive hiring serves as a critical competitive role, particularly in the high technology industry where companies benefit from obtaining employees with advanced skills and abilities. By restricting hiring, employee salaries at competing companies is restricted and depressed, decreasing the pressure of an employee's current employer to match a rival's offer and vice versa. Restrictions on hiring also limit an employee's leverage when negotiating his or her salary with his or her current employer. Furthermore, when companies restrict hiring of rival companies' top tiers employees (e.g., management level and above) the wages of those top tier employees, as well as all other employees underneath them are suppressed because companies are highly unlikely to offer higher salaries to subordinates than they are to managers and executives. As a result, the effects of hiring restrictions impact all employees of participating companies, regardless of whether or not an employee was within the class of employees expressly covered by the Unlawful Agreements.

43. Microsoft entered into, implemented, and policed the Unlawful Agreements with the knowledge of overall conspiracy and with the intent and effect of fixing employee compensation of the participating companies at artificially low levels. As additional companies joined the conspiracy and Unlawful Agreements, competition among participating companies for skilled labor continued to drop, and compensation and mobility of the employees of participating companies was further suppressed. These anticompetitive effects were the purpose of the

1   Unlawful Agreements, and Microsoft, along with the other parties to the agreements, succeeded in

2   lowering the compensation and mobility of their employees below what would have prevailed in a

3   lawful and properly functioning labor market.

4       44.     Plaintiffs and each member of the Class (defined below) was harmed by each and

5   every agreement herein alleged.  The elimination of competition and suppression of compensation

6   and mobility had a negative cumulative effect on all Class members.  For example, an individual

7   who was an employee of Microsoft received lower compensation and faced unlawful obstacles to

8   mobility as a result of the illicit Anti-Solicitation Agreements Microsoft had with Google and

9   others.

10                              **INTERSTATE COMMERCE**

11      45.     Microsoft's conduct substantially affected interstate commerce throughout the

12  United States and caused antitrust injury throughout the United States because, among other

13  things, Microsoft had employees across state lines as well as did business over state lines.

14                               **CLASS ALLEGATIONS**

15      46.     Plaintiffs sue on their own behalf and, under Federal Rule of Civil Procedure 23

16  on behalf of the following Classes:

17          All persons who worked at any time from May 10, 2007 to the present for
18          MICROSOFT in the United States.  ("Do Not Cold Call Class").

19          All persons who worked at any time from May 10, 2007 to the present for
            MICROSOFT in the United States in any manager level or above
20          positions, for Product, Sales, or General and Administrative roles,
            excluding engineers.  ("Restrictive Hiring Class").
21

22      47.     Collectively, the Do Not Cold Call Class and the Restricted Hiring Class are

23  hereinafter referred to as the "Plaintiff Class" or the "Plaintiff Classes."  Plaintiff Ryan sues on

24  behalf of herself and the entire Plaintiff Class, while Plaintiff Rau sues on behalf of himself and

25  only the Do Not Cold Call Class.

26      48.     The Plaintiff Classes contain thousands of members, as each defendant employed

27  thousands of class members each year.  Plaintiff Classes are each so numerous that individual

28  joinder of all members is impracticable.

49.     The Plaintiff Classes are ascertainable either from Microsoft's respective employee and payroll records.

50.     Plaintiffs' claims are typical of the claims of other class members comprising Plaintiff Classes as they arise out of the same course of conduct and the same legal theories and challenges Microsoft's conduct with respect to each of the Plaintiff Classes as a whole.

51.     Plaintiffs have retained able and experienced class action litigators as their counsel. Plaintiffs have no conflicts with other class members and will fairly and adequately protect the interests of Plaintiff Classes.

