Stephen M. Rummage (*pro hac vice*)
*steverummage@dwt.com*
Robert J. Maguire (*pro hac vice*)
*robmaguire@dwt.com*
Candice M. Tewell (*pro hac vice*)
*candicetewell@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:    (206) 622-3150
Facsimile:    (206) 757-7700

Allison A. Davis (CA State Bar No. 139203)
*allisondavis@dwt.com*
Sanjay M. Nangia (CA State Bar No. 264986)
*sanjaynangia@dwt.com*
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599

Attorneys for Microsoft Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DESERAE RYAN, and TRENT RAU, individually and on behalf of all others similarly situated;<br><br>                Plaintiffs,<br><br>        vs.<br><br>MICROSOFT CORPORATION, a Washington corporation;<br><br>                Defendant. | Case No. 5:14-cv-04634-LHK<br><br>**MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  April 9, 2015<br>Time:  1:30 p.m.<br>Department:  Hon. Lucy H. Koh<br>                Courtroom 8 – 4th Floor |

*DAVIS WRIGHT TREMAINE LLP*

DAVIS WRIGHT TREMAINE LLP

1

## NOTICE OF MOTION AND MOTION

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on April 9, 2015, at 1:30 p.m., or as soon thereafter as the

4 matter may be heard, in the courtroom of the Honorable Lucy H. Koh of the above-entitled United

5 States District Court, located at 280 South First Street, San Jose, California 95113, Defendant

6 Microsoft Corporation ("Microsoft") will and hereby does move this Court, pursuant to Federal

7 Rule of Civil Procedure 12(b)(6), for an Order dismissing this action for failure to state a claim.

8 Microsoft asks the Court to dismiss (a) all claims as barred by the applicable statutes of limitation;

9 (b) the Sherman Act and Cartwright Act claims for failure to properly plead an unlawful

10 agreement; (c) the Cartwright Act, Unfair Competition Law ("UCL"), and Business & Professions

11 Code § 16600 claims because of the failure to plead a sufficient nexus with the state of California;

12 (d) the UCL claim because plaintiffs seek only relief not afforded by the UCL; and (e) the Section

13 16600 claim because plaintiffs lack standing to pursue that claim.

14    Microsoft bases this Motion on this Notice of Motion and Motion, the attached

15 Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, with

16 associated exhibits, all pleadings and papers on file with this Court in this action, and any further

17 oral and written argument and evidence the parties may present at or before the hearing.

18    Microsoft is contemporaneously filing a motion to transfer under 28 U.S.C. § 1404(a).

19 The motions are filed separately for the convenience of the Court.

20    Respectfully submitted this 15th day of December, 2014.

21
22    DAVIS WRIGHT TREMAINE LLP
      *Attorneys for Defendant Microsoft Corporation*

23    By:    */s/ Stephen M. Rummage*
              Stephen M. Rummage
24            Robert J. Maguire
              Allison A. Davis
25            Candice M. Tewell
              Sanjay M. Nangia

26
27
28

1

DAVIS WRIGHT TREMAINE LLP

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................... 1

II.  ISSUE TO BE DECIDED ...................................................................................... 3

III.  FACTUAL BACKGROUND ................................................................................. 3

  A.  The DOJ Investigation and *In re High-Tech* ........................................... 3

  B.  Ryan and Rau's Complaint ....................................................................... 4

IV.  ARGUMENT .......................................................................................................... 5

  A.  The Applicable Statutes of Limitation Bar Ryan and Rau's
      Claims ........................................................................................................ 7

    1.  The Four-Year Limitations Period Was Triggered in May 2007 and
        Expired in May 2011 ...................................................................... 7

    2.  Ryan and Rau's Deficient Tolling Allegations Do Not Entitle
        Them to Relief from the Limitations Periods ................................. 8

    3.  Because Ryan and Rau Had Constructive Notice of Their Claims
        in 2009, the Limitations Period Ran by at Least 2013. ................ 10

    4.  Ryan and Rau Do Not Sufficiently Allege an Antitrust Violation
        Continuing after October 14, 2010. .............................................. 12

  B.  Ryan and Rau Failed to Plead Claims under the Sherman Act
      or the Cartwright Act ............................................................................... 13

    1.  Ryan and Rau Have Pleaded Only Ultimate Facts, But No
        Evidentiary Facts Sufficient to Establish an Agreement. ............ 14

    2.  Ryan and Rau Cannot Rely on Google's "Do Not Cold Call" List
        to State a Claim. ........................................................................... 17

    3.  Ryan and Rau Fail to Allege a Plausible Reason for Microsoft to
        Enter into the Alleged Agreements. ............................................. 19

  C.  Ryan and Rau Have Failed to Plead Connections with
      California Sufficient to State a Claim under California
      Statutes. .................................................................................................... 20

  D.  Ryan and Rau Lack Standing to Pursue a Claim for Monetary
      Relief under the UCL. ............................................................................. 22

E.       Ryan and Rau Lack Standing to Pursue Their Claims under
         § 16600, Which Are Limited to Injunctive and Declaratory
         Relief. ........................................................................................................... 23

V.       CONCLUSION .......................................................................................................... 25

DAVIS WRIGHT TREMAINE LLP

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Federal Cases**

4
*ABC Int'l Traders v. Yamaha Corp. of Am.*,
5
1993 U.S. Dist. LEXIS 20947 (C.D. Cal. Jan. 27, 1993)............................................7

6
*Advanced Micro Devices, Inc. v. Intel Corp.*,
1991 U.S. Dist. LEXIS 21036 (N.D. Cal. Dec. 17, 1991) ......................................10

7
*Allen v. Similasan Corp.*,
8
2013 U.S. Dist. LEXIS 139874 (S.D. Cal. Sept. 27, 2013) ....................................12

9
*Allen v. Wright*,
10
468 U.S. 737 (1984) ...........................................................................................23

11
*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)...........................................................................3, 24

12
13
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................6

14
*Bell Atl. Corp. v. Twombly*,
15
550 U.S. 544 (2007) ..................................................................................... *passim*

16
*Cal. ex rel. Lockyer v. Mirant Corp.*,
2002 U.S. Dist. LEXIS 15733 (N.D. Cal. Aug. 6, 2002)........................................7

17
18
*California v. Infineon Techs. AG*,
531 F. Supp. 2d 1124 (N.D. Cal. 2007) .............................................................21

19
*Chavez v. Wash. Mut. Bank, N.A.*,
20
2013 U.S. Dist. LEXIS 79239 (N.D. Cal. June 5, 2013) ......................................11

21
*Church & Dwight Co. v. Mayer Labs, Inc.*,
2011 U.S. Dist. LEXIS 35969 (N.D. Cal. Apr. 1, 2011).....................................6, 7

22
*City of L.A. v. Lyons*,
23
461 U.S. 95 (1983) .......................................................................................3, 23, 24

24
*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)............................................................................9

25
*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
26
236 F.3d 1148 (9th Cir. 2001)...........................................................................14

27
*DaimlerChrysler Corp. v. Cuno*,
28
547 U.S. 332 (2006) ...........................................................................................23

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*DM Research, Inc. v. Coll. of Am. Pathologists,*
   170 F.3d 53 (1st Cir. 1999) ..............................................................................19

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ........................................................................................23

*Google, Inc. v. Microsoft Corp.,*
   415 F. Supp. 2d 1018 (N.D. Cal. 2005) ...................................................18, 19, 21

*In re Graphics Processing Units Antitrust Litig.,*
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..........................................................6, 17

*Gross v. Symantec Corp.,*
   2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012) ....................................21

*Haugh v. Depuy-Motech, Inc.,*
   14 F. App'x 883 (9th Cir. 2001)....................................................................8, 9

*Herremans v. BMW of N. Am., LLC,*
   2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) .......................................8

*Hexcel Corp. v. Ineos Polymers, Inc.,*
   681 F.3d 1055 (9th Cir. 2012)........................................................................10

*In re High-Tech Emp. Antitrust Litig.,*
   2014 U.S. Dist. LEXIS 47181 (N.D. Cal. Apr. 4, 2014).......................................18

*In re High-Tech Emp. Antitrust Litig.,*
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) ......................................................... *passim*

*In re High-Tech Emp. Antitrust Litig.,*
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ...........................................................13

*In re High-Tech Emp. Antitrust Litig.,*
   No. 5:11-cv-02509-LHK ........................................................................ *passim*

*Irving v. Lennar Corp.,*
   2013 U.S. Dist. LEXIS 130095 (E.D. Cal. Sept. 11, 2013) ...............................10, 11

*Jablon v. Dean Witter & Co.,*
   614 F.2d 677 (9th Cir. 1980)..........................................................................10

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008)................................................................... *passim*

