David R. Markham (SBN 071814)
dmarkham@markham-law.com
Peggy Reali (SBN 153102)
preali@markham-law.com
Janine Menhennet (SBN 163501)
jmenhennet@markham-law.com
Maggie K. Realin (SBN 263639)
mrealin@markham-law.com
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, CA 92101
Tel: (619)399-3995; Fax: (619)615- 2067

*Attorneys for Representative Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DESERAE RYAN, and TRENT RAU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | Case No. 14-cv-04634-LHK<br><br>**PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO TRANSFER UNDER 28 U.S.C. §1404(a)**<br><br>**Date:  April 9, 2015**<br>**Time:  1:30 p.m.**<br>**Judge:  Hon. Lucy H. Koh**<br>**Courtroom:  8, 4th Floor** |

## I. INTRODUCTION

Plaintiffs Deserae Ryan and Trent Rau ("Plaintiffs") oppose defendant Microsoft Corporation's motion to transfer this matter to the Western District of Washington. Microsoft's entire basis for transfer is that Plaintiffs signed an employment contract in Washington with a forum-selection clause of the Western District of Washington. Microsoft, however, is looking at the wrong contract. In fact, there is no breach of contract claim, nor *any* employment-related claim pending in this antitrust suit. In short, Microsoft is looking at the wrong agreement.

Plaintiffs' antitrust allegations involve not the plaintiffs themselves, but large corporate institutions who made an agreement amongst themselves, an agreement which Plaintiffs are not even party to, but who were affected by this larger agreement, as stated in the Complaint. Further, because Plaintiffs have alleged violations of the Sherman Antitrust Act, Microsoft's attempt to shoehorn this action into Washington flouts basic constitutional principles laid down as early as *McCulloch v. Maryland,* 4 Wheaton 316 (1819), in which the Supreme Court states that federal laws trump state laws.[1] Or in this case, Microsoft suggests that a state-law employee contract mandates that this action be transferred to Washington, overlooking the complaint's allegations involving violation of the Sherman Act. Even if this were tenable, the employment contract would have to be relevant. It is not.

Microsoft's protestations that it could not have been party to an anti-competitive agreement in California because it imposes anti-competitive agreements on its employees in Washington is paradoxical. It freely and loudly admits that it favors anti-competitive contract clauses, and sues to enforce the non-compete covenants. (Mtn. at 13) This lends credence to *Plaintiffs'* allegations that Microsoft was included in the Google anti-poaching agreement at issue in this lawsuit and which is already before this Court. Because California employees

---

[1] "The result is a conviction that the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." 4 Wheaton at 436.

cannot be confined to the non-compete clauses, by reaching an agreement with competitors in California not to poach, Microsoft reaches its goal of obtaining non-compete agreements at the top level, bypassing California's restrictions on such clauses.

Plaintiffs herein accept Microsoft's invitation (Mtn. at 4) to allege evidentiary facts supporting their "conclusory statement" that Microsoft negotiated, entered into, and performed the unlawful agreement:  the Agreement referenced in Exhibit 661 in the *High Tech* matter ("Agreement").[2]  Microsoft is included in the list of companies present in the *High Tech* litigation, a factor the Court must have considered when determining whether these two cases were in fact related. Plaintiffs can amend their complaint to include specific reference to this Agreement if the Court orders, but Plaintiffs at this time contend that their allegations are sufficient to withstand the currently pending Rule 12 motion concurrently filed by Microsoft. Plaintiffs' arguments regarding the sufficiency of their allegations will be treated in detail in their opposition to Microsoft's Rule 12 motion.

Because Microsoft is specifically referenced in the Agreement containing the identical parties present in the *High Tech* litigation, to-wit, Apple, Intuit, and Google, the same evidence and proof will be necessary in both cases, irrespective of the length of time the two cases have been pending.  Accordingly, Plaintiffs have established that jurisdiction in front of this Court is necessary and appropriate.

Accordingly, Microsoft's motion to transfer should be denied.

## II.   FACTUAL BACKGROUND

Plaintiffs do not dispute that they worked in Washington during their tenure with Microsoft, nor that Microsoft's world headquarters are in Washington.  However, the agreement which forms the core of this lawsuit is an anti-trust agreement which is presently being heard before this Court, to which Plaintiffs allege Microsoft was/is party to.  The Agreement was allegedly made in Silicon Valley, and performed in Silicon Valley.  This gives

---

[2] A true and correct copy of the Agreement is attached to the Declaration of Janine R. Menhennet at Exhibit 1.

rise to a duty to file suit in Silicon Valley, rather than have a new forum begin litigating the import and extent of the Agreement, its key players, and its effect on the employees of these several corporations.

