Stephen M. Rummage (admitted *pro hac vice*)
steverummage@dwt.com
Robert J. Maguire (admitted *pro hac vice*)
robmaguire@dwt.com
Candice M. Tewell (admitted *pro hac vice*)
candicetewell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:   (206) 622-3150
Facsimile:   (206) 757-7700

Allison A. Davis (CA State Bar No. 139203)
allisondavis@dwt.com
Sanjay M. Nangia (CA State Bar No. 264986)
sanjaynangia@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599

Attorneys for Microsoft Corporation

# IN THE UNITED STATES DISTRICT COURT

# THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| DESERAE RYAN, and TRENT RAU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | Case No. 5:14-cv-04634-LHK<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**<br><br>Date: April 9, 2015<br>Time: 1:30 p.m.<br>Department:  Hon. Lucy H. Koh<br>                         Courtroom 8 – 4th Floor |

DAVIS WRIGHT TREMAINE LLP

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................. 1

II.    ARGUMENT ........................................................................................................................ 2

      A.    The Private Interest Factors Favor Transfer to Washington. ................................... 2

            1.    Ryan and Rau Agreed to Litigate in Washington. ........................................ 2

            2.    Washington Is the More Convenient Forum. ................................................ 4

      B.    The Public Interest Factors Favor Transfer to Washington. ..................................... 8

III.    CONCLUSION ................................................................................................................... 10

DAVIS WRIGHT TREMAINE LLP

MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954960v7 0025936-002211

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple, Inc.*,
　602 F.3d 909 (8th Cir. 2010) ............................................................................................... 7

*Applied Med. Distribution Corp. v. Surgical Co. BV*,
　587 F.3d 909 (9th Cir. 2009) ............................................................................................... 3

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
　134 S. Ct. 568 (2013) ...................................................................................................... 2, 4

*Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*,
　2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) .................................................................... 3

*BlazeFrame Indus., Ltd. v. Cal. Expanded Metal Prods. Co.*,
　2013 WL 2458754 (W.D. Wash. 2013) ........................................................................... 5, 9

*Bunker v. Union Pac. R.R. Co.*,
　2006 WL 193856 (N.D. Cal. Jan. 23, 2006) ....................................................................... 4

*CYBERsitter, LLC v. Google Inc.*,
　905 F. Supp. 2d 1080 (C.D. Cal. 2012) ........................................................................... 3, 6

*Decker Coal Co. v. Commonwealth Edison Co.*,
　805 F.2d 834 (9th Cir. 1986) ........................................................................................... 2, 4

*Gates Learjet Corp. v. Jensen*,
　743 F.2d 1325 (9th Cir. 1984) ............................................................................................ 5

*Geo. F. Martin Co. v. Royal Ins. Co. of Am.*,
　2004 WL 1125048 (N.D. Cal. May 14, 2004) .................................................................... 5

*Google, Inc. v. Microsoft Corp.*,
　415 F. Supp. 2d 1018 (N.D. Cal. 2005) .............................................................................. 9

*Italian Colors Rest. v. Am. Express Co.*,
　2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .................................................................. 8

*Jones v. GNC Franchising, Inc.*,
　211 F.3d 495 (9th Cir. 2000) .............................................................................................. 4

*In re Microsoft Corp.*,
　630 F.3d 1361 (Fed. Cir. 2011) .......................................................................................... 7

*Park v. Dole Fresh Vegetables, Inc.*,
　964 F. Supp. 2d 1088 (N.D. Cal. 2013) ................................................................. 4, 6, 7, 8

*Royal Queentex Enters. v. Sara Lee Corp.*,
  2000 WL 246599 (N.D. Cal. 2000) ........................................................................................... 5

**State Cases**

*R.E. Spriggs Co. v. Adolph Coors Co.*,
  37 Cal. App. 3d 653 (1974) ..................................................................................................... 9

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ........................................................................................................... 8

**Federal Statutes**

28 U.S.C. § 1404(a) ........................................................................................................... 1, 2, 4

**State Statutes**

Cal. Bus. & Prof. Code § 16600 .................................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ................................................................................... 6

MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954960v7 0025936-002211

DAVIS WRIGHT TREMAINE LLP

## I.  INTRODUCTION

The relevant § 1404(a) private and public interest factors overwhelmingly favor transfer to the Western District of Washington.  Deserae Ryan and Trent Rau's Opposition ignores the many connections between their claims and Washington, pretending instead that "Microsoft's entire basis for transfer is that Plaintiffs signed an employment contract in Washington with a forum-selection clause of [sic] the Western District of Washington."  Opp. [Dkt. 37] 1:3-5.  Not so.  While Ryan and Rau *did* sign an enforceable agreement to resolve employment disputes in Washington State—and that fact supports transfer—the connections with Washington go much deeper.  Ryan and Rau lived and worked for Microsoft in Washington.  To the extent their compensation was suppressed, as they allege, it happened in Washington.  Rau still lives in Washington.  Further, Microsoft is incorporated and has its headquarters in Washington, where its senior executives (who supposedly engineered the alleged unlawful scheme) work, where it employs the vast majority of its workforce (the putative class), and where it enters into employee agreements governed by Washington law and containing Washington forum selection provisions.  And the witnesses who would know whether Microsoft entered into or enforced the alleged illegal agreements reside in Washington.  By contrast, neither Ryan nor Rau lives in or has any apparent connection to the Northern District of California.  In practical terms, this case belongs in Washington State, and Ryan and Rau contest none of the facts leading to that conclusion.

Instead, in opposing transfer, Ryan and Rau mischaracterize several of Microsoft's arguments and fail to address others in an attempt to obscure the many considerations linking this case to Washington.  Ultimately, their opposition to transfer comes down to one thing:  they believe they have a right to piggy-back in this district on the work completed by the plaintiffs in *In re High-Tech*, a case alleging the existence of different agreements between different defendants on behalf of different classes.  *See, e.g.*, Opp. 3:1-3 (arguing Ryan and Rau had a "duty" to file in this district to determine the effect of the alleged agreements on employees of unidentified Silicon Valley companies for which they never worked).  The Court should reject Ryan and Rau's forum shopping and transfer the case to the Western District of Washington to further "the convenience of the parties and witnesses, [and] the interest of justice."  28 U.S.C. § 1404(a).

DAVIS WRIGHT TREMAINE LLP

1

MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954960v7 0025936-002211

## II. ARGUMENT

### A. The Private Interest Factors Favor Transfer to Washington.

Courts commonly divide the relevant considerations on a § 1404(a) motion into private and public interest factors affecting the convenience of the forum, with the private factors including those related to the convenience of the parties and witnesses. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). If parties agree on a forum to resolve their dispute, courts treat the private interest factors as being resolved in favor of the chosen forum, leaving only the public interest factors to be considered. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013).

Ryan and Rau each agreed with Microsoft to resolve their disputes in Washington. In any event, Washington is by far the more convenient forum for the parties and likely witnesses.

#### 1. Ryan and Rau Agreed to Litigate in Washington.

Ryan and Rau agreed to refrain from competitive employment for one year after leaving Microsoft and to litigate in Washington any disputes relating to their employee agreements with Microsoft. Greenall Decl. [Dkt. 28] ¶¶ 6-8, Exs. A & B. Ryan and Rau tacitly concede they signed employee agreements with Microsoft containing enforceable Washington forum selection provisions. *See* Opp. 4:26-5:1. Their disagreement with Microsoft therefore turns on whether the present dispute "arise[s] out of" these employee agreements. In arguing that it does not, Ryan and Rau rely on a flawed syllogism: the forum selection clause covers only claims "arising out of" the employee agreements; their claims arise out of an alleged agreement between Microsoft and Google; therefore, they conclude, this litigation does not fall within the forum selection clause. Opp. 4:26-5:5. But litigation can (and often does) arise from and require interpretation of more than one agreement. And here the claims arise from **both** Ryan and Rau's employee agreements **and** the alleged agreement supposedly embodied in *In re High Tech* Exhibit 661.[1]

This conclusion flows from the law Microsoft discussed in its motion, which Ryan and Rau fail to address. As Microsoft explained, claims requiring interpretation of a contract "arise

---

[1] Ryan and Rau's argument that enforcing the forum selection clause would flout constitutional principles and/or the supremacy clause defies reason. *See* Opp. 1:11-16. The Western District of Washington is capable of resolving a Sherman Act claim.

