1   Stephen M. Rummage (*pro hac vice*)
    *steverummage@dwt.com*
2   Robert J. Maguire (*pro hac vice*)
    *robmaguire@dwt.com*
3   Candice M. Tewell (*pro hac vice*)
    *candicetewell@dwt.com*
4   DAVIS WRIGHT TREMAINE LLP
    1201 Third Avenue, Suite 2200
5   Seattle, Washington 98101-3045
    Telephone:    (206) 622-3150
6   Facsimile:    (206) 757-7700

7   Allison A. Davis (CA State Bar No. 139203)
    *allisondavis@dwt.com*
8   Sanjay M. Nangia (CA State Bar No. 264986)
    *sanjaynangia@dwt.com*
9   DAVIS WRIGHT TREMAINE LLP
    505 Montgomery Street, Suite 800
10  San Francisco, California  94111
    Telephone:    (415) 276-6500
11  Facsimile:    (415) 276-6599

12  Attorneys for Microsoft Corporation

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16
    DESERAE RYAN, and TRENT RAU,            )   Case No. 5:14-cv-04634-LHK
17  individually and on behalf of all others similarly  )
    situated;                               )   **MICROSOFT CORPORATION'S REPLY**
18                                          )   **IN SUPPORT OF MOTION TO DISMISS**
                                            )   **PURSUANT TO FED. R. CIV. P. 12(b)(6)**
19              Plaintiffs,                 )
                                            )   Date:  April 9, 2015
20          vs.                             )   Time:  1:30 p.m.
                                            )    Department:  Hon. Lucy H. Koh
21  MICROSOFT CORPORATION, a Washington     )                 Courtroom 8 – 4th Floor
    corporation;                            )
22                                          )
                Defendant.                  )
23  _____)

24

25

26

27

28

_Vertical left margin:_ DAVIS WRIGHT TREMAINE LLP

**DAVIS WRIGHT TREMAINE LLP**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

     A.     The Four-Year Limitations Periods Bar Ryan and Rau's
          Claims ............................................................................................................ 2

          1.     Ryan and Rau Fail to Allege the Facts Necessary to Allow Tolling Based on
               Fraudulent Concealment. ................................................................... 2

          2.     Ryan and Rau Do Not Sufficiently Allege an Antitrust Violation Continuing
               after October 14, 2010. ...................................................................... 4

          3.     Ryan and Rau Cannot Save Their Untimely Claims by Claiming Damages
               Were Speculative until May 2013. .................................................... 6

          4.     California's "Delayed Discovery" Doctrine Cannot Save Ryan and Rau's State
               Law Claims. ....................................................................................... 7

     B.     Ryan and Rau Failed to Plead Claims under the Sherman Act
          or the Cartwright Act ..................................................................................... 9

     C.     Ryan and Rau Have Failed to Plead Connections with
          California Sufficient to State a Claim under California
          Statutes. ........................................................................................................ 12

     D.     Ryan and Rau Lack Standing to Pursue a Monetary Claim
          under the UCL. ............................................................................................. 13

     E.     Ryan and Rau Lack Standing to Pursue Claims for Injunctive
          and Declaratory Relief. ............................................................................... 14

III.    CONCLUSION .................................................................................................... 15

1

**TABLE OF AUHORITIES**

2

**Federal Cases**

3

*ABC Int'l Traders v. Yamaha Corp. of Am.*,
  1993 U.S. Dist. LEXIS 20947 (C.D. Cal. Jan. 27, 1993)..............................................2

4

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... *passim*

6

7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................5

8

*Benak v. Alliance Capital Mgmt. L.P.*,
  435 F.3d 396 (3d Cir. 2006)....................................................................................8

9

10

*Cal. ex rel. Lockyer v. Mirant Corp.*,
  2002 U.S. Dist. LEXIS 15733 (N.D. Cal. Aug. 6, 2002)..........................................2

11

12

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)................................................................................8

13

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
  858 F.2d 499 (9th Cir. 1988)............................................................................3, 4

14

15

*DeBenedictis v. Merrill Lynch & Co.*,
  492 F.3d 209 (3d Cir. 2007)..................................................................................8

16

17

*Department of Water & Power of the City of Los Angeles v. Allis-Chalmers
  Manufacturing Co.*,
  213 F. Supp. 341 (S.D. Cal. 1963) ..........................................................................4

18

19

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
  595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010)...........8

20

21

*Global Services v. IKON Office Solutions*,
  2011 U.S. Dist. LEXIS 143123 (N.D. Cal. Dec. 13, 2011) .......................................3

22

*Google, Inc. v. Microsoft Corp.*,
  415 F. Supp. 2d 1018 (N.D. Cal. 2005) ................................................................12

23

24

*Harris v. Duty Free Shoppers Ltd. Partnership*,
  940 F.2d 1272 (9th Cir. 1991)...........................................................................2, 3

25

26

*Herremans v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) ....................................2, 3, 4

27

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012)..........................................................................2, 3, 6

28

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*In re High-Tech Emp. Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 47181 (N.D. Cal. Apr. 4, 2014)..........................................................10

*In re High-Tech Emp. Antitrust Litig.*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................ *passim*

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................ *passim*

*Huck v. Pfizer, Inc.*,
    2011 U.S. Dist. LEXIS 81161 (S.D. Cal. 2011) ....................................................14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008)...............................................................1, 9, 10

*Lane v. Page*,
    649 F. Supp. 2d 1256 (D.N.M. 2009) ...........................................................8

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
    884 F.2d 504 (9th Cir. 1989)..................................................................9

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003)................................................................13

*Migliori v. Boeing North American, Inc.*,
    114 F. Supp. 2d 976 (C.D. Cal. 2000)..........................................................4

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .....................................................................12, 13

*Oliver v. SD-3C LLC*,
    751 F.3d 1081 (9th Cir. 2014), *pet. for cert. filed*, 83 U.S.L.W. 3349 (Dec. 1,
    2014) (No. 14-641)........................................................................2, 6, 7