52.     This case raises common questions of law and fact that are capable of class-wide resolution, including:

a. whether Microsoft agreed not to actively solicit each other's employees, to notify each other of offers made to their employees, and to limit counteroffers;

b. whether Microsoft agreed not to pursue other companies managerial-level and above employees;

c. whether Microsoft's Anti-Solicitation Agreement was a *per se* violation of the Sherman Act;

d. whether Microsoft's Anti-Solicitation Agreement was a *per se* violation of the Cartwright Act;

e. whether Microsoft's Restrictive Hiring Agreement was a *per se* violation of the Sherman Act;

f. Whether Microsoft's Restrictive Hiring Agreement was a *per se* violation of the Cartwright Act;

g. Whether Microsoft's Anti-Solicitation Agreement is void as a matter of law under California Business and Professions Code section 16600;

h. Whether Microsoft's Restrictive Hiring Agreement is void as a matter of law under California Business and Professions Code section 16600

i. Whether Microsoft's Anti-Solicitation Agreement constituted unlawful or unfair business acts or practices in violation of California Business and Professions Code section 17220;

j. Whether Microsoft's Restricted Hiring Agreement constituted unlawful or unfair business acts or practices in violation of California Business and Professions Code section 17220;

k. Whether Microsoft fraudulently concealed its conduct;

l. Whether Microsoft's conspiracies and associated agreements restrained trade,

ANTITRUST CLASS ACTION COMPLAINT

commerce, or competition;

m. Whether Plaintiffs and the other members of Plaintiff Classes suffered injury as a result of Microsoft's conspiracies and agreements;

n. Whether any such injury constitutes antitrust injury; and

o. The measure of damages incurred by Plaintiffs and Plaintiff Classes, including the difference between the total compensation Plaintiffs and the Plaintiff Class received from Defendant, and the total compensation Plaintiffs and the Plaintiff Class would have received from Defendant in the absence of the illegal acts, contracts, combinations, and conspiracy alleged herein.

53.     These and other common questions predominate over any questions affecting only individual class members.

54.     This class action is superior to any other form of resolving this litigation.  Separate actions by individual class members would be enormously inefficient and would create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Microsoft and substantially impede or impair the ability of class members to pursue their claims. There will be no material difficulty in the management of this action as a class action.

## STATUTE OF LIMITATIONS

### A.     Continuing Violation

55.     Microsoft's conspiracy was a continuing violation through which Microsoft repeatedly invaded Plaintiffs' and Plaintiff Classes' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

56.     Microsoft communicated by phone and e-mail and through in-person meetings to further the conspiracy and the secrecy of the conspiracy as described in this Complaint.

### B.     Fraudulent Concealment

57.     Before May 17, 2013, at the earliest, Plaintiffs did not have actual or constructive notice, and were not on inquiry notice of certain facts when they discovered they have certain claims and can seek certain relief.  The Unlawful Agreements between Microsoft and Google were first publicly disclosed in a filing in the Federal Court in the Northern District of California on May 17, 2013.  Thus, the identity of Microsoft's involvement in the conspiracy remained unknown and unknowable to Plaintiffs until that time.

58.     Microsoft took active measures to keep the Unlawful Agreements secret, including,

ANTITRUST CLASS ACTION COMPLAINT

without limitation, ensuring that any written memorialization of the Unlawful Agreements was not widely disseminated or disclosed to any employees other than a limited group of Microsoft's senior officers.

59.     Microsoft also provided pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions made under the conspiracy. Microsoft's explanations for its conduct served only to further and conceal its conspiracy.

60.     Microsoft has attempted to create the false impression that their decisions are independent and that it was acting in compliance with the antitrust laws.

61.     As a result of Microsoft's fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to the claims that Plaintiffs and Plaintiff Class have as a result of the anticompetitive and unlawful conduct alleged herein.

## COUNT I
### (Violation of the Sherman Act, *15 U.S.C. § 1*)

62.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if fully set forth herein.

63.     15 U.S.C. section 1 provides, in part, that every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.  Microsoft engaged in continuing trusts in restraint of trade and commerce in violation of Section 1 of the Sherman Act since at least May 2007.

64.     Microsoft, by and through its officers, directors, employees, agents, or other representatives, has entered into an unlawful agreement, combination, and conspiracy in restraint of trade in violation of 15 U.S.C. § 1.  The parties to these Unlawful Agreements conspired and agreed to restrict competition for services provided by Plaintiffs and members of the Plaintiff Classes through the Unlawful Agreements and agreements to fix the wage and salary ranges for said class members, all with the purpose and effect of suppressing class members' compensation and restraining competition in the market for services of class members.