*In re Late Fee & Over-Limit Fee Litig.,*
   528 F. Supp. 2d 953 (N.D. Cal. 2007), *aff'd*, 741 F. 3d 1022 (9th Cir.), *cert.*
   *denied sub nom. Pinon v. Bank of Am.*, 134 S. Ct. 2878 (2014) ................................17

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,*
   884 F.2d 504 (9th Cir. 1989)..........................................................................13

DAVIS WRIGHT TREMAINE LLP

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................23, 24

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988)...............................................................................20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................24

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009)...............................................................................6

*Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*,
    38 F. Supp. 2d 1158 (C.D. Cal. 1998)...................................................................6

*Pesek v. Gates*,
    247 F. App'x 62 (9th Cir. 2007)............................................................................9

*Plumlee v. Pfizer, Inc.*,
    2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014)..................................8, 9

*Scott v. Pasadena United Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002)...............................................................................24

*Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*,
    393 F. Supp. 2d 1057 (E.D. Wash. 2005) ...........................................................18

*Slack v. Int'l Union of Operating Eng'rs*,
    2014 U.S. Dist. LEXIS 115568 (N.D. Cal. Aug, 19, 2014)..................................24

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014).............................................................................24

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996)...............................................................................5, 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *op. amended by* 275 F.3d 1187 (9th Cir. 2001) ...................................6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..........................................................................................23, 24

*Tidenberg v. Bidz.com, Inc.*,
    2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .........................................................21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2012 U.S. Dist. LEXIS 10779 (N.D. Cal. Jan. 30, 2012) .....................................12

*United States v. Adobe Sys., Inc.*,
    No. 1:10-cv-01629-RBW ......................................................................................4

v

*United States v. Lucasfilm Ltd.*,
No. 1:10-cv-02220-RBW ................................................................................................4

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .....................................................................................24

*William O. Gilley Enters. Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ..................................................................................13, 19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971) ......................................................................................................7

**State Cases**

*Advanced Bionics Corp. v. Medtronic, Inc.*,
29 Cal. 4th 697 (2002) .................................................................................................21

*AICCO, Inc. v. Ins. Co. of N. Am.*,
90 Cal. App. 4th 579 (2001) .........................................................................................22

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal. 4th 1185 (2013) ...........................................................................................12, 14

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
153 Cal. App. 4th 1308 (2007) ......................................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...........................................................................................22, 23

*Microsoft Corp. v. Miszewski*,
No. 11-2-04589-7 SEA (Wash. King Cty. Super. Ct. Apr. 15, 2011) .......................19

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) ..............................................................................................10, 12

*Norwest Mortg., Inc. v. Superior Court*,
72 Cal. App. 4th 214 (1999) ...................................................................................2, 20, 21

*People v. Beaumont Inv., Ltd.*,
111 Cal. App. 4th 102 (2003) .......................................................................................22

*Perry v. Moran*,
109 Wash. 2d 691 (1987), *op.* ......................................................................................18

*Pineda v. Bank of Am., N.A.*,
50 Cal. 4th 1389 (2010) ................................................................................................22

*Partee v. San Diego Chargers Football Co.*,
34 Cal. 3d 378 (1983) ..............................................................................................20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

*R.E. Spriggs Co. v. Adolph Coors Co.*,
    37 Cal. App. 3d 653 (1974)........................................................................20

*Sanchez v. S. Hoover Hosp.*,
    18 Cal. 3d 93 (1976)...............................................................................11

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011).........................................................................21

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)..........................................................................22

**Federal Statutes**

15 U.S.C. § 1 .......................................................................................4, 5

15 U.S.C. § 15b ........................................................................................7

**State Statutes**

Cal. Bus. & Prof. Code § 16600...............................................................*passim*

Cal. Bus. & Prof. Code §§ 16720, et seq. ...........................................2, 4, 5

Cal. Bus. & Prof. Code § 16760(a)(1)......................................................21

Cal. Bus. & Prof. Code § 16750.1 ..............................................................7

Cal. Bus. & Prof. Code §§ 17200, et seq. ........................................2, 4, 5, 22

Cal. Bus. & Prof. Code § 17203..............................................................22

Cal. Bus. & Prof. Code § 17208................................................................7

**Rules**

Fed. R. of Civ. P. 9(b) .....................................................................1, 7, 8, 9

Fed. R. of Civ. P. 11 ...............................................................................13

Fed. R. of Civ. P. 12(b)(6)......................................................................3, 5

**Constitutional Provisions**

U.S. Const. art. III ............................................................................23, 24

**Other Authorities**

Jessica E. Vascellaro & Justin Scheck, *Justice Department Probes Hiring
    Practices in Silicon Valley*, Wall St. J. (June 3, 2009)................................11

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

Miguel Helft, *Unwritten Code Rules Silicon Valley Hiring*, N.Y. Times
        (June 3, 2009).........................................................................................................................11

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION

Microsoft Corporation asks the Court to dismiss Deserae Ryan and Trent Rau's untimely and meritless Complaint.  Ryan and Rau worked for Microsoft in Washington State, terminating their employment in 2012 and 2010, respectively.  Now, they claim Microsoft nearly eight years ago entered into unlawful anti-solicitation agreements with "other companies in the high-technology industry," Compl. [Dkt. 1] ¶ 3, which lasted for an unstated period of time and allegedly reduced their compensation while they worked at Microsoft in Washington.  Given the seriousness of the allegations, the Complaint contains shockingly few factual details.  Its vagueness reflects Ryan and Rau's inability to muster any independent basis for a lawsuit beyond their desire to piggyback on, and benefit from, an action pending in this Court since May 23, 2011, *In re High-Tech Employee Antitrust Litigation*, No. 5:11-cv-02509-LHK ("*In re High-Tech*").

But beyond the rhetoric, Ryan and Rau's claims have almost nothing in common with *In re High-Tech*.  That case involves seven parties sued by the United States Department of Justice ("DOJ") over their recruiting practices; the DOJ made no claims against Microsoft.  That case involved an "overarching conspiracy" among Silicon Valley companies, many with overlapping directorates, allegedly orchestrated by Steve Jobs and Bill Campbell, who "personally entered into or facilitated each of the bilateral agreements" at issue.  *In re High-Tech*, Order Denying Pls.' Mot. for Preliminary Approval [Dkt. 974] at 28 (Aug. 8, 2014).  The allegations against Microsoft make no mention of Jobs or Campbell.  Indeed, Ryan and Rau's Complaint lacks ***any*** of the factual detail set forth in the *In re High-Tech* complaint.  It appears instead to rest on a single document produced in that litigation by Google, without any further context or support.

The Court should dismiss Ryan and Rau's claims for five independent reasons:

***First***, the applicable four-year statutes of limitation bar Ryan and Rau's claims.  Absent tolling, Ryan and Rau's claims accrued when Microsoft allegedly entered into the unlawful agreements in 2007.  Although Ryan and Rau claim fraudulent concealment to excuse their failure to bring a timely action, they fail to plead ***any*** facts (much less the particularized facts Rule 9(b) requires) suggesting Microsoft engaged in any fraudulent conduct to conceal the alleged

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  agreements.  In any event, Ryan and Rau were constructively on notice of possible claims against

2  Microsoft by June 2009, when mainstream media reported DOJ's investigation into recruiting

3  practices in the high-tech industry, specifically including Microsoft.  (DOJ, of course, never

4  brought an action against Microsoft.)  Despite being on inquiry notice, Ryan and Rau waited more

5  than five years before suing in October 2014.  All of their claims are time-barred.

6      *Second*, Ryan and Rau failed to adequately plead antitrust claims under the federal

7  Sherman Act or its California counterpart, the Cartwright Act.  Under settled Ninth Circuit

8  authority, Ryan and Rau must plead ***evidentiary facts*** that, if proved, would show Microsoft

9  entered into an unlawful agreement.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th

10  Cir. 2008).  They fall short of that standard.  Ryan and Rau do not say with whom Microsoft

11  allegedly agreed, how it did so, or the duration of any agreement.  Despite nearly four years of

12  litigation in *In re High-Tech* and more than a thousand docket entries in that case, Ryan and Rau's

13  Complaint contains none of the evidentiary facts this Court cited in denying the *In re High-Tech*

14  motion to dismiss the Sherman Act and Cartwright Act claims.

15      ***Third***, Ryan and Rau have not pleaded facts to support the application of California law, as

16  required for the assertion of their California statutory claims.  They have pleaded claims under the

17  Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, et seq.), the Unfair Competition Law ("UCL")

18  (Cal. Bus. & Prof. Code §§ 17200, et seq.), and Cal. Bus. & Prof. Code § 16600.  But these

19  statutes provide no remedies for plaintiffs, such as Ryan and Rau, who were exposed to alleged

20  statutory violations by a Washington corporation while working in Washington.  Instead,

21  California courts "presume the Legislature did not intend the statutes of this state to have force or

22  operation beyond the boundaries of the state."  *Norwest Mortg., Inc. v. Superior Court*, 72 Cal.