Microsoft does not, and could not, deny that it has a major presence in Silicon Valley. It has offices in Mountain View and San Francisco,[3] and through September, 2014, it had an additional office in Silicon Valley, its "research" division, a division which likely included putative class members in this lawsuit during the relevant time period.[4] Microsoft does not deny that some of its recruiters are in Silicon Valley. That a "majority" of Microsoft's recruiters in Washington only means that their headquarters are in Washington; it does not mean that Microsoft should not be subject to suit where it maintains a large important presence. Neither the Constitution, nor the Sherman Act, have a "home state only" provision.

Far from forum shopping, Plaintiffs filed in the Northern District of California for the reasons stated in Plaintiffs' motion to relate the cases: they involve the same anti-poaching agreement being litigated in the *In re High Tech* case presently pending before the Court. The Court agreed, ruling that the cases are related. And for good reason. The language in the Agreement includes the following relevant provisions:

- The following companies . . . have a special restriction as part of the "Restricted Hiring" list. Parent Companies: Microsoft. (page 661.1)
- The following companies . . . have special agreements with Google and are part of the "Do Not Cold Call" list. Parent companies: Microsoft. (page 661.1)
- Special Agreement Hiring Policy; Protocol for "Restricted Hiring," "Do Not Cold Call," and "Sensitive" Companies. Groove Networks, parent company Microsoft, Effective Date May 10, 2007; H&B Finance, parent company Microsoft, Effective Date May 10, 2007; iView Multimedia Ltd., parent company Microsoft,

---

[3] Menhennet Decl. Exh. 2

[4] Menhennet Decl. Exh. 3

    Effective Date May 10, 2007; Massive, Inc., parent company Microsoft, Effective Date May 10, 2007; Microsoft, Inc. Effective Date May 10, 2007; PlaceWare, Inc., parent company Microsoft, Effective Date May 10, 2007; ProClarity, parent company Microsoft, Effective Date May 10, 2007; ScreenTonic SA, parent company Microsoft, Effective Date May 10, 2007; Softricity, Inc., parent company Microsoft, Effective Date May 10, 2007; Sybari Software, parent company Microsoft, Effective Date May 10, 2007; Tellme, parent company Microsoft, Effective Date May 10, 2007; Vermeer Technologies, parent company Microsoft, Effective Date May 10, 2007; Volera, parent company Microsoft, Effective Date May 10, 2007; WebTV Networks, parent company Microsoft, Effective Date May 10, 2007; Whale Communications, parent company Microsoft, Effective Date May 10, 2007; Winternals, parent company Microsoft, Effective Date May 10, 2007. (pages 661.5-661.7)

Microsoft's involvement in the Agreement is clear. This Court has already issued a number of rulings adjudicating the contents and legality of this Agreement. There is no need to reinvent the wheel by transferring years'-long analysis and litigation of the Agreement simply because Microsoft's headquarters are in Washington and its employees sign non-compete agreements. Individual employee non-compete agreements, and individual employee performance are not at issue. The anti-poaching Agreement is before the Court.

### III.  ARGUMENT

**A. No employment agreement is at issue in this case, negating Microsoft's argument regarding "choice of venue."**

  Microsoft's motion to transfer hinges upon a choice of venue clause contained in its Washington employees' employment contracts. There is no employment contract at issue in this case, negating Microsoft's entire argument for transfer.

  While Plaintiffs would agree that if this were a wage and hour dispute, or a wrongful termination dispute, their employment contracts (and choice of venue clauses) would be relevant

4

and controlling. But the illegal agreement alleged in the Complaint is one that Plaintiffs are not even party to (but who were affected by it). The agreement is the one previously produced to the Court in the *In re High Tech* matter, at Exhibit 661, Bates numbered GOOG-HI TECH 59839, a copy of which is attached to the Declaration of Janine Menhennet at Exhibit 1. This is the only agreement at issue in this matter. There is no choice of venue in that agreement.