DAVIS WRIGHT TREMAINE LLP

out of" that contract, even if the claims sound in tort or also arise under a statute. In *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009), for example, the Ninth Circuit enforced a forum selection clause because a Belgian company's claims under a Belgian statute (i.e., the Belgian Act of 1961) arose out of and required interpretation of the company's contract with its American distributor. *Id.* at 919; *see also Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136, *3 (C.D. Cal. Aug. 12, 2010) (enforcing forum selection clause for statutory and tort claims arising out of contract).

Rather than address this body of law, Ryan and Rau rely on a single case, *CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080 (C.D. Cal. 2012), which does not analyze the scope of the phrase "arising out of." *Id.* at 1085. Further, although the *CYBERsitter* court did not examine the issue, it does not appear interpretation of the contract between CYBERsitter and Google was necessary to resolve CYBERsitter's claims: the contract addressed CYBERsitter's participation in Google's online advertising program; the dispute, however, revolved around a third party's use of CYBERsitter's trademark while advertising with Google. *Id.* at 1083, 1085. Nothing in the case suggested CYBERsitter's claims required interpretation of its contract with Google.

In contrast, resolving Ryan and Rau's claims *will* require interpretation of their employee agreements with Microsoft, including the provisions reasonably limiting their right to engage in competitive employment. To resolve Ryan and Rau's claims, the finder of fact will need to interpret the rights of Microsoft, Ryan, Rau, and other Microsoft employees under the employee agreements to determine whether (a) the alleged conspiracy is implausible in light of the existing protection afforded by Microsoft's standard employee agreements; (b) employees agreed not to accept competitive employment with companies such as Google; and (c) these agreements negate, mitigate, or otherwise affect any alleged antitrust injury. This dispute thus "arise[s] out of" Ryan and Rau's employee agreements with Microsoft because it cannot be resolved without interpreting the non-competition covenants and assessing their impact on the alleged ability of Microsoft's employees (including Ryan and Rau) to move at will to competitors. *See Bagdasarian Productions*, 2010 WL 5154136, *3 (enforcing forum selection clause when claims required interpretation of whether the contract transferred rights and the scope of duties under the contract).

DAVIS WRIGHT TREMAINE LLP

3
MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954960v7 0025936-002211

The existence and enforceability of the forum selection clause waives Ryan and Rau's right to contest the private interest factors and leaves only the public interest factors for the Court to consider. *See Atl. Marine Constr.*, 134 S. Ct. at 582.

### 2. Washington Is the More Convenient Forum.

Aside from the forum selection clause, the parties, likely witnesses, and evidence are all in Washington. Microsoft's relevant actions, if any, likely occurred in Washington. By contrast, neither Ryan nor Rau resides in or has relevant contacts with the Northern District of California. And the Complaint and Opposition identify no nonparty witnesses located in California. This litigation would be more convenient and less expensive in Washington.

*Convenience of parties and party witnesses*.[2] Ryan and Rau do not contest that the convenience of the parties favors Washington. Microsoft's headquarters are in Redmond, Washington, where its senior executives work; over 70 percent of Microsoft's employees and 80 percent of its managers work in Washington. *See* Greenall Decl. ¶¶ 3-5. Microsoft identified several employees it might call as witnesses. *See* Mot. to Transfer [Dkt. 26] at 9:14-20. Ryan and Rau contend these witnesses have nothing to say because Ryan and Rau's supervisors and a manager from personnel management could not have relevant testimony. *See* Opp. 7:24-8:2. In fact, these witnesses will provide testimony regarding Ryan and Rau's work responsibilities at Microsoft, including essential testimony regarding whether Ryan and Rau even fall within the classes they purport to represent. *See* Clem Decl. [Dkt. 27] ¶¶ 3-4; Zander Decl. [Dkt. 31] ¶¶ 3-4.

Washington also provides a more convenient forum for Rau, who lives in Washington. Compl. [Dkt. 1] ¶ 19. It is no less convenient for Ryan, who would have to travel to either forum.

*Convenience of nonparty witnesses*. Ryan and Rau's Opposition does not address the convenience of nonparty witnesses, despite this Court's reminder that "[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (quoting *Bunker v. Union Pac. R.R.*

---

[2] Ryan and Rau focus on the *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), factors to the exclusion of relevant interests identified in § 1404(a) itself and other Ninth Circuit precedents, including *Decker Coal Co.*, 805 F.2d 834. Microsoft's Reply therefore necessarily addresses several factors Ryan and Rau fail to discuss.