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987).................................................................4, 6

*Plumlee v. Pfizer, Inc.*,
    2014 U.S. Dist. LEXIS 23172 (N.D. Cal. 2014)............................................1, 7, 8

*Salsgiver v. AOL, Inc.*,
    32 F. App'x 894, 2002 U.S. App. LEXIS 5099 (9th Cir. Mar. 22, 2002)....................................3

*Samsung Elecs. Co. v. Panasonic Corp.*,
    747 F.3d 1199 (9th Cir. 2014)...........................................................4, 5, 6, 7

*Science of Skincare, LLC v. Phytoceuticals, Inc.*,
    2009 U.S. Dist. LEXIS 58241 (C.D. Cal. July 8, 2009) ...........................................3

*Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*,
    393 F. Supp. 2d 1057 (E.D. Wash. 2005) .....................................................12

DAVIS WRIGHT TREMAINE LLP

*In re Transpacific Passenger Air Transp. Antitrust Litigation*,
  2011 U.S. Dist. LEXIS 49853 (N.D. Cal. May 9, 2011) ....................................................3

*United States v. Adobe Systems, Inc., et al.*,
  Case No. 1:10-cv-01629-RBW, Dkt. 1 (D.D.C. Sept. 24, 2010) ...........................5

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...........................................................................................15

*Zanze v. Snelling Servs., LLC*,
  412 F. App'x 994 (9th Cir. 2011) ...........................................................................15

**State Cases**

*Advanced Bionics Corp. v. Medtronic, Inc.*,
  29 Cal. 4th 697 (2002) ...........................................................................................13

*Amid v. Hawthorne Cmty. Med. Group, Inc.*,
  212 Cal. App. 3d 1383 (1989) .................................................................................3

*Cortez v. Purolator Air Filtration Products Co.*,
  23 Cal. 4th 163 (2000) ...........................................................................................14

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ...............................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .........................................................................................14

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) .............................................................................................9

*Norwest Mortg., Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) .............................................................................12, 13

*O'Dell v. Freightliner Corp.*,
  10 Cal. App. 4th 645 (1992) .....................................................................................3

*Perry v. Moran*,
  109 Wash. 2d 691, 700 (1987), *op. revised*, 111 Wash. 2d 885 (1989) ...................11

*R.E. Spriggs Co. v. Adolph Coors Co.*,
  37 Cal. App. 3d 653 (1974) ....................................................................................13

**Statutes**

California Business & Professions Code
  § 16600 .......................................................................................................... *passim*
  § 17200 .....................................................................................................................1, 13
  § 17208 .......................................................................................................................2

1

**Rules**

2

Federal Rule of Civil Procedure 9(b) ............................................................................3

3

**Other Authorities**

4

Jessica E. Vascellaro & Justin Scheck, *Justice Department Probes Hiring Practices
   in Silicon Valley*, Wall St. J. (June 3, 2009)................................................................8

5

Miguel Helft, *Unwritten Code Rules Silicon Valley Hiring*, N.Y. Times (June 3,
   2009)...........................................................................................................................8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211

# I.   INTRODUCTION

Deserae Ryan and Trent Rau have not pled (or even argued) facts sufficient either to excuse their failure to sue in a timely way or to give rise to a reasonable inference that Microsoft is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Their claims are time barred and insufficient as a matter of law.

Ryan and Rau sued years after the statutes of limitation on their claims expired. To excuse their untimely filing, they seek to invoke exceptions to traditional accrual rules. But they set forth no facts from which the Court could conclude Microsoft fraudulently concealed its alleged misconduct or committed acts in violation of the antitrust laws within the four years preceding the suit, requiring dismissal of the Sherman Act claim. Even under the discovery rule Ryan and Rau advocate for their state claims, they must allege facts showing diligence, and "conclusory allegations will not withstand a motion to dismiss." *Plumlee v. Pfizer, Inc*., 2014 U.S. Dist. LEXIS 23172, *26 (N.D. Cal. 2014) (citation omitted). They offer nothing to show diligence.

The absence of factual content extends to the substance of Ryan and Rau's claims, for which the law requires them to plead "not just ultimate facts …, but evidentiary facts." *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008). The Opposition relies entirely on the appearance of the word "Microsoft," along with an inaccurate list of "Microsoft" subsidiaries, on an internal Google document describing Google's hiring policies. But that Google document is equally consistent with Microsoft having engaged in lawful conduct. Further, Ryan and Rau offer no factual allegations as to *who* at Microsoft supposedly agreed with Google, ***where*** they did so, ***how*** Microsoft allegedly implemented the agreement, or ***when*** the agreement was in force. Perhaps most fundamentally, Ryan and Rau—who both worked for Microsoft in Washington— allege no facts that, if credited, might entitled them to invoke the California statutory remedies they now pursue against their Washington employer.

Finally, the facts Ryan and Rau plead negate any right to recover under the UCL, Business and Professions Code § 17200, or Business and Professions Code § 16600. The UCL affords no right to recover "suppressed wages." And Ryan and Rau are ***former*** Microsoft employees who lack standing to seek an injunction as to its future practices. The Court should dismiss all claims.

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211

DAVIS WRIGHT TREMAINE LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     ARGUMENT

### A.     The Four-Year Limitations Periods Bar Ryan and Rau's Claims.

Ryan and Rau's claims are subject to four year limitations periods, but they waited seven years to sue. Mot. [Dkt. 32] 7:4-7, n.1.[1]  They therefore argue a series of exceptions to traditional accrual rules, asserting "the limitations periods [sic] either did not accrue until May 2013, or were tolled until that time." Opp. [Dkt. 38] 4:2-3.  None of these exceptions can save their claims.