65.     The parties to the Unlawful Agreements conduct injured and damaged members of the Plaintiff Classes by suppressing compensation to levels lower than the members otherwise

would have received in the absence of the parties' involvement to Unlawful Agreements, all in an amount to be proven at trial.

66.    Microsoft's Unlawful Agreements are *per se* violations of the Sherman Act.

67.    The acts done by each party to the labor suppression conspiracy, as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Microsoft's affairs.

68.    As a result of the above violations, Plaintiffs and Plaintiff Classes have been damaged in an amount according to proof.  Accordingly, Plaintiffs and Plaintiff Classes seek three times their damages caused by Microsoft's violations of the Sherman Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Microsoft from ever again entering into similar agreements in violation of the Sherman Act.

## COUNT II
### (Violation of the Cartwright Act, *Cal. Bus. & Prof. Code §§ 16720, et seq.*)

69.    Plaintiffs incorporate by reference all the allegations in the above paragraphs as if fully set forth herein.

70.    Except as expressly provided in California Business and Professions Code sections 16720 *et seq.*, every trust is unlawful, against public policy, and void.  A trust is a combination of capital, skill, or acts by two or more persons for any of the following purposes:

(a) To create or carry out restrictions in trade or commerce.

(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.

(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

71.    Microsoft engaged in continuing trusts in restraint of trade and commerce in

1   violation of the Cartwright Act since at least May 2007.  Microsoft, by and through its officers,

2   directors, employees, agents or other representatives, entered into an unlawful agreement,

3   combination, and conspiracy in restraint of trade, in violation of California Business and

4   Professions Code section 16720.

5          72.     Parties to the Unlawful Agreements conspired and engaged in an unlawful trust in

6   restraint of trade and commerce by, among other things, restricting and limiting, to a substantial

7   degree, competition for skilled labor and fixing the wages and salary ranges for said class

8   members, all with the purpose and effect of suppressing class members' compensation and

9   restraining competition in the market for services of class members.  Microsoft involved itself

10  with this conspiracy in May 2007.

11         73.     As a direct and proximate result of Microsoft and the co-conspirators conduct,

12  members of the Plaintiff Classes were also injured by incurring suppressed compensation to levels

13  lower than the members otherwise would have incurred in the absence of Microsoft's unlawful

14  trusts, all in an amount to be proven at trial.

15         74.     Defendant, Plaintiffs, and other class members are "persons" within the meaning

16  of the Cartwright Act as defined in California Business and Professions Code section 16702.

17         75.     The Unlawful Agreements that Microsoft are *per se* violations of the Cartwright

18  Act, and its conduct violates the Cartwright Act.

19         76.     As a result of the above violations, Plaintiffs and Plaintiff Classes have been

20  damaged in an amount according to proof and seek three times their damages caused by

21  Microsoft's violations of the Cartwright, the costs of bringing suit, reasonable attorneys' fees, and

22  a permanent injunction enjoining Microsoft from ever again entering into similar agreements in

23  violation of the Cartwright Act.

24                                      **COUNT III**
25                    **(Unfair Competition, *Cal. Bus. & Prof. Code §§ 17200 et seq.*)**

26         77.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if

27  fully set forth herein.

28         78.     Under California Business and Professions Code sections 17200, *et seq.*, any

-15-
ANTITRUST CLASS ACTION COMPLAINT

person who engages, has engaged, or proposes to engage in unfair competition—which includes any fraudulent or unlawful business act or practice—may be enjoined in any court of competent jurisdiction, may be held liable for restoring to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition, and may be held liable for civil penalties.

79.     Defendant is a "person" under the meaning of sections 17200, *et seq.*  Defendant and the other participants in the Unlawful Agreements engaged in an illegal Anti-Solicitation Agreement and an illegal Restrictive Hiring Agreement to suppress wages of their respective workforce by restricting the ability of their respective employees from attaining employment with the other participants in the Unlawful Agreements – participants who would otherwise be lawfully competing for the same group/type of employees.  As of 2007, Microsoft engaged in the entered into the Unlawful Agreements and engaged in the same unlawful conduct.