23  App. 4th 214, 222 (1999).  Because Ryan and Rau assert claims arising out of their employment

24  with a Washington company, for which they worked entirely in Washington, they have no

25  remedies under the California statutes they invoke.

26      ***Fourth***, the California UCL allows only restitution and precludes the recovery of damages.

27  Ryan and Rau have no right to restitution as a remedy for the conduct they assert, i.e., Microsoft's

28  alleged conspiracy to suppress their compensation.  This Court has already ruled that a plaintiff

DAVIS WRIGHT TREMAINE LLP

1   does not state a claim for restitution when she claims only, as Ryan and Rau do, that she should

2   have received more compensation during her employment.  *In re High-Tech Emp. Antitrust Litig.*,

3   856 F. Supp. 2d 1103, 1124-25 (N.D. Cal. 2012).  That ruling bars the UCL claim here.

4        ***Fifth***, Ryan and Rau lack standing to assert a claim against Microsoft under California

5   Business & Professions Code § 16600, which declares "void" any agreements with California

6   employees restraining competition with their employer.  Section 16600 affords only declaratory

7   and injunctive relief, since it merely declares certain contracts "void."  But Ryan and Rau no

8   longer work for Microsoft, and they have no risk of being affected by any alleged policies

9   restraining competition for Microsoft employees.  Under settled law, even assuming the practices

10  alleged in the Complaint were to continue (and they never occurred in the first place), former

11  employees such as Ryan and Rau lack standing to pursue these § 16600 claims.  *See City of L.A. v.*

12  *Lyons*, 461 U.S. 95, 102-03 (1983); *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001).

13       For these reasons, the Complaint fails to state a cognizable claim and should be dismissed.

## II.     ISSUE TO BE DECIDED

15       Should the Court dismiss this action with prejudice because Ryan and Rau's Complaint

16  fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure

17  12(b)(6)?

## III.     FACTUAL BACKGROUND

19       Microsoft draws the following facts from the Complaint, as well as from public filings in

20  cases referred to in the Complaint.

### A.     The DOJ Investigation and *In re High-Tech*

22       This action grows out of Ryan and Rau's unabashed effort to take advantage of

23  proceedings over the last five years involving the employment and recruiting practices of other

24  participants in the high-tech industry—but ***not*** Microsoft.  In 2009, "the Antitrust Division of the

25  United States Department of Justice (the 'DOJ') investigated several companies, including

26  Google, and their mutual conspiracy to not solicit one another's employees."  Compl. [Dkt. 1]

27  ¶ 38.  In September 2010, DOJ sued Adobe, Apple, Google, Intel, Intuit, and Pixar in the District

28  of Columbia, alleging they had entered into agreements to refrain from soliciting each other's

1    employees that "were not ancillary to any legitimate collaboration between Defendants" and

2    seeking an injunction against their continuation.  *United States v. Adobe Sys., Inc.*, No. 1:10-cv-

3    01629-RBW, Compl. [Dkt. 1] ¶ 16 (D.D.C. Sept. 24, 2010) (Request for Judicial Notice ("RJN"),

4    Ex. D).  In December 2010, DOJ filed a similar lawsuit against Lucasfilm.  *United States v.*

5    *Lucasfilm Ltd.*, No. 1:10-cv-02220-RBW, Compl. [Dkt. 1] (D.D.C. Dec. 21, 2010) (RJN, Ex. E).

6    But DOJ took no action against Microsoft.

7         On the heels of the DOJ cases, former Lucasfilm employee Siddharth Hariharan filed an

8    action in Alameda County Superior Court on May 4, 2011, naming as defendants the seven

9    companies named in the DOJ's two 2010 complaints.  *See In re High-Tech*, Decl. of Cody Harris

10   in Support of Not. of Removal [Dkt. 2], Ex. A.  Hariharan alleged "a conspiracy among

11   Defendants to fix and suppress the compensation of their employees."  *Id.* ¶ 1.  After the

12   defendants removed the case to this Court, Hariharan filed a Consolidated Amended Complaint

13   [Dkt. 65] ("CAC"), in which four former employees of Adobe, Intuit, and Intel joined as named

14   plaintiffs.  The CAC described "an interconnected web of express agreements, each with the active

15   involvement and participation of a company under the control of Steven P. Jobs … and/or a

16   company that shared at least one member of Apple's board of directors."  *In re High-Tech*, CAC

17   ¶ 55.  It asserted a violation of the federal Sherman Act, 15 U.S.C. § 1, *In re High-Tech*, CAC

18   ¶¶ 119-126, and pleaded claims under three California statutes:  the Cartwright Act, Bus. & Prof.

19   Code §§ 16720, et seq.; Bus. & Prof. Code § 16600; and the UCL, Bus. & Prof. Code §§ 17200, et

20   seq. *In re High-Tech*, CAC ¶¶ 127-152.  The *In re High-Tech* plaintiffs sought to represent a

21   single class of all salaried employees of the seven defendants in the United States "from January 1,

22   2005 through January 1, 2010."  *Id.* ¶ 30.

23        The Court is familiar with the ensuing procedural history of *In re High-Tech.*

24   **B.**    **Ryan and Rau's Complaint**

25        On October 16, 2014—more than three years after the filing of *In re High-Tech* and more

26   than four years after the end of the proposed *In re High-Tech* class period—Deserae Ryan and

27   Trent Rau filed this action.  Both are former Microsoft employees.  Ryan alleges she worked for

28   Microsoft as a "Senior Product Manager" from "April of 2007 to September of 2012 … in

DAVIS WRIGHT TREMAINE LLP

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

Redmond, Washington." Compl. [Dkt. 1] ¶ 16. Rau alleges he worked for Microsoft as a "Lead Systems Engineer Senior" from "June 2006 to June 2010" in "Seattle, Washington." *Id.* ¶ 18. The Complaint alleges Microsoft has its "principal place of business" in Redmond, Washington. *Id.* ¶ 20. Nothing in the Complaint suggests either Ryan or Rau worked for Microsoft in California. After her employment with Microsoft, however, Ryan apparently moved to California: she alleges she now "is a resident of … California." *Id.* ¶ 17. Rau remains a Washington resident. *Id.* ¶ 19.

Ryan and Rau's Complaint alleges in vague and conclusory terms that Microsoft entered into "Anti-Solicitation Agreements" with "numerous other companies in the high-technology industry." Compl. [Dkt. 1] ¶ 3. Ryan and Rau assert Microsoft's purported agreements with these unspecified companies "precluded technology companies from 'cold calling' (i.e. trying to recruit) each other's employees." *Id.* ¶ 4. They separately allege Microsoft entered into an agreement with Google "not to pursue manager level and above candidates from one another for 'Product, Sales, or G&A [General & Administrative]' positions." *Id.* ¶ 6. They label this supposed agreement "the Restricted Hiring Agreement," *id.*, and claim it "effectively stifled competition for skilled managerial labor." *Id.* ¶ 7. Mimicking the *In re High-Tech* plaintiffs, Ryan and Rau assert a violation of the federal Sherman Act, 15 U.S.C. § 1, Compl. [Dkt. 1] ¶¶ 62-68, and purport to plead claims under the same three California statutes: the Cartwright Act, Bus. & Prof. Code §§ 16720, et. seq.; Bus. & Prof. Code § 16600; and the UCL, Bus. & Prof. Code §§ 17200, et seq. Compl. [Dkt. 1] ¶¶ 69-93. They seek to represent two classes: (1) a class consisting of anyone who worked for Microsoft in the United States from May 10, 2007, to the present, and (2) a class limited to employees who worked "in any manager level or above positions, for Product, Sales, or General and Administrative roles, excluding engineers." *Id.* ¶ 46.

Because Ryan and Rau fail to state claims, Microsoft moves to dismiss pursuant to Rule 12(b)(6).

## IV.    ARGUMENT

Rule 12(b)(6) exists to weed out undeserving complaints before parties engage in expensive discovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). A court can dismiss for failure to state a claim based on (1) the "lack of cognizable legal theory" or (2) "insufficient

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    facts under a cognizable legal claim." *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,

2    88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted).  To avoid

3    dismissal, a plaintiff must plead enough "factual content that allows the court to draw the

4    reasonable inference that the defendant is liable for the misconduct alleged"; facts merely

5    consistent with a defendant's liability are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

6    (citing *Twombly*, 550 U.S. at 556-57, 570).  The Court need not accept as true "allegations that are

7    merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v.*

8    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *op. amended by* 275 F.3d 1187 (9th Cir.

9    2001).  Nor should the Court "assume the truth of legal conclusions merely because they are cast

10   in the form of factual allegations."  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).  A

11   plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the

12   elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "[I]f the court determines

13   that allegations or other facts consistent with the challenged pleading could not possibly cure the

14   defect," leave to amend should not be granted, and the claim should be dismissed with prejudice.