Another court recently agreed that a forum selection clause cannot be applied to claims which are outside the language of the contract. In *CYBERsitter, LLC v. Google, Inc.,* 905 F.Supp.2d 1080 (C.D.Cal. 2012), plaintiff entered into a contract with Google to use the Adwords program, and discontinued his use of Adwords in 2010. Plaintiff then learned that a different company was using its trademark through Google's Adwords program, and sued for trademark infringement. Google attempted to change venue to the Northern District of California pursuant to a venue clause in the Adwords contract with plaintiff. The court denied the motion because Google was attempting to apply the clause to claims outside the language of the contract itself:

> The Court DENIES Defendant's Motion to Transfer. It is clear from a plain reading of the forum selection clause in light of Plaintiff's Agreement that the clause does not apply to the claims at issue here. *See Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. 2009)("Contract terms are to be given their ordinary meaning. . . . Whenever possible, the plain language of the contract should be considered first. . . . We read a written contract as a whole, and interpret each part with reference to the whole."). The Agreement explicitly "govern[s] *Customer's* participation in Google's advertising program(s)." Opp'n 5:7-9 (emphasis by court). The Agreement solely addresses *Plaintiff's* participation as a customer in Defendant's advertising program, not Plaintiff's rights or duties in regard to a third party's unlawful infringement of its trademark.

905 F.Supp.2d at 1085 (emphasis in original). Similarly, Plaintiffs' employment agreements do not address or control any claims involving antitrust activity with and between third parties and their employer. Accordingly, the language of the employment agreements cannot be stretched beyond the purpose and intent of the employment relationship to force a change of venue in this situation.

**B.     Plaintiffs have met the requirements for proceeding with this lawsuit in this venue.**

5

Case No. 14-cv-04634-LHK
PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO TRANSFER
UNDER 28 U.S.C. §1404(a)

Plaintiffs agree that litigants and courts should minimize undue expense and resources; this is why the lawsuit was filed in this district, where the Court is already familiar with the precise issues at bar: the anti-poaching agreement among the major players in technology. In fact, the factors listed by the court in *Jones v. GNC Franchising, Inc.,* 211 F.3d 495 (9th Cir. 2000), apply in favor of keeping the matter in the Northern District, rather than transfer it to Washington, where Microsoft will apparently ask a court would look to an employment agreement, and Plaintiffs' supervisors, to assess their job duties and performance appraisals.

In *Jones,* the court listed eight factors to consider when presented with a motion to transfer. 211 F.3d at 498-99. (Mtn. at 5)  Some of these factors are considered affecting the "private interest," which address the convenience of the parties and witnesses, and others affect the "public interest," which address the interests of justice, governing law, and relevant venues' interest in the litigation. (Mtn. at 6, referencing *Jones* at 499)  Analysis of each of the *Jones* factors militates in favor of maintenance of the suit in this Court, both in the public and the private arenas.

**1. The private factors weigh in favor of litigation in the Northern District.**

Contrary to Microsoft's analysis of the *Jones* factors, private concerns (other than Microsoft's) weigh in favor of litigation in <u>this</u> Court. Plaintiffs will address the factors by the numbers *Jones* referenced in that opinion at 498-99.

<u>One,</u> "the location where the relevant agreements were negotiated and executed," cuts toward *this* District. Plaintiffs maintain that the Agreement contained in Exhibit 661 was entered into and negotiated in Silicon Valley, because Google and Apple each have their headquarters in Silicon Valley, and Microsoft has a commanding presence here as well. Discovery will bear out whether this is true. The employment agreements Microsoft relies upon to transfer venue are not at issue in this case. There is no breach of contract cause of action in this lawsuit, only claims referencing whether the anti-poaching conduct present in the Agreement violates the antitrust laws.

1    Microsoft attempts to shoehorn the dispute into the employment agreements by arguing
2 that because the non-compete clause existed, Microsoft employees had no incentive to leave their
3 employment because they could not be hired away without waiting for a year.  But Microsoft
4 **admits** that the employees "agreed to something different."  (Mtn. at 8)  The difference is that
5 the employees are not a party to the anti-poaching agreement, but are only affected by it.  This is
6 a critical distinction.  The Agreement is Silicon Valley centered.  Further, Microsoft sidesteps the
7 elephant in the room:  what about California Microsoft employees who are part of the putative
8 class, and who did NOT have non-compete clauses in their employment agreements?  The
9 relevant agreement is the anti-poaching agreement, rather than the employment agreements, and
10 took place in Silicon Valley.

11   Three, "Plaintiffs' choice of forum" is in the Northern District.  This, too, falls toward
12 maintenance of the lawsuit in this Court.