4

1  *Co.*, 2006 WL 193856, *2 (N.D. Cal. Jan. 23, 2006)).  Microsoft identified several nonparty
2  witnesses it might call to testify in this action and generally described the topics about which they
3  may testify.  *See* Mot. 12:16-23.  As explained above, the nonparty witnesses may be able to
4  provide necessary testimony to determine whether Ryan and Rau even fall within the classes they
5  purport to represent.

6        Ryan and Rau vaguely refer to unidentified "key witnesses" who "are likely California
7  residents subject to the Court's personal jurisdiction."  Opp. 9:2-4.  The Court should disregard
8  that non-specific assertion.  Parties must "provide specific information regarding the identity and
9  location of witnesses, and the content and relevance of their testimony."  *Geo. F. Martin Co. v.*
10 *Royal Ins. Co. of Am.*, 2004 WL 1125048, *3 (N.D. Cal. May 14, 2004) (quoting *Royal Queentex*
11 *Enters. v. Sara Lee Corp.*, 2000 WL 246599, *6 (N.D. Cal. 2000)); *see also BlazeFrame Indus.,*
12 *Ltd. v. Cal. Expanded Metal Prods. Co.*, 2013 WL 2458754, *2 (W.D. Wash. 2013) ("The court
13 should consider how many witnesses each side may have and the relative importance of their
14 testimony."); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (analyzing
15 factors under forum non conveniens standard).  The *George F. Martin* court ordered transfer after
16 plaintiffs "failed to identify *even one* non-party witness in the Northern District (or any other
17 district) of California."  2004 WL 1125048, *3.  This Court should follow suit.

18       ***Location where relevant agreements negotiated and executed.***  Ryan and Rau argue
19 Microsoft must have entered into an anti-poaching agreement with Google in Silicon Valley,
20 making this Court the preferred forum for this litigation.  While they point to Exhibit 661 from *In*
21 *re High Tech* and claim it memorializes an agreement, they set forth no facts suggesting the
22 supposed agreement—if it existed at all—was negotiated in Silicon Valley rather than in
23 Washington (or elsewhere).  Opp. 2:4-9; Menhennet Decl. [Dkt. 37-1] Ex. 1; *see also In re High-*
24 *Tech*, No. 5:11-cv-02509-LHK, Public Exs. to Cisneros Decl. [Dkt. 428-10] Ex. 661.  Exhibit 661,
25 an internal Google document, describes a Google policy, not an agreement between Microsoft and
26 Google; does not say who negotiated or entered into such an agreement, if it existed; and does not
27 show where the alleged agreement was negotiated or executed.  Ryan and Rau suggest the
28 agreement *must* have been entered into at Google's headquarters in Silicon Valley or Microsoft's

DAVIS WRIGHT TREMAINE LLP

5
MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO TRANSFER
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954960v7 0025936-002211

offices in that area, but it might just as easily have been negotiated and executed at Microsoft's headquarters in Redmond, Washington, or Google's offices in nearby Kirkland and Seattle. With no *evidence* Microsoft and Google entered into an alleged agreement in Silicon Valley, this factor cannot favor California. *See, e.g.*, *CYBERsitter, LLC*, 905 F. Supp. 2d at 1084 ("When a party seeks enforcement of a forum selection clause under Rule 12(b)(3), a district court is not required to accept the pleadings as true and may consider facts outside the pleadings.").

Further, Ryan and Rau signed their employee agreements with Microsoft in Washington, not California; as discussed above, those agreements bear on this case. Although Ryan and Rau concede they entered into (and performed) their agreements in Washington, they urge the Court to focus instead on Microsoft's small cadre of California employees, who they assert "did NOT have non-compete clauses in their employment agreements[.]" Opp. 7:6-8. But no California employees are before the Court. This Motion addresses the appropriate forum to litigate Ryan and Rau's claims, and their Microsoft employee agreements were negotiated and executed in Washington—and Washington law governs their interpretation. *See* Greenall Decl. ¶¶ 7-8, Exs. A & B. The location of the agreements favors transfer to Washington.