#### 1.     Ryan and Rau Fail to Allege the Facts Necessary to Allow Tolling Based on Fraudulent Concealment.

The Ninth Circuit has rejected a discovery rule for antitrust claims, so Ryan and Rau's subjective lack of awareness of their claims is irrelevant.  The statute of limitations may be tolled only if a defendant fraudulently conceals its conduct.  *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  Ryan and Rau invoke this exception, arguing (a) Microsoft had a duty to tell employees about its allegedly unlawful agreements but fraudulently failed to do so and (b) they alleged facts showing Microsoft actively and fraudulently concealed its misconduct.  Opp. 7:1-10:19.  Both arguments depend on misstatements of the law.

Ryan and Rau first assert that because Microsoft had "exclusive knowledge of material facts not known" to employees, it had a **duty** to disclose to employees that it had entered into unlawful agreements.  Opp. 7:24-25 (quoting *Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957, *19-20 (C.D. Cal. Oct. 3, 2014)).  But *Herremans* makes clear that mere failure to disclose material facts does not toll the limitations period on a fraudulent concealment theory; rather, "in the absence of a fiduciary relationship, non-disclosure will not support a finding of fraudulent concealment." *Id.* at *17-18.  Ryan and Rau therefore implausibly suggest Microsoft

---

[1] Ryan and Rau concede a four-year statute of limitations "generally govern[s]" their claims but argue laches principles control their claim under Business and Professions Code § 16600.  Opp. 3:14-15 & n.3.  But the Cartwright Act has an express four year statute of limitations, *see* Bus. & Prof. Code § 17208, and § 16600 is part of the Cartwright Act.  *See, e.g.*, *ABC Int'l Traders v. Yamaha Corp. of Am.*, 1993 U.S. Dist. LEXIS 20947, *20 (C.D. Cal. Jan. 27, 1993) (referring to "[t]he Cartwright Act, California Business and Professions Code §§ 16600, et seq."); *Cal. ex rel. Lockyer v. Mirant Corp.*, 2002 U.S. Dist. LEXIS 15733, *17 (N.D. Cal. Aug. 6, 2002) (same).  In any event, if the Court applies laches principles, it should use the four-year statute of limitation for legal claims as a "guideline" and "look to the same legal rules that animate the four-year statute of limitations."  *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1085-86 (9th Cir. 2014).

owed tens of thousands of Microsoft employees a fiduciary duty, citing *Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272, 1276 (9th Cir. 1991), for the proposition "that [an] employer and employee [a]re in a fiduciary relationship." Opp. 7:16-18. But *Harris* did not deal with an employer-employee relationship at all; instead, that case considered whether a fiduciary relationship existed between tour guides and tourists. *See* 940 F.2d at 1276. Further, Washington law governs Ryan and Rau's employment relationship with Microsoft, and they cite no Washington case suggesting an employer owes its employees such a fiduciary duty. Under California law, many cases hold "[a]n employer-employee relationship, without more, is not a fiduciary relationship." *Science of Skincare, LLC v. Phytoceuticals, Inc.*, 2009 U.S. Dist. LEXIS 58241, *8 (C.D. Cal. July 8, 2009) (citing *Amid v. Hawthorne Cmty. Med. Group, Inc.*, 212 Cal. App. 3d 1383, 1391 (1989)); *see also Salsgiver v. AOL, Inc.*, 32 F. App'x 894, 897, 2002 U.S. App. LEXIS 5099, *8 (9th Cir. Mar. 22, 2002) (same) (citing *O'Dell v. Freightliner Corp.*, 10 Cal. App. 4th 645, 659 (1992)).  Because Microsoft had no duty to disclose anything to Ryan and Rau, its silence could not amount to fraudulent concealment.

Absent a duty to disclose, Ryan and Rau could plead fraudulent concealment sufficient to toll the limitations period ***only*** by alleging facts showing (1) Microsoft "affirmatively misled" them, (2) they had neither "actual nor constructive knowledge" of their claims, and (3) they exercised diligence to discover the facts giving rise to their claims.[2] *Global Services v. IKON Office Solutions*, 2011 U.S. Dist. LEXIS 143123, *7 (N.D. Cal. Dec. 13, 2011) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988)).  Because fraudulent concealment sounds in fraud, Rule 9(b)'s heightened pleading standards apply to these allegations, *In re Transpacific Passenger Air Transp. Antitrust Litigation*, 2011 U.S. Dist. LEXIS 49853, *68-74 (N.D. Cal. May 9, 2011), requiring plaintiffs to plead with specificity "facts that would support a finding that the statement[s]" constituting the concealment were "intentionally fraudulent." *Herremans*, 2014 U.S. Dist. LEXIS 145957, *19-20.  A plaintiff must "alleg[e] what was actually

---

[2] Even if a defendant fraudulently conceals wrongdoing, "constructive knowledge of the facts giving rise to [the] claim" defeats tolling. *Hexcel Corp.*, 681 F.3d at 1060.  As explained below, publicity about the DOJ's investigation into high tech hiring practices put Ryan and Rau on inquiry notice to investigate whether Microsoft engaged in the challenged conduct—defeating any argument for tolling based on fraudulent concealment.

DAVIS WRIGHT TREMAINE LLP

1   said [to conceal the wrongdoing], who said it, and what made it intentionally false."  *Id.*

2        The Complaint does not come close to satisfying these demanding pleading requirements.

3   Ryan and Rau quote two paragraphs supposedly alleging active concealment, Opp. 8:8-13

4   (quoting ¶¶ 34, 37), but they point to no allegation setting forth statements by Microsoft that

5   "affirmatively misled" them, as the Ninth Circuit requires.  *See Conmar*, 858 F.2d at 505.  Instead,

6   they rely on generalities, reciting that "Microsoft employees were not informed of and did not

7   consent to this agreement" and that unnamed "[s]enior executives from Microsoft actively

8   concealed" the agreement in unspecified ways.  *See* Opp. 8:10-13 (citing ¶¶ 34, 37).  Further, they

9   allege nothing to suggest they acted diligently to discover the facts giving rise to their claims.  *See*

10  *Conmar*, 858 F.2d at 505 (requiring allegation of facts showing diligence).  Ryan and Rau cite no

11  case law allowing such vague and non-specific allegations of fraudulent concealment to proceed.[3]

12  ### 2.   Ryan and Rau Do Not Sufficiently Allege an Antitrust Violation Continuing after October 14, 2010.