80.     Defendant's acts were unfair, unlawful, and or unconscionable, both in their own right and because they violated the Sherman Act and the Cartwright Act as well as California's public policy in favor of competition and employee mobility.

81.     Defendant's conduct, by engaging in combinations with others with the intent, purpose, and effect of: (1) creating and carrying out restrictions on trade and commerce; (2) eliminating competition for skilled labor; and (3) fixing compensation of employees at artificially low levels, constituted and was intended to constitute unfair and unlawful competition, unfair, and fraudulent business acts and practices within the meaning of California Business and professions Code section 17200.

82.     Defendant's conduct injured Plaintiffs and other members of the Plaintiff Classes by suppressing the value of employees' services and thus suppressing their wages.  Plaintiffs and other class members are therefore persons who have suffered injury in fact and lost money or property as a result of the unfair competition under California Business and Professions Code section 17204.

83.     Under California Business and Professions Code section 17203, disgorgement of Defendant's unlawful gains is necessary to prevent the use or employment of Defendant's unfair

practices and restitution to Plaintiffs and other class members is necessary to restore to them the money or property unfairly withheld from them.

84.     As a result of the above unlawful acts, Plaintiffs and Plaintiff Classes have been damaged in an amount according to proof.

**COUNT IV**
**(Violation of *Cal. Bus. & Prof. Code §§ 16600 et seq.*)**

85.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if fully set forth herein.

86.     Under California business and professions code section 16600, *et seq.*, except as expressly provided for by section 16600, et seq., every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.  This statute is in furtherance of California's public policy, which favors open competition and employee mobility.

87.     Defendant entered into, implemented, and enforced express agreements that are unlawful and void under section 16600.

88.     Defendant's Unlawful Agreements and conspiracy have included concerted action and undertakings among the anti-solicitation participants with the purpose and effect of: (a) reducing open competition among the anti-solicitation participants for skilled labor; (b) reducing employee mobility; (c) reducing or eliminating opportunities for employees to pursue lawful employment of their choice; and (d) limiting employee professional betterment.

89.     Defendant's Unlawful Agreements and conspiracy are contrary to California's settled legislative policy in favor of open competition and employee mobility, and are therefore void and unlawful.

90.     Defendant's Unlawful Agreements and conspiracy were not intended to protect and were not limited to protecting any legitimate proprietary interest of Defendant.

91.     Defendant's Unlawful Agreements and conspiracy do not fall within any statutory exception to Section 16600, *et seq*.

ANTITRUST CLASS ACTION COMPLAINT

92.     The acts done by Defendant as part of, and in furtherance of, its contracts, combinations, or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

93.     Accordingly, Plaintiffs and members of Plaintiff Class seek a judicial declaration that Defendant's Unlawful Agreements and conspiracy are void as a matter of law under Section 16600 and a permanent injunction enjoining Defendant's from ever again entering into similar agreements in violation of Section 16600.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves individually and on behalf of Plaintiff Classes pray for relief and judgment against Defendant, as follows:

1.  That the Court determine that this action may be maintained as a class action;

2.  Appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

3.  Pre-judgment and post-judgment interest as provided by law or allowed in equity;

4.  An incentive award to compensate Plaintiffs for their efforts in pursuit of this litigation;

5.  For nominal damages;

6.  For compensatory damages;

7.  For injunction against Defendant, prohibiting any further acts in continuance or perpetuation of any unlawful anti-solicitation agreements;

8.  For restitution of all monies due to Plaintiffs, and the Plaintiff Classes, and disgorged profits from the unlawful business practices of Defendant;

9.  For costs of suit and expenses incurred herein;

10. For reasonable attorneys' fees;

11. For treble damages; and

12. For all such other and further relief the Court may deem just and proper.

1

## **JURY DEMAND**

2          Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury

3    on all issues so triable.

4

5    Dated:  October 16, 2014                    **THE MARKHAM LAW FIRM**

6

7                                                       _s/ Janine R. Menhennet_
                                                    Attorney for Plaintiffs and on behalf of those
8                                                    similarly situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANTITRUST CLASS ACTION COMPLAINT