15   *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1160 (C.D. Cal. 1998)

16   (citation and internal quotation marks omitted).

17          Because *Twombly* arose in the context of an antitrust claim, it provides particular guidance

18   here.  The Supreme Court in *Twombly* emphasized that courts in antitrust cases must scrutinize

19   closely the allegations of an "agreement" at the pleading stage because of the costs and burdens

20   imposed by antitrust litigation that continues past the pleading stage and into discovery.  550 U.S.

21   at 558-59.  "It is no answer to say" that courts may weed out meritless claims after discovery;

22   rather, "it is only by taking care to require allegations that reach the level suggesting conspiracy

23   that we can hope to avoid the potentially enormous expense of discovery" in meritless cases.  *Id.*

24   at 559.  Heeding the Supreme Court's admonition, courts in this circuit and this district have

25   repeatedly applied *Twombly* and dismissed antitrust claims at the pleading stage.  *See, e.g.*,

26   *Kendall*, 518 F.3d at 1047 (citing *Twombly*, 550 U.S. at 564 n.10); *In re Graphics Processing*

27   *Units Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011, 1018-19, 1025 (N.D. Cal. 2007) (applying

28   *Twombly* in dismissing federal and state antitrust claims); *see also Church & Dwight Co. v. Mayer*

*Labs, Inc.*, 2011 U.S. Dist. LEXIS 35969, at *55-59 (N.D. Cal. Apr. 1, 2011) (applying *Twombly*
to Cartwright Act claims).

### A.    The Applicable Statutes of Limitation Bar Ryan and Rau's Claims.

A four-year limitations period governs each of Ryan and Rau's claims.[1]  Those claims
accrued in May 2007, when Ryan and Rau allege Microsoft entered into unlawful agreements.
Absent tolling, the claims are thus barred on their face (even though Microsoft denies entering into
the agreements at all).  Recognizing this, Ryan and Rau assert Microsoft fraudulently concealed its
alleged misconduct.  But they offer no factual allegations to support that assertion, much less the
sort of particularized allegations Rule 9(b) requires.  Further, Ryan and Rau received constructive
notice of their claims in June 2009 through public disclosure of the DOJ's investigation into the
recruiting and hiring practices of well-known technology companies, including Microsoft.
Because Ryan and Rau did not sue until more than *five years* later, in October 2014, the Court
should find their claims barred as a matter of law.

### 1.    The Four-Year Limitations Period Was Triggered in May 2007 and Expired in May 2011.

Ryan and Rau rest their claims on agreements Microsoft allegedly entered into in May
2007.  Compl. [Dkt. 1] ¶¶ 28, 36.  In federal antitrust cases, "the statute of limitations runs from
the commission of the act" subjecting the defendant to liability.  *Zenith Radio Corp. v. Hazeltine
Research, Inc.*, 401 U.S. 321, 338 (1971).  For the California claims, "the limitations period, the

---

[1] *See* 15 U.S.C. § 15b ("Any action to enforce any cause of action under [the Sherman Act] shall
be forever barred unless commenced within four years after the cause of action accrued."); Cal.
Bus. & Prof. Code § 16750.1 (Cartwright Act) ("Any civil action to enforce any cause of action
for a violation of [the Cartwright Act] shall be commenced within four years after the cause of
action accrued."); Cal. Bus. & Prof. Code § 17208 (UCL claim "shall be commenced within four
years after the cause of action accrued").  Although § 16600 lacks an express limitations period
(since it also lacks an express private right of action), federal courts treat § 16600 as part of the
Cartwright Act.  *See, e.g.*, *ABC Int'l Traders v. Yamaha Corp. of Am.*, 1993 U.S. Dist. LEXIS
20947, at *20 (C.D. Cal. Jan. 27, 1993) ("The Cartwright Act, California Business and Professions
Code §§ 16600, et seq., is California's version of the Sherman Antitrust Act."); *Cal. ex rel.
Lockyer v. Mirant Corp.*, 2002 U.S. Dist. LEXIS 15733 (N.D. Cal. Aug. 6, 2002) (noting prior
case involving "claims under California's 'little antitrust' statute, the Cartwright Act, Cal B&P
Code § 16600 et seq.").  For that reason, the Court should likewise apply a four year limitations
period to the § 16600 claim.

DAVIS WRIGHT TREMAINE LLP

1    period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues.

2    The 'last element' accrual rule provides that absent any equitable exception, a claim accrues upon

3    the occurrence of the last element essential to the cause of action." *Plumlee v. Pfizer, Inc.*, 2014

4    U.S. Dist. LEXIS 23172, at *22-23 (N.D. Cal. Feb. 21, 2014) (citations and internal quotation

5    marks omitted).

6         Here, based on the allegations in the Complaint, Ryan and Rau could have sued in 2007,

7    when Microsoft allegedly entered into the unlawful agreements. Absent a basis for tolling, which

8    Ryan and Rau cannot establish, their claims expired in May 2011, four years after the allegedly

9    unlawful "act," and are untimely on their face.

10              **2.      Ryan and Rau's Deficient Tolling Allegations Do Not Entitle Them to
                         Relief from the Limitations Periods.**

11        Recognizing that the applicable limitations periods bar their claims, Ryan and Rau assert

12   Microsoft engaged in fraudulent concealment, thereby tolling the limitations period. *See* Compl.

13   [Dkt. 1] ¶¶ 37, 57-61. Ryan and Rau primarily allege they did not have access to Microsoft's non-

14   public agreements until they were made public in *In re High-Tech* in May 2013. *See* Compl.

15   [Dkt. 1] ¶ 57. But Ryan and Rau's lack of notice affords no basis for tolling. Microsoft had no

16   duty to ***publish*** any limitations on third party hiring of Microsoft's employees—nor was it under

17   any duty to ensure any third party (such as Google) published any limitations on its own hiring

18   practices. "[I]n the absence of a fiduciary relationship, non-disclosure will not support a finding

19   of fraudulent concealment." *Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957,

20   at *17-18 (C.D. Cal. Oct. 3, 2014); *see Haugh v. Depuy-Motech, Inc.*, 14 F. App'x 883, 886-87

21   (9th Cir. 2001) (rejecting tolling; plaintiffs "provide no support for the proposition that

22   [defendant] had a duty to produce documents in a proceeding in which it was not a party").

23        Nor do Ryan and Rau otherwise set forth with particularity facts sufficient to show

24   Microsoft engaged in fraudulent concealment, as Rule 9(b) requires. To allege fraudulent

25   concealment, Rule 9(b) requires a plaintiff to plead "facts that would support a finding that the

26   statement[s]" constituting the concealment were "intentionally fraudulent." *Herremans*, 2014

27   U.S. Dist. LEXIS 145957, at *19-20. A plaintiff must "alleg[e] what was actually said [to conceal

28   the wrongdoing], who said it, and what made it intentionally false." *Id.* Ryan and Rau do no such

DAVIS WRIGHT TREMAINE LLP

thing.  Their allegations about Microsoft's purported concealment are formulaic generalities, unaccompanied by allegations of any statements Microsoft made to conceal its alleged wrongdoing, much less the statements described in the detail Rule 9(b) requires.  *See* Compl. [Dkt. 1] ¶¶ 58-60 (generically alleging Microsoft "ensur[ed] that any written memorialization of the Unlawful Agreements was not widely disseminated or disclosed"; "provided pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions"; "create[d] the false impression that their decisions are independent and that it was acting in compliance with the antitrust laws").  Indeed, even if Ryan and Rau offered specific examples of pretextual explanations for Microsoft's recruiting practices, this would be insufficient for tolling purposes:  they must plead conduct "above and beyond the wrongdoing alleged by [their] substantive claims" to give rise to a basis for fraudulent concealment.  *Pesek v. Gates*, 247 F. App'x 62, 64 (9th Cir. 2007) (rejecting fraudulent concealment; "the allegation that the reasons for termination were pretextual is part of the basic discrimination claim").

Aside from failing to allege statements amounting to fraudulent concealment, Ryan and Rau fail to allege their diligence in pursuing a claim.  For equitable tolling to apply, a plaintiff ***must*** allege facts demonstrating diligence in attempting to investigate a claim.  Thus, in *Haugh*, the Ninth Circuit held the district court properly disregarded concealment allegations in light of plaintiffs' failure to allege specific facts demonstrating their diligence.  14 F. App'x at 886-87.  Even the "delayed discovery" tolling doctrine, which applies to the California statutory claims, requires a plaintiff to "'plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.  The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand' a motion to dismiss."  *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *26 (quoting *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007)).  As in *Plumlee*, Ryan and Rau "plead[] absolutely no facts that would support a finding that [they were] 'not negligent in failing to make the discovery sooner and that [they] had no actual or presumptive knowledge of facts sufficient to put [them] on inquiry.'"  *Id.* at *29 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008)).  Indeed, Ryan and Rau do not allege ***anything*** they did to investigate possible claims

DAVIS WRIGHT TREMAINE LLP

9

against Microsoft, even after DOJ's investigation into high-tech hiring and recruiting practices became public.[2]  Because Ryan and Rau have not adequately alleged grounds for tolling, all of their claims expired in 2011, and the Court should dismiss.