13   Four, "the respective parties' contacts with the forum" weighs in favor of this District as
14 well, because Microsoft's presence in Silicon Valley cannot be disputed.  While Plaintiffs do not
15 currently know the putative class size, a search of Microsoft employees in California yielded a
16 finding that there are 921 employees at the Mountain View location alone, not including Palo
17 Alto or other California employees.  Of these 921 employees, Plaintiffs do not currently know
18 how many of those employees may have been affected by the anti-competitive practices.
19 However, Plaintiffs maintain that this preliminary information indicates that numerosity will be
20 met and deserves consideration by the Court as guardian of the putative class.  (Decl. of
21 Menhennet, Exh. 4)

22    Microsoft's clear presence in the Northern District, together with Plaintiffs' choice in
23 selecting this forum, indicates that the "convenience of the parties," while perhaps not
24 Microsoft's first choice, rests in this Court.  Microsoft asserts that Washington witnesses militate
25 in favor of transfer, but Microsoft's supposed list of witnesses has nothing to do with the
26 Agreement, but rather concern private individual employment issues which are not alleged in the
27 complaint, and include Ryan's former supervisor, one of Rau's superiors, and a personnel
28

7

management manager.  None of these proposed witnesses will ever be called, as employee performance is not at issue.

<u>Five,</u> "the contacts relating to the plaintiff's cause of action in the chosen forum" are evident:  the parties to the Agreement all maintain offices in Silicon Valley.  All of the co-conspirators have substantial presence in Silicon Valley.

Finally, <u>eight,</u> "the ease of access to sources of proof" does not weigh in favor of transfer.  Microsoft admits that the ease of electronic transmission of documents essentially negates this factor as a consideration.  (Mtn. at 10)  Further, it appears that many relevant documents may already be present in this Court due to Microsoft's apparent involvement in the Agreement.

**2.   The public factors weigh in favor of continued litigation in this forum.**

Applying the *Jones* factors by the number associated with them:

<u>Two,</u> "the state most familiar with the governing law" leans neither way, as presumably any federal forum can adjudicate Sherman Act claims.  However, as this Court has already been adjudicating the issues to be litigated in this matter in the related case, this factor weighs in favor of maintaining the lawsuit where it currently sits.  Further, California provides additional antitrust protections in the Clayton Act, which would not be present if the case were moved to Washington.  Microsoft's argument that Washington courts are more familiar with employee agreements not to compete is irrelevant, as employee non-compete agreements are not before the Court.  The antitrust agreement is before the Court.

<u>Six,</u> "the differences in the costs of litigation in the two forums" weighs in favor of litigation in Silicon Valley.  The recruiters and witnesses who were involved in creating and negotiating the Agreement are present in Silicon Valley.  Microsoft's argument that Plaintiffs' former supervisors reside in Washington is patently irrelevant, as Plaintiffs' job performance is not at issue in this litigation.  Should Plaintiffs' presence be required at any particular proceeding, Plaintiffs will duly attend.

Seven, "the availability of compulsory process to compel attendance of unwilling non-party witnesses" also weighs in favor of maintaining the action in California. If the Agreement was negotiated in Silicon Valley as Plaintiffs maintain, then the key witnesses are likely California residents subject to the Court's personal jurisdiction. As mentioned, Microsoft's suggestion that Plaintiffs' supervisors may not be available to come to California will never arise. Plaintiffs are not calling their former supervisors to testify as to their personnel files or job duties or job performance.

Applying the factors above, Microsoft cannot show that a garden-variety "employment" dispute compels transfer to Washington. This is not a garden-variety employment dispute. It is an antitrust conspiracy dispute. Further, the additional protections the Clayton Act provides putative class members provide further reason to maintain the suit in California.

## IV.  CONCLUSION

Microsoft's motion to transfer would have teeth if the employment agreements were at issue in this antitrust suit. They are not. The anti-poaching agreement is what is before the Court, which the Court has already had the opportunity to adjudicate in the *High Tech* matter. There is no forum selection clause in this Agreement. This lawsuit is properly before the Court, as it is intimately, and inextricably, intertwined with the Agreement at issue in *High Tech*. Microsoft has presented no relevant evidence that this matter is suitable for transfer under Section 1404(a). The motion should be denied.

Dated:  January 15, 2015           **THE MARKHAM LAW FIRM**

By: /s/ Janine R. Menhennet
Janine R. Menhennet
jmenhennet@markham-law.com
Attorneys for Plaintiffs