*Plaintiffs' choice of forum.* Ryan and Rau declare that their choice of the Northern District should weigh against a transfer. *See* Opp. 7:11-12. But they ignore the law, which is to the contrary. As Microsoft explained, Mot. 15:19-16:27, a court should not defer to plaintiffs' choice of forum where "(1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims occurred in a different forum, (3) the plaintiff sues on behalf of a putative class, or (4) plaintiff's choice of forum was plaintiff's second choice," i.e., plaintiff engages in forum shopping. *Park*, 964 F. Supp. 2d at 1094 (citations and internal quotation marks omitted).

All of these factors counsel against deference to Ryan and Rau's choice of forum. *First*, neither Ryan nor Rau lives in this District. Compl. ¶ 19; Zander Decl. ¶ 5; Tewell Decl. [Dkt. 29] Exs. A & B. *Second*, Ryan and Rau allege nothing to suggest Microsoft acted in relation to them or to the alleged unlawful agreement in California, rather than from its headquarters in Washington, where its senior executives and corporate recruiters are located. *Third*, Ryan and Rau sue on behalf of two putative classes of Microsoft employees, and the vast majority of both

putative classes live and work in Washington.  **Fourth**, Ryan and Rau engaged in forum shopping; they plainly hope to taint Microsoft with the highly publicized evidence of a conspiracy among Silicon Valley companies—a conspiracy in which Microsoft played no part.

The Court should show no deference to Ryan and Rau's choice of forum.

***Parties' contacts with the fora.***  Ryan and Rau do not allege they have *any* contacts with the Northern District of California.  Instead, they argue *Microsoft* has contacts in the Northern District, stressing its employment of approximately 900 people in California.  Opp. 7:13-21.  But Ryan and Rau ignore the balance of Microsoft's contacts with the fora:  over 70 percent of Microsoft's employees and 80 percent of its managers work in Washington; fewer than 6.5 percent of its employees and 5.5 percent of its managers work in California.  Greenall Decl. ¶ 5.

Further, Ryan and Rau worked for Microsoft in Washington, not California. *Id.* ¶¶ 7-8. The parties' contacts with the two forum states weigh heavily in favor of a transfer to Washington.

***Contacts relating to cause of action.***  Ryan and Rau argue that the "parties to the Agreement"—presumably Microsoft and Google—maintain offices in Silicon Valley.  Opp. 8:3-5. But they do not explain how Microsoft's offices in California relate to their claims.  Indeed, under Ryan and Rau's logic, Washington presents an equally compelling forum because both Microsoft and Google maintain offices in the Seattle area.  In the end, this factor does not favor either venue.

***Costs of litigation.***  "Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify …" *Park*, 964 F. Supp. 2d at 1095.  Microsoft's Motion presented evidence that its party and nonparty witnesses live and work in Washington.  If Microsoft's witnesses must travel to San Jose for trial, Microsoft will "incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work.… These costs would be significantly minimized or avoided by transfer." *In re Apple, Inc.*, 602 F.3d 909, 913-14 (8th Cir. 2010) (citation omitted); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).  Rau also lives in Washington.

Ryan and Rau's Opposition identifies no witnesses they may call at trial, much less indicates where those witnesses might live.  The costs of litigation favor transfer to Washington.

7

***Availability of compulsory process*.** Microsoft identified specific nonparty witnesses it might call to testify in this action and described the topics on which they might testify. Mot. 12:16-23. By contrast, Ryan and Rau fail to identify a single witness whom they may wish to present at trial. Instead, they speculate that unidentified key witnesses *may* be from California. *See* Opp. 9:2-4. Ryan and Rau cannot show the superiority of the California forum without identifying specific witnesses to be subpoenaed. On the record, this factor favors transfer to Washington.

***Ease of access to sources of proof*.** Ryan and Rau discount this factor but do not dispute that Microsoft maintains its relevant records in Washington. *See* Opp. 8:6-8. Ryan and Rau appear to believe the Court may be a source of relevant records and elements of proof, but do not explain what evidence they believe the Court may have or how they might go about admitting that evidence in this litigation. *Id.* 8:8-9. As this Court recognizes, "costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Park*, 964 F. Supp. 2d at 1095 (citing *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, *5 (N.D. Cal. Nov. 10, 2003)). Because Microsoft maintains the majority of its records in Washington, this factor also favors transfer to the Western District of Washington.

### B.   The Public Interest Factors Favor Transfer to Washington.

The interests of justice and related public interest factors also favor transfer to Washington, because this case involves a putative class dispute between a major Washington employer and its largely Washington-based workforce, and the interpretation of employee agreements governed by Washington law. *See Park*, 964 F. Supp. 2d at 1095-96.