13       Ryan and Rau also argue Microsoft engaged in a continuing antitrust violation, causing the

14  limitations period to reset.  Opp. 12:22-15:25.  To plead a "continuing violation" sufficient to

15  restart the limitations period, Ryan and Rau must allege Microsoft (a) engaged in "a new and

16  independent act that is not merely a reaffirmation of a previous act," and (b) in the course of doing

17  so, "inflict[ed] new and accumulating injury."  *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d

18  1199, 1202 (9th Cir. 2014) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238

19  (9th Cir. 1987)), *cert. denied*, No. 14-540 (Jan. 20, 2015).  Further, Ryan and Rau must allege

20  facts showing the "new and independent act" occurred after October 14, 2010, i.e., within four

21  years before they filed their Complaint.  *Id.*

---

[3] The pleadings in the cases Ryan and Rau cite (Opp. 8:17-9:2) contain far more than the Complaint here.  In *Department of Water & Power of the City of Los Angeles v. Allis-Chalmers Manufacturing Co.*, 213 F. Supp. 341, 343-44 (S.D. Cal. 1963), the complaint alleged a bid-rigging scheme in which defendants, *inter alia*, "used a secret, complex formula … to allocate the submission of bids to their purchasers in such a manner that it would appear that the bids were competitive."  In *Migliori v. Boeing North American, Inc.*, 114 F. Supp. 2d 976, 987 (C.D. Cal. 2000), Boeing ***expressly*** reassured plaintiff that it "never exposed its employees to excessive amounts of radiation, and that any employee's exposure to radiation was within regulatory limits."  And in *Conmar*, 858 F.2d at 505, the Ninth Circuit found a complaint sufficient because it alleged the defendant "affirmatively acted to conceal its anticompetitive behavior by creating customs and other documents falsely reporting prices."

4

DAVIS WRIGHT TREMAINE LLP

Ryan and Rau's Complaint, combined with judicially noticeable facts, establishes the implausibility of their bald assertion that collusive hiring practices continued into late 2010. Ryan and Rau allege the Department of Justice ("DOJ") began investigating high tech industry hiring practices in 2009, more than five years before they sued. Compl. [Dkt. 1] ¶ 38. By September 2010, the DOJ had sued Google, Adobe, Apple, Intel, Intuit, and Pixar. *See* RFN [Dkt. 33] Ex. D (attaching Complaint in *United States v. Adobe Systems, Inc., et al.*, Case No. 1:10-cv-01629-RBW, Dkt. 1 (D.D.C. Sept. 24, 2010)). Along with its Complaint, the DOJ filed a Stipulation to entry of a Final Judgment through which the defendants—including Google—consented to be enjoined "from attempting to enter into, entering into, maintaining or enforcing any agreement with any other person" to limit hiring or recruitment. *United States v. Adobe Systems, Inc., et al.*, Case No. 1:10-cv-01629-RBW, "[Proposed] Final Judgment," ¶ IV Dkt. 3-1 (D.D.C. Sept. 24, 2010) (Rummage Reply Decl., Ex. C). In *In re High-Tech*, this Court certified a class ending December 2009, acknowledging the alleged Silicon Valley conspiracy ended when DOJ's inquiry began. *See In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1177 (N.D. Cal. 2013).

Against this backdrop, Ryan and Rau must plead sufficient "factual content that allows the court to draw the reasonable inference" that Google and Microsoft, along with other unidentified companies, engaged in unlawful conduct even while the DOJ had them under intense scrutiny.[4] *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)). But Ryan and Rau offer no factual content to support that inference; indeed, they plead ***nothing*** to suggest Microsoft engaged in a "new and independent act" to further an unlawful agreement after October 14, 2010, i.e., within four years of their Complaint. *Samsung Elecs*, 747 F.3d at 1202.

Arguing to the contrary, Ryan and Rau quote five paragraphs of their Complaint that they say allege an overt act within the limitations period. Opp. 14:26-15:8 (quoting ¶¶ 55, 56, 33, 42,

---

[4] Ryan and Rau belittle the significance of the DOJ inquiry and Final Judgment because they supposedly do not show whether "Microsoft ever ceased compliance or enforcement" of the alleged agreements. Opp. 15:16-25. But Ryan and Rau have alleged injury solely because ***other*** companies supposedly agreed with Microsoft that ***they*** would not solicit Microsoft employees, and the Complaint identifies only Google as a counterpart. Compl. [Dkt. 1] ¶¶6, 38, 44, 57. By October 14, 2010, Google had promised DOJ not to restrict its solicitation of any competitor's employees, including Microsoft. Thus, Ryan and Rau's "continuing violation" theory depends on an argument that Google was violating its agreement with DOJ before the ink was dry.

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211

43).  But none of these paragraphs identifies *any* independent act by Microsoft after October 14, 2010; only one even refers to a "continuing violation," and it does so in a formulaic way without alleging conduct after October 10, 2014.  Compl. [Dkt. 1] ¶ 55 ("Microsoft's conspiracy was a continuing violation through which Microsoft repeatedly invaded Plaintiffs' and Plaintiff Classes' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements.").  These continuing violation allegations lack any "factual content," much less content that would "allow[] the court to draw the reasonable inference that" Microsoft committed new acts in furtherance of its allegedly unlawful agreement after October 14, 2010.  *See Iqbal*, 556 U.S. at 678.