> ### 3.    Because Ryan and Rau Had Constructive Notice of Their Claims in 2009, the Limitations Period Ran by at Least 2013.

In any case, Ryan and Rau lost the benefit of any tolling once they had constructive notice of potential claims.  Even where a plaintiff proves fraudulent concealment, tolling ends as soon as the plaintiff "is aware or should have been aware of the operative facts that are the basis of its cause of action ….  The degree of knowledge only has to be a 'mere suspicion.'"  *Advanced Micro Devices, Inc. v. Intel Corp.*, 1991 U.S. Dist. LEXIS 21036, at *7 (N.D. Cal. Dec. 17, 1991) (citations omitted); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682-83 (9th Cir. 1980) (affirming order granting motion to dismiss where plaintiff alleged facts showing constructive notice of facts sufficient to make a reasonably prudent person suspicious).  Similarly, while Ryan and Rau's state law claims may be subject to a "delayed discovery rule," the limitations period begins running ***not*** when a plaintiff inquires and discovers the culprit and cause behind her harm, but when she first learns of the need to make an inquiry.[3]  "[T]he plaintiff discovers the cause of action when he at least ***suspects a factual basis***, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least ***suspects*** that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (emphasis added; citation and internal quotation marks omitted).  Thus, in *Irving v. Lennar Corp.*, 2013 U.S.

---

[2] In contrast, plaintiffs' counsel in *In re High-Tech* filed a Freedom of Information Act request for documents submitted by technology companies to DOJ.  *See, e.g.*, *In re High-Tech*, [Dkt. 85] at 18 (referring to FOIA request).  Although this alone may not have been sufficient to show diligence, it illustrates one obvious avenue of investigation available to a diligent plaintiff.

[3] The Sherman Act claim is not subject to a discovery rule.  "We do not require a plaintiff to actually discover its antitrust claims before the statute of limitations begins to run.  A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citations omitted).  Ryan and Rau therefore must adequately plead fraudulent concealment to avoid the limitations period under the Sherman Act.

DAVIS WRIGHT TREMAINE LLP

Dist. LEXIS 130095 (E.D. Cal. Sept. 11, 2013), the court held UCL and antitrust claims accrued when plaintiffs should have discovered their injury, based on the principle that plaintiffs "are charged with presumptive knowledge of an injury if … they have the opportunity to obtain knowledge from sources open to their investigation." *Id.* at *27-33; *see also Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 101-02 (1976) (limitations period began to run when the patient's "reasonably founded suspicions were undeniably aroused," and "[she] had become alerted to the necessity for investigation and pursuit of her remedies").

Ryan and Rau had constructive notice of their claims by June 2009, when national media reported the DOJ had launched an investigation into technology companies for allegedly entering anti-poaching agreements.  Ryan and Rau rely on this investigation in their Complaint:  "In approximately 2009, the Antitrust Division of the United States Department of Justice (the 'DOJ') investigated several companies, including Google, and their mutual conspiracy to not solicit one another's employees."  Compl. [Dkt. 1] ¶ 38.  And contemporaneous news reports identified Microsoft by name as a subject of DOJ's inquiry.  *See, e.g.*, Miguel Helft, *Unwritten Code Rules Silicon Valley Hiring*, N.Y. Times (June 3, 2009) ("Microsoft … [was] … among the companies that received requests for information" from DOJ); Jessica E. Vascellaro & Justin Scheck, *Justice Department Probes Hiring Practices in Silicon Valley*, Wall St. J. (June 3, 2009) (reporting DOJ "has sought information from companies in the technology and biotech sectors, including … Microsoft Corp.") (attached as Exs. A-B to Microsoft's Request for Judicial Notice ("RJN")).  Ryan and Rau received further notice of possible claims when the DOJ announced its complaints against (and settlements with) several companies in September 2010.  *See* RJN, Exs. C-D.[4]

Once the DOJ investigation, and the possibility of a claim, became a matter of public record in 2009, the law afforded Ryan and Rau four years within which to investigate the facts and, if they concluded they had a claim, to sue Microsoft.  "[W]ithin the applicable limitations period, [plaintiff] must indeed seek to learn the facts necessary to bring the cause of action in the

---

[4] "[A] court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment." *Chavez v. Wash. Mut. Bank, N.A.*, 2013 U.S. Dist. LEXIS 79239, at *12 (N.D. Cal. June 5, 2013). Accordingly, the Court may consider on this Motion the materials attached to Microsoft's contemporaneously filed Request for Judicial Notice.

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

DAVIS WRIGHT TREMAINE LLP

first place—he cannot wait for them to find him and sit on his rights." *Norgart*, 21 Cal. 4th at 398-99 (citation and internal quotation marks omitted); *see also id*. at 405-06 (limitation period began to run when plaintiff suspected "someone had done something wrong") (citation and internal quotation marks omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 U.S. Dist. LEXIS 10779, at *36-39 (N.D. Cal. Jan. 30, 2012) (constructive notice where conspiracy became publicly known through announcement of DOJ investigation).

Ryan and Rau did not sue until October 2014, more than five years after the DOJ investigation became public. Their claims are untimely.

### 4.  Ryan and Rau Do Not Sufficiently Allege an Antitrust Violation Continuing after October 14, 2010.

Ryan and Rau also seek to avoid the impact of the four year limitations period on their California state law claims by asserting Microsoft's alleged violation of the antitrust law "was a continuing violation." Compl. [Dkt. 1] ¶ 55. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013). But the continuing violation doctrine does ***not*** extend the limitations period for a plaintiff who has constructive knowledge of a claim before the last wrong occurs. *See, e.g.*, *Allen v. Similasan Corp.*, 2013 U.S. Dist. LEXIS 139874, at *15 (S.D. Cal. Sept. 27, 2013). Thus, in *Allen* the district court rejected a continuous violation argument where the plaintiff "fail[ed] to allege how she was unable to find out through reasonable diligence over the course of a decade that" she had a claim. *Id*. The same is true here: as explained above, Ryan and Rau failed to allege any facts even tending to suggest their diligence in investigating a claim against Microsoft, despite public disclosure of a DOJ investigation into the alleged conduct now at issue.

And Ryan and Rau's allegation of a continuing violation suffers from another equally basic defect: they set forth no facts suggesting Microsoft's alleged statutory violation even continued into the limitations period, i.e. within four years of the filing of their Complaint on October 16, 2014, or beyond October 16, 2010. *See* Compl. [Dkt. 1] ¶ 55 (framing "continuing violation" in the past tense: Microsoft's alleged "conspiracy ***was*** a continuing violation") (emphasis added).

12

DAVIS WRIGHT TREMAINE LLP

Microsoft does not believe Ryan and Rau **could** make such an allegation consistent with Rule 11—which explains why they failed to do so. By 2009, DOJ was investigating hiring and recruiting practices in the high tech industry. *Id.* ¶ 38. By September 2010, DOJ sued six leading high tech companies—including Google—in federal court in the District of Columbia. *See* RJN, Ex. D. Ryan and Rau cannot plausibly allege Microsoft engaged in continuous violations with other high tech companies after these events—which all occurred more than four years before Ryan and Rau sued.[5] The continuing violation doctrine affords no benefit to Ryan and Rau on these facts. The Court should dismiss their claims in their entirety.

### B.   Ryan and Rau Failed to Plead Claims under the Sherman Act or the Cartwright Act.

To plead a Sherman Act § 1 claim, a plaintiff must allege "not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce … ; (3) which actually injures competition." *Kendall*, 518 F.3d at 1047 (citing *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)). As this Court has explained, "to survive a motion to dismiss, a Section 1 claim should 'answer the basic questions: who, did what, to whom (or with whom), where, and when?'" *In re High-Tech*, 856 F. Supp. 2d at 1116 (quoting *Kendall*, 518 F.3d at 1048). Further, the allegations of agreement must be "'plausible' in light of basic economic principles." *William O. Gilley Enters. Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049.

---

[5] Ryan and Rau identify only Google as having an agreement with Microsoft. Compl. [Dkt. 1] ¶¶ 6, 44, 57. But the evidence in *In re High-Tech* shows Google stopped using its "Do Not Cold Call" list in September 2009—more than **five** years before Ryan and Rau sued. *In re High-Tech* [Dkt. 573-14] (September 29, 2009, email entitled "Removal of Do Not Call list!!"). And the Court certified a class using a class period ending December 2009—reflecting its understanding that the alleged Silicon Valley conspiracy ended five years **before** Ryan and Rau filed this action. *See In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1177 (N.D. Cal. 2013).