***State most familiar with governing law*.** Ryan and Rau assert this factor favors neither the California nor the Washington forum because their Sherman Act claim arises under federal law. *See* Opp. 8:12-14. They also appear to believe their Cartwright Act[3] claim can be heard only in California. *Id.* 8:15-18. But the *forum* does not alter Ryan and Rau's access to California law; rather, their status as Washington employees of a Washington company takes them outside the reach of these statutes. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (UCL does

---

[3] Ryan and Rau misidentify the Cartwright Act as the federal Clayton Act. *See* Opp. 8:15-18.

not operate outside California); *R.E. Spriggs Co. v. Adolph Coors Co.*, 37 Cal. App. 3d 653 (1974) (Cartwright Act applies only to intrastate effects of trade); *Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1022 (N.D. Cal. 2005) (Bus. & Prof. Code § 16600 protects only California employees); *see* Mot. to Dismiss [Dkt. 32] § IV(C).

Washington law also governs Microsoft's relationship with Ryan and Rau, as well as its relationships with the vast majority of the putative class members. *See* Greenall Decl. ¶ 6. Unlike California courts, Washington courts are familiar with covenants requiring Washington employees to limit their employment with competitors, such as the agreements Ryan and Rau signed with Microsoft. *See id.* Exs. A & B. The enforceability of these covenants makes it implausible that Microsoft would enter into agreements with competitors and undermines Ryan and Rau's theory that the alleged restrictive hiring agreements harmed them. The Washington courts' familiarity with these issues favors transfer to the Western District.

*Local interest.* Ryan and Rau do not challenge Washington's significant interest in resolving litigation between its citizens, such as the present dispute between Rau, the majority of the putative class members, and Microsoft. *See BlazeFrame Indus.*, 2013 WL 2458754, *4 (explaining states have strong interest in litigation involving local companies). Nor do Ryan and Rau address California's minimal interest in litigation between a major Washington employer and classes consisting of its Washington-based employees. The fact that Ryan moved to California after leaving her job at Microsoft has no impact on this factor, which favors a Washington forum.

*Court congestion.* Ryan and Rau do not address court congestion. As Microsoft's Motion shows, this factor slightly favors the Western District of Washington, where cases move to trial more quickly. *See* Tewell Decl. Ex. E.

*Potential consolidation with other actions.* Ryan and Rau do not directly address this factor, but repeatedly suggest this Court must keep this action so they may benefit from evidence admitted in *In re High-Tech*. In fact, the potential for consolidation should have no bearing on the Court's decision. This action and *In re High-Tech* share no parties, and to Microsoft's knowledge none of the evidence developed in *In re High-Tech* suggests Microsoft entered into any anti-competitive agreement with Google or any other California companies. Perhaps most important,

9

DAVIS WRIGHT TREMAINE LLP

this case and *In re High-Tech* are in entirely different procedural postures, rendering consolidation both inefficient and highly unlikely: after nearly four years of litigation, the *In re High-Tech* plaintiffs recently moved for approval of a revised class action settlement, and the defendants joined in that motion. *See In re High-Tech*, No. 5:11-cv-02509-LHK (N.D. Cal.), Mot. to Approve Class Action Settlement [Dkt. 1032] & Joinders [Dkts. 1039 & 1041]. In contrast, Ryan and Rau filed their Complaint only in October 2014. No matter what happens with settlement approval in *In re High-Tech*, this case will lag behind *In re High-Tech*. Retaining the litigation in this district will not provide a meaningful opportunity for consolidation.

### III.   CONCLUSION

Based on the foregoing, Microsoft respectfully requests that the Court transfer this action to the Western District of Washington, Seattle Division.

DATED: January 28, 2015.                    DAVIS WRIGHT TREMAINE LLP

By:   */s/ Stephen M. Rummage*

Stephen M. Rummage (admitted *pro hac vice*)
Robert J. Maguire (admitted *pro hac vice*)
Candice M. Tewell (admitted *pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:   (206) 622-3150
Facsimile:   (206) 757-7700

Allison A. Davis (CA State Bar No. 139203)
Sanjay M. Nangia (CA State Bar No. 264986)
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599

*Counsel for Defendant Microsoft Corporation*