### 3.   Ryan and Rau Cannot Save Their Untimely Claims by Claiming Damages Were Speculative until May 2013.

Ryan and Rau also argue their claims accrued in May 2013 because, until then, their damages "were entirely unascertainable" and they "were completely incapable of determining damages resulting from the antitrust injury" because they lacked knowledge of the allegedly unlawful agreement.  Opps. 6:17-23.  In so arguing, Ryan and Rau rely on the principle that "if it is 'uncertain' or 'speculative' whether the defendants' antitrust violation has injured the plaintiff at the time of the violation," the limitations period will not begin to run until the fact of damage becomes sufficiently clear for the plaintiff to seek relief.  *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (citations omitted), *pet. for cert. filed*, 83 U.S.L.W. 3349 (Dec. 1, 2014) (No. 14-641).  But this principle has nothing to do with when a plaintiff *discovers* her damage—because the Ninth Circuit has rejected a discovery rule in Sherman Act cases.  *Hexcel Corp.*, 681 F.3d at 1060.  Instead, the limitations period is tolled only where the fact of a plaintiff's injury would be speculative even if discovered, which is not the case here.

"[T]he key question in determining whether damages were overly speculative such that recovery would be unavailable at the time of the initial act is whether the *existence* of the harm is determinable, not the specific dollar value of that harm."  *Samsung Elecs.*, 747 F.3d at 1204 (emphasis added) (citing *Pace Indus.*, 813 F.2d at 240).  "[U]ncertain damages, which prevent recovery, are distinguishable from uncertain extent of damage, which does not prevent recovery."  *Pace Indus.*, 813 F.2d at 240.  Thus, in *Samsung*, the limitations period did not begin to run on Samsung's claim that Panasonic monopolized the market for SD cards until Samsung entered the

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211

DAVIS WRIGHT TREMAINE LLP

SD card market and began paying royalties. *Samsung*, 747 F.3d at 1205. Until then, Samsung had no right to apply to a court for relief because the prospect that it would enter the market and suffer harm was speculative. *Id.*; *see also Oliver*, 751 F.3d at 1087 ("Before Plaintiffs purchased SD cards, it would have been pure speculation whether Plaintiffs would have been harmed by Defendants' alleged unlawful acts.").

Unlike the plaintiffs in *Samsung* and *Solo*, Ryan and Rau participated in the relevant market from the outset: they were Microsoft employees in May 2007, when Microsoft allegedly entered into unlawful agreements restraining hiring of its employees. Compl. [Dkt. 1] ¶¶ 16, 18. And they claim the 2007 agreements damaged them in the form of "suppresse[d] wages because other rivals [we]re not actively soliciting employees." *Id.* ¶ 33. Thus, unlike the plaintiffs in *Samsung* and *Solo*, Ryan and Rau allege they suffered real harm during their employment more than four years before they sued in October 2014. (Indeed, because Rau terminated his Microsoft employment in June 2010, he either suffered harm outside the limitations period—or he suffered no harm at all.) They fail to allege facts that could justify deferring accrual of their claims based on uncertainty as to whether the allegedly unlawful conduct harmed them.

### 4. California's "Delayed Discovery" Doctrine Cannot Save Ryan and Rau's State Law Claims.

Ryan and Rau seek to save their California state law claims under a delayed discovery rule. Although they concede their "Sherman Act cause of action accrue[d] when [Microsoft] commit[ted] an act that injure[d]" them, without regard to when they discovered the alleged wrong, Ryan and Rau argue for a "discovery rule" accrual date for their claims under California law. Opp. 4:7-13. But Ryan and Rau's Complaint fails to make the allegations necessary to invoke the delayed discovery exception to accrual of their state law claims.

This Court has explained that a plaintiff invoking the discovery rule must "'plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand' a motion to dismiss." *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *26 (quoting *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007)). Thus, Ryan and Rau must plead non-conclusory "facts that would support a finding that [they

7

were] 'not negligent in failing to make the discovery sooner and that [they] had no actual or presumptive knowledge of facts sufficient to put [them] on inquiry.'"  *Id.* at *29 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008)).

    Ryan and Rau do not allege any "facts that would support a finding that [they were] 'not negligent in failing to make the discovery sooner and that [they] had no actual or presumptive knowledge of facts sufficient to put [them] on inquiry.'"  2014 U.S. Dist. LEXIS 23172, *29 (citation omitted).  DOJ's investigation into high-tech hiring and recruiting practices became public in 2009, more than five years before Ryan and Rau sued, and identified both Google and Microsoft as targets.  *See, e.g.*, Miguel Helft, *Unwritten Code Rules Silicon Valley Hiring*, N.Y. Times (June 3, 2009); Jessica E. Vascellaro & Justin Scheck, *Justice Department Probes Hiring Practices in Silicon Valley*, Wall St. J. (June 3, 2009) (RJN [Dkt. 33] Exs. A, B).[5]  But Ryan and Rau do not allege they did ***anything*** to investigate whether Google (or anyone else) had a restrictive agreement with Microsoft.  Instead, they rest on the passive allegation that they "had no knowledge of the Agreement" until May 2013, citing four paragraphs of their Complaint that offer nothing to suggest their diligence.  *See* Opp. 5:7-10 (citing ¶¶ 35, 37, 39, 57).

    Ryan and Rau also assert that disclosure of DOJ's investigation into Microsoft's hiring practices did not excite their interest because "DOJ never disclosed Microsoft as a company that it was investigating, and never disclosed the [allegedly unlawful] Agreement."  Opp. 11:4-5; *see also id.* 11:9-11 ("no publicly filed document" and no "public disclosure … precisely" described Microsoft's role in the alleged scheme).  But Ryan and Rau misstate the test for constructive notice.  The question is ***not*** whether DOJ declared Microsoft violated antitrust laws or whether the

---

[5] News reports about DOJ's investigation into Microsoft's hiring practices were not "obscure," as Ryan and Rau claim.  Opp. 11:12-12:1.  They appeared in online ***and*** print editions of *The New York Times* and the *Wall Street Journal*, nationally circulated publications of unquestioned significance.  *See* Rummage Reply Decl., Exs. A, B.  The papers cost little, and searches of their websites cost nothing, as a visit readily shows.  Courts have often found articles in the *Wall Street Journal* sufficient to trigger limitations periods based on inquiry notice.  *See, e.g., DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 217-19 (3d Cir. 2007) (affirming dismissal because *WSJ* article and other publications put plaintiff on inquiry notice); *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 403 (3d Cir. 2006) (same); *Lane v. Page*, 649 F. Supp. 2d 1256, 1302-03 (D.N.M. 2009) (*WSJ* article triggered inquiry notice); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1280-81 (M.D. Fla. 2009) (untimely claim dismissed because *WSJ* article put plaintiffs on inquiry notice), *aff'd*, 594 F.3d 783 (11th Cir. 2010).