If California law applies (and it does not, as discussed more fully below), "[t]he analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act." *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citation omitted). "Plaintiffs' federal and state antitrust claims rise and fall together." *In re High-Tech*, 856 F. Supp. 2d at 1114. This Motion therefore addresses the sufficiency of the allegations under the Sherman Act and Cartwright Act without distinction.[6]

> **1.    Ryan and Rau Have Pleaded Only Ultimate Facts, But No Evidentiary Facts Sufficient to Establish an Agreement.**

Ryan and Rau's Complaint falls far short of the pleading standard adopted by the Ninth Circuit in *Kendall*. Although the Complaint devotes eight paragraphs to the so-called Anti-Solicitation Agreements, it does not name **any** company with which Microsoft supposedly agreed to have such agreements. *See* Compl. [Dkt. 1] ¶¶ 28-35. And although Ryan and Rau allege Microsoft "agreed to be a party to the Anti-Solicitation Agreement" at some unspecified time "[a]round May 2007," *id.* ¶ 28, they do not allege whether the Agreement with unspecified counterparties lasted for a day, a month, or a year, let alone into the limitations period. Further, the Complaint sometimes refers to the Anti-Solicitation Agreements in the plural—and sometimes in the singular. Microsoft thus cannot even discern whether Ryan and Rau intend to allege a single agreement covering many companies (including Microsoft) or a series of bilateral agreements between Microsoft and companies yet to be named. Finally, Ryan and Rau do not allege whether any alleged Anti-Solicitation Agreement was ancillary to a comprehensive agreement covering other topics—and, if so, what the larger agreement entailed.

Ryan and Rau likewise say little about the alleged Restricted Hiring Agreement. The introduction to the Complaint recites that Microsoft entered into "an agreement with Google" and

---

[6] The California Supreme Court has written that "[i]nterpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century." *Aryeh*, 55 Cal. 4th at 1195. But this makes no difference on this Motion. Like the Sherman Act, the Cartwright Act requires an unlawful agreement. And *Kendall* states a pleading requirement based on *Twombly*, governed by federal law. Thus, the sufficiency of pleading under the Sherman Act and Cartwright Act claims can be addressed together.

DAVIS WRIGHT TREMAINE LLP

1    defines that singular agreement as "the 'Restricted Hiring Agreement.'"  Compl. [Dkt. 1] ¶ 6.

2    Later, however, the Complaint asserts Microsoft entered into Restricted Hiring Agreements (in the

3    plural) "with several other technology companies," without specifying any of the "technology

4    companies" in question—not even Google.  *Id.* ¶ 36.  As with the Anti-Solicitation Agreements,

5    the Complaint alleges Microsoft entered into the Restricted Hiring Agreement with an unspecified

6    counterparty "around May 2007" but offers no insight into how long the agreement allegedly

7    lasted.  *Id.*  And while the Complaint asserts unidentified "[s]enior executives of Microsoft

8    expressly agreed, through direct communications," to the Restricted Hiring Agreement, *id.* ¶ 37, it

9    pleads no facts as to the form of the agreement, the positions (much less the names) of the

10   Microsoft executives who supposedly made or enforced the Restricted Hiring Agreement, or the

11   other companies with which the unidentified "senior executives" supposedly interacted.

12          The glaring absence of evidentiary detail sharply distinguishes Ryan and Rau's Complaint

13   from the *In re High-Tech* CAC.  In that pleading, plaintiffs detailed relationships among the

14   defendant companies, including overlapping Board and ownership relationships.  *See In re High-*

15   *Tech*, CAC ¶¶ 57-58 (Steve Jobs, Pixar and Lucasfilm), ¶¶ 79, 97, 103 ("During 2006, Arthur D.

16   Levinson sat on the boards of both Apple and Google."), ¶ 87 (Apple and Pixar, through Steve

17   Jobs).  The *In re High-Tech* CAC described the form and terms of the alleged agreements.  *Id.*

18   ¶ 62 ("Pixar drafted the written terms of the agreements in Emeryville, California and sent those

19   terms to Lucasfilm."), ¶¶ 74-75 (Apple and Adobe agreements), ¶¶ 80, 83 (Google and Apple),

20   ¶¶ 86, 90 (Apple and Pixar); ¶¶ 99, 101 (Google and Intel), ¶¶ 104, 106 (Google and Intuit).

21   Further, it recounted specific instances of the companies policing their agreements.  *Id.* ¶ 65 ("[I]n

22   2007, from its principal place of business in Emeryville, California, Pixar twice contacted

23   Lucasfilm regarding suspected violations of their agreements."); ¶ 84 ("In February and March

24   2007, Apple contacted Google to complain about suspected violations of the agreement.… Google

25   conducted an internal investigation and reported its findings back to Apple."); ¶ 90 ("Pixar

26   instructed … personnel to adhere to the agreement and to preserve documentary evidence

27   establishing that Pixar had not actively recruited Apple employees.").  Indeed, the *In re High-Tech*

28   CAC even detailed an effort to recruit another company, Palm, to the scheme:  "In approximately

DAVIS WRIGHT TREMAINE LLP

15

August 2007, Steve Jobs contacted the CEO of Palm Inc. ('Palm'), Edward T. Colligan ('Ed Colligan'), to propose that Apple and Palm agree to refrain from hiring each other's employees." *Id.* ¶ 92; *see also* ¶ 95 (rejection of Jobs' overture). Ryan and Rau make no such allegations of evidentiary fact as to Microsoft.

In denying defendants' motions to dismiss in *In re High-Tech*, this Court relied on these detailed allegations of evidentiary fact. The Court acknowledged the Ninth Circuit's "concern that '[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements.'" *In re High-Tech*, 856 F. Supp. 2d at 1116 (alteration in original) (quoting *Kendall*, 518 F.3d at 1047). But it found the Ninth Circuit's concern "inapplicable" given the allegation that "at all relevant times, at least one of three individuals had significant influence over at least one party to each of the six bilateral agreements: Apple CEO and Pixar CEO Mr. Jobs; Apple and Google board member Mr. Levinson; and Google CEO and Apple board member Mr. Schmidt." *Id.* And given the specifically pleaded example of Jobs' solicitation of Palm's CEO, the Court found it "reasonable to infer that such agreements were negotiated directly CEO to CEO." *Id.* at 1117. The Court also focused on the "DOJ investigation in which the DOJ found the agreements to be '*per se* unlawful' and in which Defendants agreed that the DOJ stated a federal antitrust claim." *Id.* The *In re High-Tech* CAC alleged "nearly identical agreements, of identical scope … entered into in various cities and counties in California, between 2005 and 2007." *Id.* (citation omitted). Based on this wealth of evidentiary detail, this Court concluded a "failure to plead the 'who, what, to whom, where, and when' is not a basis to dismiss Plaintiffs' Section 1 claims here." *Id.* at 1117-18.

But Ryan and Rau's Complaint has none the allegations that permitted the *In re High-Tech* CAC to pass muster. With one exception, addressed below, it fails even to identify the companies with which Microsoft supposedly agreed. It does not (and cannot) allege any relevant overlapping board memberships or controlling ownership interests. It offers no examples of Microsoft seeking to police or enforce any restriction on recruiting or hiring. It describes no effort to recruit others into an alleged scheme involving Microsoft. And while Ryan and Rau's Complaint describes the

DOJ investigation, it says nothing to suggest DOJ took issue with Microsoft's recruiting practices.[7]  In short, while some paragraphs of the Complaint here mimic parallel allegations in the *In re High-Tech* CAC, Ryan and Rau have stripped the meaningful evidentiary detail from their pleading, leaving them with nothing but the sort of "formulaic recitation" of wrongdoing the Supreme Court has found insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.

This case resembles *Kendall*, not *In re High-Tech*.  The *Kendall* plaintiffs claimed banks and credit card companies conspired to set payment card transaction fees.  Although plaintiffs alleged defendants "knowingly, intentionally and actively participated in an individual capacity in the alleged scheme," the Ninth Circuit found this conclusory allegation entitled to no weight under *Twombly*.  *Kendall*, 518 F.3d at 1048.  Other judges in this District have followed *Kendall* in dismissing equally vague antitrust claims.  *See In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (rejecting as insufficient "several conclusory allegations that the defendants agreed to increase late fees," which provided "no details as to when, where, or by whom this alleged agreement was reached"), *aff'd*, 741 F. 3d 1022 (9th Cir.), *cert. denied sub nom. Pinon v. Bank of Am.*, 134 S. Ct. 2878 (2014); *GPU*, 527 F. Supp. 2d at 1024 ("Plaintiffs allege in conclusory fashion that defendants fixed prices pursuant to an agreement, but that allegation is simply too conclusory to show a plausible entitlement to relief.").  This Court should reach the same conclusion.