8

news reports described in detail the terms of Microsoft's supposed conspiracy; rather, the question is whether the public record should have prompted Ryan and Rau to investigate. A plaintiff has the legal obligation to "seek to learn the facts necessary to bring the cause of action"; he "cannot wait for [the facts] to find him and sit on his rights." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398-99 (1999) (citation and internal quotation marks omitted).

Ryan and Rau did nothing, even with constructive knowledge of facts that should have prompted diligent inquiry. The four year limitations period bars their state law claims as well.

### B.  Ryan and Rau Failed to Plead Claims under the Sherman Act or the Cartwright Act.

Ryan and Rau have not pleaded an unlawful agreement. They have the obligation to plead "not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove" an antitrust violation. *Kendall*, 518 F.3d at 1047 (citing *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)). Their Complaint cannot survive unless it "answer[s] the basic questions: who, did what, to whom (or with whom), where, and when?" *In re High-Tech Emp. Antitrust Litig.* 856 F. Supp. 2d 1103, 1116 (N.D. Cal. 2012) (quoting *Kendall*, 518 F.3d at 1048).[6] In arguing they satisfied their pleading obligations, Ryan and Rau rely on one document, asserting they "adequately pled Microsoft agreed to be bound by the same unlawful Agreement to which Google and others agreed to be bound. (i.e., Exhibit 661 [from *In re High-Tech*].)." Opp. 17:1-2. They thus admit their Complaint offers nothing beyond the existence of a document labeled Exhibit 661 and the word "Microsoft" in that document. But that is not enough.

Ryan and Rau's argument founders first on bedrock federal pleading principles. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Although Exhibit 661 may be consistent with Microsoft's liability, it is equally consistent with explanations exonerating Microsoft. In fact, this Court characterized an earlier version of Google's list, phrased in nearly identical terms, as embodying "***unilateral*** policies Google adopted with respect to … non-defendant companies," not unlawful

---

[6] Ryan and Rau do not deny the same requirements for pleading an unlawful agreement apply to both their Sherman Act and Cartwright Act claims. *See* Mot. 14:24-28 & n.6.

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  agreements.  *In re High-Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 47181, *68 & n.34

2  (N.D. Cal. Apr. 4, 2014) (emphasis added) (citing "do-not-cold-call policies effective January 20,

3  2006 with respect to OpenTV Corporation and Invidi Technologies Corporation.  ECF No. 573,

4  Brown Decl., Ex. 13").  (The Exhibit cited by the Court says:  "The following companies have

5  special agreements with Google and are part of the 'Do Not Cold Call' list.")  Given the Supreme

6  Court's direction that a court must "draw on its judicial experience and common sense" in

7  assessing the plausibility of claims, *Iqbal*, 556 U.S. at 679, this Court should require Ryan and

8  Rau to offer more facts than the mere appearance of Microsoft's name on an internal Google

9  document before deciding they have crossed "the line between possibility and plausibility of

10  entitlement to relief."  *Id.* at 678 (citation and internal quotation marks omitted).[7]

11        The plaintiffs in *In re High Tech* crossed "the line between possibility and plausibility" by

12  alleging the "evidentiary facts" *Kendall* requires.  The *In re High-Tech* plaintiffs detailed personal

13  relationships among the defendants, identifying by name individuals serving on overlapping

14  boards or holding common ownership interests; described the form and terms of the alleged

15  agreements; identified the drafters and the place of drafting the agreements; recounted specific

16  instances of companies policing their agreements; and detailed an effort to recruit another

17  company to the scheme, identifying the executives involved by name.  Mot. 15:12-16:4

18  (describing allegations).  Further, in denying a motion to dismiss, this Court emphasized the

19  allegation that "at all relevant times, at least one of three individuals had significant influence over

20  at least one party to each of the six bilateral agreements:  Apple CEO and Pixar CEO Mr. Jobs;

21  Apple and Google board member Mr. Levinson; and Google CEO and Apple board member Mr.

22  Schmidt."  *In re High-Tech*, 856 F. Supp. 2d at 1116.  And given the specifically pleaded example

23  of Apple's CEO soliciting Palm's CEO, the Court found it "reasonable to infer that such

24  agreements were negotiated directly CEO to CEO."  *Id.* at 1117.  The Court also emphasized the

25  "DOJ investigation in which the DOJ found the agreements to be '*per se* unlawful' and in which

---

26  [7] Ryan and Rau declare it would be "preposterous" to read Exhibit 661 as reflecting Google's

27  "unilaterally created internal policies," Opp. 19:23-26—even though that is ***precisely*** how the
Court read a nearly identical exhibit in *In re High-Tech*.  2014 U.S. Dist. LEXIS 47181, at *68.  In

28  fact, it would be more preposterous to read Exhibit 661 as reflecting an agreement with Microsoft,
given the document's demonstrably inaccurate list of supposed Microsoft subsidiaries.

1    Defendants agreed that the DOJ stated a federal antitrust claim." *Id.* The *In re High-Tech* CAC

2    alleged "nearly identical agreements, of identical scope [as the DOJ allegations] … entered into in

3    various cities and counties in California, between 2005 and 2007." *Id.* (citation omitted). Based

4    on this evidentiary detail, the Court concluded a "failure to plead the 'who, what, to whom, where,

5    and when' is not a basis to dismiss Plaintiffs' Section 1 claims here." *Id.* at 1117-18.