### 2. Ryan and Rau Cannot Rely on Google's "Do Not Cold Call" List to State a Claim.

Ryan and Rau's Complaint alleges that "on or about May 17, 2013, the identity of all (or almost all) of the companies who were parties to the Anti-Solicitation Agreements became publicly available," marking "the first time ever" they "were able to learn that Microsoft was a party to the Anti-Solicitation and the Restricted Hiring Agreements."  Compl. [Dkt. 1] ¶ 39; *see also id*. ¶¶ 8, 57.  The Complaint refers to (and thus incorporates by reference) Exhibit 661 from *In re High-Tech*, which was filed for public record in that case on May 17, 2013—nearly eighteen months before Ryan and Rau sued.  That document, dated January 8, 2008, lists Microsoft on

---

[7] The DOJ did not sue Microsoft and closed its investigation on October 29, 2014.  *See In re High-Tech* [Dkt. 1014], at App'x A.

DAVIS WRIGHT TREMAINE LLP

1    Google's "Restricted Hiring List" and "Do Not Cold Call" list.  *In re High-Tech*, No. 5:11-cv-

2    02509-LHK [Dkt. 428-10], Ex. 661 to Cisneros Decl. [Dkt. 418-27] on Suppl. Mot. to Certify

3    Class (May 17, 2013).

4        But Ryan and Rau plead no facts that would lead to the conclusion that Exhibit 661, an

5    internal Google document, reflects an unlawful agreement by Microsoft.  Indeed, they do not even

6    plead that Google ever posted this version of its "Restricted Hiring List" and "Do Not Cold Call"

7    list for Google's recruiters to use.  Nor do they plead evidentiary facts from which one could infer

8    the list reflected an actual agreement between Google and Microsoft.  In fact, as this Court has

9    recognized, an earlier version of Google's list, phrased in similar terms, reflected "***unilateral***

10   policies Google adopted with respect to … non-defendant companies" rather than an agreement

11   with those companies.  *In re High-Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 47181, at

12   *68 & n.34 (N.D. Cal. Apr. 4, 2014) (emphasis added) (citing "do-not-cold-call policies effective

13   January 20, 2006 with respect to OpenTV Corporation and Invidi Technologies Corporation.  ECF

14   No. 573, Brown Decl., Ex. 13").  The same could be true with respect to Microsoft, i.e., Google

15   may have adopted "unilateral policies" not to call Microsoft employees, perhaps prompted by

16   earlier litigation between the companies and a desire to avoid further expensive confrontations.[8]

17       Ryan and Rau plead no evidentiary facts that would permit the Court to infer from a single

18   internal Google document that Microsoft entered into an unlawful agreement.  The Complaint's

19   references to this exhibit amount to "[a]llegations of facts that could just as easily suggest rational,

20   legal business behavior by" Microsoft; they thus "are insufficient to plead a violation of the

21

22   _____

     [8] Microsoft sued Google in 2005 when a Microsoft executive, Dr. Kai Fu Lee, left Microsoft to
23   work for Google in violation of his non-competition agreement.  *See Google, Inc. v. Microsoft
     Corp.*, 415 F. Supp. 2d 1018 (N.D. Cal. 2005) (granting Microsoft's motion to stay Google's
24   declaratory judgment action in deference to Microsoft's earlier-filed Washington action;
     describing Washington proceedings and preliminary injunction).  Through that litigation, Google
25   had an object lesson that, under Washington law, Microsoft may lawfully enter into (and enforce)
     agreements with its employees to preclude them from accepting employment with competitors.
26   *See Perry v. Moran*, 109 Wash. 2d 691, 700 (1987), *op. revised*, 111 Wash. 2d 885 (1989);
     *Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*, 393 F. Supp. 2d 1057, 1062-63 (E.D. Wash.
27   2005) (enforcing one-year restriction).  Google may have made the unilateral decision not to test
     Microsoft's resolve by exposing itself to further litigation.  Nothing in the Sherman Act or the
28   Cartwright Act would provide a basis for holding Microsoft legally liable for that decision.

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  antitrust laws." *Kendall*, 518 F.3d at 1049.  The Court should dismiss the Sherman Act and

2  Cartwright Act claims as inadequately pled.

### 3. Ryan and Rau Fail to Allege a Plausible Reason for Microsoft to Enter into the Alleged Agreements.

Finally, allegations of an agreement in violation of the antitrust laws must be "'plausible'

in light of basic economic principles." *William O. Gilley Enters.*, 588 F.3d at 662; *see also DM*

*Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (upholding dismissal

of antitrust complaint where alleged conspiracy was "highly implausible") (cited with approval in

*Twombly*, 550 U.S. at 557).  Ryan and Rau have not alleged facts suggesting a plausible reason for

Microsoft to enter into the alleged agreements.

Ryan and Rau assert Microsoft had incentives to enter into the alleged agreements,

claiming the agreements "suppresse[d] wages because other rivals are not actively soliciting

employees."  Compl. [Dkt. 1] ¶ 33.  But Microsoft had a vehicle under Washington law to protect

its substantial investment in its workforce against active solicitation by competitors:  like many

Washington employers, it includes non-competition and non-solicitation covenants in its employee

agreements with Washington employees (such as Ryan and Rau), and it properly enforces those

contracts.  *See, e.g.*, *Google*, 415 F. Supp. 2d at 1019-20 (quoting Microsoft's non-competition

and non-solicitation covenants and describing Microsoft's Washington litigation to enforce

covenants against Google); *Microsoft Corp. v. Miszewski*, No. 11-2-04589-7 SEA (Wash. King

Cty. Super. Ct. Apr. 15, 2011) (enforcing non-competition covenant and enjoining employment of

departing employee by Salesforce.com) (RJN, Ex. F).  In contrast, California law generally

prohibits California employers (such as Google and the *In re High-Tech* defendants) from entering

into non-competition agreements.  *See* Cal. Bus. & Prof. Code § 16600.

Given this legal environment, Microsoft had no incentive to restrict its freedom to contact

competitors' employees in exchange for an agreement offering it little protection beyond that

already afforded by its enforceable noncompetition agreements.  Further, the notion that no-hire

agreements with competitors would suppress the wages of a workforce already governed by

noncompetition agreements is economically implausible.  Both the paucity of factual allegations

and the implausibility of the alleged agreements require dismissal of the Sherman Act and Cartwright Act claims.

> ### C. Ryan and Rau Have Failed to Plead Connections with California Sufficient to State a Claim under California Statutes.

Ryan and Rau assert claims under three California statutes, i.e., the Cartwright Act, the UCL, and Business & Professions Code § 16600.  But Microsoft is a ***Washington*** corporation for which Ryan and Rau worked ***in Washington***; indeed, Rau remains a Washington resident.  Compl. [Dkt. 1] ¶ 16 (Ryan worked "in Redmond, Washington"); ¶ 18 (Rau worked "in Seattle, Washington"); ¶ 19 ("Rau is a resident of the [s]tate of Washington"); ¶ 20 ("Microsoft Corporation [i]s a Washington corporation with its principal place of business located at One Microsoft Way, Redmond, Washington").  California courts "ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortg.*, 72 Cal. App. 4th at 222.  And the three statutes under which Ryan and Rau sue require a California nexus:

***Cartwright Act***.  The Cartwright Act governs only the ***intrastate*** effects of anti-competitive agreements.  In *R.E. Spriggs Co. v. Adolph Coors Co.*, 37 Cal. App. 3d 653 (1974), the court considered arguments that the Sherman Act preempted the Cartwright Act.  Because "application of the state [Cartwright] act is ***solely*** directed to the ***intrastate effect*** of the trade involved," the Court of Appeal held federal law did not preempt it.  *Id.* at 666 (emphasis added).  Thus, the court held a California distributor of Coors beer could assert claims challenging Coors' distribution system as violating the Cartwright Act:  "Coors imposes its distribution system upon all of its wholesale distributors ***within this state***, and the consequences which arise from the use of this distribution scheme are ***localized***."  *Id.* at 665 (emphasis added).  Based on this reading of the Cartwright Act, the Ninth Circuit affirmed dismissal of a Cartwright Act claims where plaintiffs "fail[] to allege conduct that involves intrastate commerce."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 813 & n.7 (9th Cir. 1988).[9]  In short, the Cartwright Act reaches the localized effects of conduct affecting California commerce.

---

[9] In *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378 (1983), the California Supreme Court held the Cartwright Act did not regulate NFL rules governing player-team relationships, as

20

*UCL*.  "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Thus, the UCL does not apply to "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Norwest Mortg.*, 72 Cal. App. 4th at 224-25.  Courts sometimes apply the UCL to claims by non-residents arising from conduct in California.  But this requires "specific facts linking Defendants' contacts with California to the claims … assert[ed] against them." *Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at *4-5 (C.D. Cal. Mar. 4, 2009) (Texas plaintiffs lacked UCL standing to sue California company absent evidence "any false and misleading statements emanated from California").  *See Gross v. Symantec Corp.*, 2012 U.S. Dist. LEXIS 107356, at *26-28 (N.D. Cal. July 31, 2012) (non-residents had no claim under California law absent proof "unlawful conduct emanated from" California).