6    Ryan and Rau point to no comparable allegations in their Complaint. The Complaint does

7    not name ***any*** party with which Microsoft supposedly agreed except Google, referring vaguely to

8    "other companies in the high-technology industry." Compl. [Dkt. 1] ¶ 3. As to Google, the

9    Complaint does not name any director or executive with responsibilities straddling both Microsoft

10   and Google, as was the case in *In re High-Tech*. It identifies no instances of Microsoft or Google

11   policing an unlawful agreement. It fails to allege any DOJ finding that Microsoft and Google

12   together engaged in anticompetitive conduct—because DOJ found no such thing. In this context,

13   labelling this Complaint and the *In re High-Tech* complaint as "immaterially distinct," Opp. 18:6-

14   7, amounts to wishful thinking. And Ryan and Rau cannot solve the deficiencies by "nam[ing] for

15   example Microsoft's CEO during the relevant time period, Steve Ballmer." *Id.* 17:27-18:2.

16   Merely peppering the Complaint with names of a few senior executives will not cure its systemic

17   defect: it contains no allegation of evidentiary facts that, if proved, would show someone having

18   the requisite authority at Microsoft (whether Mr. Ballmer or someone else) assented to a bilateral

19   agreement with a competitor to restrict that competitor's hiring of Microsoft employees.

20   Indeed, Microsoft had no reason to enter into restrictive hiring agreements with

21   competitors, since Washington law afforded it the means to protect its investment in employees

22   unilaterally. *See Perry v. Moran*, 109 Wash. 2d 691, 700 (1987), *op. revised*, 111 Wash. 2d 885

23   (1989). Ryan and Rau argue Microsoft still had ample incentive to violate the law, arguing an

24   unlawful bilateral agreement might offer Microsoft greater protection than reasonable covenants

25   not to compete. Opp. 21:1-22:3. But a bilateral agreement of the sort Ryan and Rau allege would

26   have tied Microsoft's hands in recruiting from competitors; by contrast, valid covenants not to

27   compete protected Microsoft's interest in its workforce while leaving it free to recruit from other

28   companies. Further, Ryan and Rau allege an agreement with Google that supposedly restricted the

DAVIS WRIGHT TREMAINE LLP

hiring of **current** employees; by contrast, Microsoft's covenants afforded protection for a year **after** the employee left Microsoft. *Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1019 (N.D. Cal. 2005) (quoting covenant); *Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*, 393 F. Supp. 2d 1057, 1062-63 (E.D. Wash. 2005) (enforcing one-year restriction).[8]   Ryan and Rau offer no plausible explanation for the illegal agreement they allege, which offered Microsoft less robust protection than its existing lawful covenants, while allegedly forcing it to live within hiring restrictions.

     **C.**    **Ryan and Rau Have Failed to Plead Connections with California Sufficient to State a Claim under California Statutes.**

Ryan and Rau virtually ignore their inability to allege claims under the Cartwright Act, the UCL, and § 16600.  They plead that Microsoft is a Washington corporation for which Ryan and Rau worked in Washington, and that Rau still resides in Washington.  Compl. [Dkt. 1] ¶¶ 16, 18, 19 20.  They assert Microsoft's alleged wrongdoing "suppressed the[ir] wages" while they worked in Washington.  *Id.* ¶¶ 25, 27.  And they must concede that the California "Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999).

Ryan and Rau cite no case supporting the application of California statutory remedies in these circumstances.  Instead, they rely on irrelevant factual arguments.  They assert Ryan now lives in California, Opp. 22:18-19, even though her change in residence **after** she left Microsoft cannot rationally subject Microsoft to California law for Microsoft's conduct while it employed her in Washington.  Nor does it matter that Microsoft has facilities in California—where neither Ryan nor Rau worked.  Opp. 22:25-26.  No California employee has sued, and the Court must judge Ryan and Rau's ability to pursue a claim based on their allegations, not on allegations an absent class member might make.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of

---

[8] Although Ryan and Rau's individual covenants are not relevant to this Motion, they go out of their way to declare that Microsoft "has not identified any … proof that either of the Plaintiffs ever signed such a covenant."  Opp. 21:28-22:1.  In fact, in connection with its Motion to Transfer, Microsoft filed copies of Ryan and Rau's Employee Agreements in which they promise that, "[w]hile employed at MICROSOFT and for a period one year thereafter, [they] will not … engage in any competitive activities or accept employment by or agree to provide services to any person or entity that engages in competitive activities."  Greenall Decl. [Dkt. 28] Exs. A, B ¶ 10.

DAVIS WRIGHT TREMAINE LLP

the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea*).  Finally, for purposes of this Motion, it makes no difference that Ryan and Rau have alleged a California company, Google, entered into the agreement with Microsoft.  Opp. 23:2-4.  Ryan and Rau chose to sue Microsoft, not Google, and Microsoft is a Washington company for which they worked in Washington, where they allegedly suffered injury.

On these admitted facts, Ryan and Rau have not stated a claim under California law. "[A]pplication of the state [Cartwright] act is solely directed to the intrastate effect of the trade involved," *R.E. Spriggs Co. v. Adolph Coors Co.*, 37 Cal. App. 3d 653, 666 (1974), but Ryan and Rau allege impacts on compensation while in Washington, not "intrastate."  Similarly, the UCL does not apply to "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Norwest Mortg.*, 72 Cal. App. 4th at 224-25.  Ryan and Rau allegedly suffered suppressed wages while working in Washington for a Washington company that set wages in Washington.  And § 16600 protects California employees—not Washington employees. *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706-07 (2002).

The Court should dismiss the California statutory claims asserted by these Washington-based employees against their Washington-based employer.