**Business & Professions Code § 16600**.  Although phrased without territorial limitation ("every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"), § 16600 exists to protect California employees—not Washington employees.  In particular, state and federal courts in California note that § 16600 implements California's "strong interest in protecting ***its*** employees from noncompetition agreements." *Advanced Bionics Corp. v. Medtronic, Inc.,* 29 Cal. 4th 697, 706-07 (2002) (emphasis added); *Google*, 415 F. Supp. 2d at 1022 (quoting *Advanced Bionics*).  Microsoft knows of no court holding that § 16600 limits hiring practices of employers outside California.

While working in Washington, Ryan and Rau suffered no effects from the alleged agreements within the state of California.  Taking the Complaint's allegations as true, the asserted misconduct suppressed Ryan and Rau's wages while they worked in Washington at the premises

---

doing so would impermissibly burden interstate commerce—even though the case involved "the anticompetitive practices of one team, a California partnership, which caused injury to a California resident." *Id.* at 394 (Reynoso, J. dissenting).  Consistent with this intrastate emphasis, the Act allows *parens patriae* actions "exclusively by the California Attorney General, exclusively on behalf of California residents." *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1132-33 (N.D. Cal. 2007) (citing Bus. & Prof. Code § 16760(a)(1)).

21

DAVIS WRIGHT TREMAINE LLP

1   of their Washington-based employer.  In stark contrast, the *In re High-Tech* plaintiffs alleged

2   "Santa Clara is the County in which Plaintiffs and Class members' relationship with Defendants is

3   centered.  At least a majority of class members reside in California.  At least 98% of Class

4   members were employed by Defendants who maintained (and continue to maintain) their principal

5   places of business in Santa Clara."  *In re High-Tech*, CAC ¶ 12.  Further, the CAC alleged that all

6   seven defendants had their principal place of business in this District.  *Id*. ¶¶ 21-27.  None of these

7   facts appears in the Complaint here.  On the facts alleged, the Court should dismiss the California

8   statutory claims by these Washington-based employees against their Washington-based employer.

### D.    Ryan and Rau Lack Standing to Pursue a Claim for Monetary Relief under the UCL.

10          The UCL, codified at Business & Professions Code §§ 17200, et seq., prohibits "any

11  unlawful, unfair or fraudulent business act or practice."  The UCL allows restitutionary,

12  injunctive, and declaratory remedies.  *See* Cal. Bus. & Prof. Code § 17203 (authorizing injunctive

13  and restitutionary relief); *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal. App. 4th 579, 590 (2001)

14  (authorizing declaratory relief).  "Through the UCL a plaintiff may obtain restitution … [to]

15  restore to the parties in interest money or property taken by means of unfair competition."  *In re*

16  *Tobacco II Cases*, 46 Cal. 4th 298, 313 (2009); *see also People v. Beaumont Inv., Ltd.*, 111 Cal.

17  App. 4th 102, 134 (2003) ("orders for restitution" are those "compelling a UCL defendant to

18  return money obtained through an unfair business practice to those persons in interest from whom

19  the property was taken") (citation and internal quotation marks omitted).

20          But a plaintiff suing under the UCL may *not* recover damages.  *Korea Supply Co. v.*

21  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).  The UCL permits a court to award

22  monetary relief *only* to (1) replace money that a defendant took directly from plaintiff or (2) allow

23  a plaintiff to recover money in which he or she has a vested interest.  *Korea Supply*, 29 Cal. 4th at

24  1149.  An "expectation interest" is not a "vested interest" for purposes of stating a restitution

25  claim under the UCL.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401-02 (2010).

26          Ryan and Rau fail to allege Microsoft "took" or "obtained" any money from them, making

27  them ineligible for restitution.  At most they allege Microsoft's allegedly unlawful conduct put

28  downward pressure on their compensation by chilling competition for certain classes of

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211

DAVIS WRIGHT TREMAINE LLP

employees.  This Court, however, has decided a damage claim of this nature fails to state a claim under the UCL.  In dismissing the UCL claim in *In re High-Tech*, this Court explained:

> The Court finds that the speculative higher compensation Plaintiffs may have gotten in the absence of the alleged conspiracy … is not a vested interest.… The Court agrees with Defendants that the salaries Plaintiffs may have been able to negotiate in the absence of the alleged conspiracy is an "attenuated expectancy"—akin to "lost business opportunity" or lost revenue—which cannot serve as the basis for restitution.  *Korea Supply*, 29 Cal. 4th at 1150-51[.]  Plaintiffs' request for disgorgement is also foreclosed, because this remedy is available "only to the extent that it constitutes restitution." *Id.* at 1145[.]  Any profits Defendants made through the alleged conspiracy at the expense of Plaintiffs' wages are likewise attenuated expectancies.  Accordingly, Plaintiffs are entitled neither to restitution nor to disgorgement.

*In re High-Tech*, 856 F. Supp. 2d at 1124-25.  As the Court explained in *In re High-Tech*, "because the only relief the UCL provides is unavailable here, [Plaintiffs'] UCL claim fails." *Id.* at 1125 (alteration in original; citation and internal quotation marks omitted).[10]

The Court should likewise dismiss the UCL claim here.

**E.      Ryan and Rau Lack Standing to Pursue Their Claims under § 16600, Which Are Limited to Injunctive and Declaratory Relief.**

To establish a "case or controversy" under Article III of the United States Constitution, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury to threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101-02.  Plaintiffs bear the burden of establishing the Article III "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  A party must establish standing not only for each claim, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), but for each injury, *Allen v. Wright*, 468 U.S. 737, 753 (1984), and each type of relief, *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  To meet the "irreducible constitutional minimum" of standing, a plaintiff must have suffered an "injury in fact," i.e., an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent," not conjectural or hypothetical.  *Lujan v. Defenders of*

---

[10] Ryan and Rau do not seek an injunction under the UCL.  *See* Compl. [Dkt. 1] ¶¶ 78-84.  As explained in the following section, addressing the § 16600 claim, Ryan and Rau lack standing to seek injunctive relief, given their status as former Microsoft employees.

*Wildlife*, 504 U.S. 555, 560 (1992). And it must be "likely, as opposed to merely speculative" that a favorable decision will redress the injury. *Id*. at 561 (internal quotation marks omitted).

To satisfy the injury-in-fact requirement for prospective injunctive relief, a plaintiff must show that he or she likely will suffer future harm as a result of defendant's conduct. *Scott v. Pasadena United Sch. Dist*., 306 F.3d 646, 657-58 (9th Cir. 2002). Ryan and Rau lack Article III standing to seek or obtain prospective injunctive relief because they cannot show they are "realistically threatened by a repetition of [the violation]." *Armstrong*, 275 F.3d at 860-61 (quoting *Lyons*, 461 U.S. at 109) (alteration in original). The "allegations of future injury [must] be particular and concrete." *Steel Co*., 523 U.S. at 109. "Past exposure to illegal conduct does not in itself show a present case or controversy … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Ryan and Rau ended their Microsoft employment years ago. Compl. [Dkt. 1] ¶¶ 16, 18 (alleging Ryan and Rau terminated Microsoft employment in 2012 and 2010, respectively). "The Ninth Circuit has noted that, in general, a former employee of an organization does not have standing to pursue injunctive relief against his former employer because he 'would not stand to benefit from an injunction' prohibiting the challenged conduct." *Slack v. Int'l Union of Operating Eng'rs*, 2014 U.S. Dist. LEXIS 115568, at *77 (N.D. Cal. Aug, 19, 2014) (quoting *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)); *see also Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014) ("Named plaintiffs who were not [employees] at the time the complaint was filed lacked standing to seek injunctive or declaratory relief because they 'would not stand to benefit from' such relief.") (quoting *Walsh*, 471 F.3d at 1037). Because Ryan and Rau lack standing to seek the only relief available under § 16600, i.e., injunctive and declaratory relief, the Court should dismiss that claim.

DAVIS WRIGHT TREMAINE LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.     CONCLUSION

For these reasons, Microsoft respectfully requests that the Court dismiss Ryan and Rau's Complaint in its entirety.

DATED: December 15, 2014

DAVIS WRIGHT TREMAINE LLP

By:     /s/ Stephen M. Rummage

Stephen M. Rummage (*pro hac vice*)
Robert J. Maguire (*pro hac vice*)
Candice M. Tewell (*pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:   (206) 622-3150
Facsimile:   (206) 757-7700

Allison A. Davis (CA State Bar No. 139203)
Sanjay M. Nangia (CA State Bar No. 264986)
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599

*Counsel for Defendant Microsoft Corporation*

MICROSOFT CORPORATION'S MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25472141v5 0025936-002211