### D.    Ryan and Rau Lack Standing to Pursue a Monetary Claim under the UCL.

This Court's decision in *In re High-Tech* disposes of Ryan and Rau's claim for monetary relief under the UCL, Business & Professions Code §§ 17200, et seq.  "[B]ecause the only relief the UCL provides is unavailable here, [Plaintiffs'] UCL claim fails."  *In re High-Tech*, 856 F. Supp. 2d at 1125 (second alteration in original; citation and internal quotation marks omitted).

Ryan and Rau respond to this Court's decision in a footnote, asserting they argue the issue differently than the *In re High-Tech* plaintiffs.  According to Ryan and Rau, "UCL claims in the employment context are analyzed differently because the employees' right to compensation immediately vests."  Opp. 24:26-28 & n. 9.  They argue "payment of wages unlawfully withheld

from an employee are recoverable under the UCL." Opp. 23:21-22 (quoting *Huck v. Pfizer, Inc.*, 2011 U.S. Dist. LEXIS 81161, *30 (S.D. Cal. 2011)). But *Huck* involved an employer who **withheld** agreed wages covering "services [the employee] performed and for which he had not been paid." 2011 U.S. Dist. LEXIS 81161, *30. And in the case on which *Huck* relies, *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000), the employer withheld overtime pay, which the Court characterized as "earned wages that are … the property of the employee who has given his or her labor to the employer in exchange for that property." *Id.* at 178.

Neither case undermines this Court's decision in *In re High-Tech*. Unlike the agreed but withheld wages in *Huck* and *Cortez*, this case (like *In re High-Tech*) involves a claim for "the speculative higher compensation [Ryan and Rau] may have gotten in the absence of the alleged conspiracy," which amounts to "an 'attenuated expectancy'—akin to 'lost business opportunity' or lost revenue—which cannot serve as the basis for restitution." *In re High-Tech*, 856 F. Supp. 2d at 1124-25 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003)). The UCL affords no recovery for that expectancy. The Court should dismiss the UCL claim.[9]

### E.      Ryan and Rau Lack Standing to Pursue Claims for Injunctive and Declaratory Relief.

Ryan and Rau essentially admit that they have no standing to seek an injunction restraining enforcement of an agreement restricting solicitation or hiring of ***current*** Microsoft employees—because that agreement would not affect them. *See* Opp. 24:14-15 (arguing a plaintiff has a claim under §16600 when an agreement currently "restrains him from engaging in a lawful profession, trade, or business"). Instead, hoping to manufacture standing, they feign doubt as to whether the agreements alleged in the Complaint may restrain hiring of "former employees." *Id.* 24:20-21.

Ryan and Rau's Complaint is unambiguous. It describes the "Do Not Cold Call" agreement as restraining the practice of "using cold calling to solicit ***current*** employees from rival companies." Compl. [Dkt. 1] ¶ 31 (emphasis added). And it characterizes the "Restricted Hiring"

---

[9] Ryan and Rau did not seek an injunction in their UCL allegations but asserted the right to an injunction in their § 16600 claim. *See* Compl. [Dkt. 1] ¶¶ 78-84 (UCL), ¶ 93 (§ 16600). Now, Ryan and Rau cite their Prayer and assert they "have clearly alleged injunctive relief," implying they did so in connection with their UCL claim. Opp. 23:12-13. As explained below, Ryan and Rau lack standing to seek any injunctive relief, given their status as former Microsoft employees.

DAVIS WRIGHT TREMAINE LLP

1    agreements as "suppressing the compensation and mobility of [the participants'] employees" by

2    restricting "their recruitment and employment of each other's employees." *Id.* ¶ 38.  The

3    Complaint alleges nothing about restraints on the mobility of ***former*** Microsoft employees.  In

4    particular, it alleges no impact on Ryan and Rau's ability to find work with any of the companies

5    with which Microsoft allegedly agreed.

6           Former employees lack standing to seek injunctive relief in these circumstances.  *See, e.g.*,

7    *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2259-60 (2011) (putative class members who

8    were "no longer employed by Wal-Mart lack[ed] standing to seek injunctive or declaratory relief

9    against its employment practices" because they had "no . . . need for prospective relief"); *Zanze v.

10   Snelling Servs., LLC*, 412 F. App'x 994, 997 (9th Cir. 2011) (affirming dismissal of former

11   employee's claims for declaratory judgment and injunctive relief regarding non-compete

12   agreement with former employer).  Because Ryan and Rau lack standing to seek the only relief

13   available under § 16600, i.e., injunctive and declaratory relief, the Court should dismiss that claim.

### III.    CONCLUSION

15          For these reasons, Microsoft respectfully requests that the Court dismiss Ryan and Rau's

16   Complaint in its entirety.  Because an amendment could not cure the fundamental deficiencies in

17   this Complaint, Microsoft asks the Court to dismiss with prejudice.

18          DATED: January 28, 2015                DAVIS  WRIGHT  TREMAINE LLP

19                                                 By:    /s/ Stephen M. Rummage

20                                                    Stephen M. Rummage (*pro hac vice*)
                                                      Robert J. Maguire (*pro hac vice*)
21                                                    Candice M. Tewell (*pro hac vice*)
                                                      1201 Third Avenue, Suite 2200
22                                                    Seattle, Washington 98101-3045
                                                      Telephone:   (206) 622-3150
23                                                    Facsimile:    (206) 757-7700

24                                                    Allison A. Davis (CA State Bar No. 139203)
                                                      Sanjay M. Nangia (CA State Bar No. 264986)
25                                                    505 Montgomery Street, Suite 800
                                                      San Francisco, California  94111
26                                                    Telephone:   (415) 276-6500
                                                      Facsimile:    (415) 276-6599
27
                                                      *Counsel for Defendant Microsoft Corporation*
28

DAVIS WRIGHT TREMAINE LLP

MICROSOFT'S REPLY ON MOTION TO DISMISS
*Ryan v. Microsoft Corp.*, Case No. 5:14-cv-04634-LHK
DWT 25954447v5 0025936-002211