1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DESERAE RYAN, et al.,

Plaintiffs,

v.

MICROSOFT CORPORATION,
Defendant.

Case No.  14-CV-04634-LHK

**ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS**

Re: Dkt. No. 26, 32

Before the Court are Defendant Microsoft Corporation's motions to transfer venue and to dismiss. ECF Nos. 26, 32. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Defendant's motion to transfer venue and GRANTS Defendant's motion to dismiss.

**I.      BACKGROUND**

**A.  Factual Background**

**1.  The Parties**

Plaintiff Deserae Ryan ("Ryan") and Plaintiff Trent Rau ("Rau"), (collectively, "Plaintiffs"), bring this putative class action against Defendant Microsoft Corporation ("Defendant" or "Microsoft") for alleged violations of state and federal antitrust laws. Plaintiff

1

United States District Court
Northern District of California

1   Ryan, an individual, is a resident of the State of California. Compl. ¶ 16. Plaintiff Ryan worked for

2   Microsoft as a "Senior Product Manager" from April 2007 to September 2012 in Redmond,

3   Washington. *Id.* ¶ 16. Plaintiff Rau, an individual, is a resident of the State of Washington. *Id.*

4   ¶ 19. Plaintiff Rau worked for Microsoft as a "Lead Systems Engineer Senior" from June 2006 to

5   June 2010.

6       Defendant Microsoft is a Washington corporation with its principal place of business in

7   Redmond, Washington. *Id.* ¶ 20.

8   **B.** ***In re High-Tech Employees Litigation***

9       Here, Plaintiffs allege that Defendant Microsoft conspired with "several other technology

10  companies" in both a "Do Not Cold Call" agreement and a "Restricted Hiring" agreement. There

11  appears to be significant factual overlap between Plaintiffs' allegations and the related action *In re*

12  *High-Tech Employees Litigation*, No. 11-CV-02509-LHK. As both the factual and procedural

13  history of the related action, *In re High-Tech*, and the DOJ investigations and complaints are

14  relevant to this action; the Court briefly summarizes the background of that litigation below.

15      From 2009 to 2010, the Antitrust Division of the DOJ investigated the employment and

16  recruitment practices of various Silicon Valley technology companies, including Adobe Systems,

17  Inc., Apple, Inc., Google, Inc., Intel Corp., and Intuit, Inc. *See In re High-Tech Employees Litig.*,

18  856 F. Supp. 2d 1103, 1109 (N.D. Cal. 2012). In September of 2010, the DOJ then filed civil

19  complaints against the above-mentioned technology companies, in addition to Pixar and

20  Lucasfilm. *Id.* The DOJ filed its complaint against Adobe, Apple, Google, Intel, Intuit, and Pixar

21  on September 24, 2010. *Id.* On December 21, 2010, the DOJ filed another complaint against

22  Lucasfilm and Pixar. CAC ¶ 94. The defendants, including Pixar and Lucasfilm, stipulated to

23  proposed final judgments in which they agreed that the DOJ's complaints had stated claims under

24  federal antitrust law and agreed to be "enjoined from attempting to enter into, maintaining or

25  enforcing any agreement with any other person or in any way refrain from . . . soliciting, cold

26  calling, recruiting, or otherwise competing for employees of the other person. 856 F. Supp. 2d at

27  1109–10. (quoting Adobe Proposed Final Judgment at 5). The D.C. District Court entered the

28

Case No. 14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

stipulated proposed final judgments in March and June of 2011. *Id.*

The *High-Tech* plaintiffs filed five separate state court actions between May and July of 2011. Following removal, transfer to San Jose to the undersigned judge, and consolidation, the *High-Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011. *Id.* at 1113. In their complaint, the *High-Tech* plaintiffs alleged antitrust claims against their employers, claiming that the defendants had conspired "to fix and suppress employee compensation and to restrict employee mobility." *Id.* at 1108. More specifically, the *High-Tech* plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral agreements." *Id.* at 1110. One agreement, the "Do Not Cold Call" agreement involved one company placing the names of the other company's employees on a "Do Not Cold Call" list and instructing its recruiters not to cold call the employees of the other company. *Id.* In addition to the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs also alleged that Pixar and Lucasfilm entered into express, written agreements to (1) not cold call each other's employees, (2) to notify the other company whenever making an offer to an employee of the other company, and (3) not to engage in "bidding wars." *Id.* at 1111.

### 2. Alleged Conspiracy in the Instant Action

Here, Plaintiffs allege that Microsoft conspired with unnamed "technology companies" to suppress compensation in two ways. First, Microsoft allegedly "was one of several parties to an Anti-Solicitation Agreement otherwise known as the 'Do Not Cold Call' list." Compl. ¶ 28. Second, Microsoft allegedly entered into a "Restrictive Hiring Agreement"[1] with "several other technology companies." *Id.* ¶ 36. According to Plaintiffs, the effect of both agreements was to restrict competition in the labor market and artificially depress compensation. *Id.* ¶¶ 33, 37, 40.

#### a. Anti-solicitation scheme

Plaintiffs allege that "[a]round May 2007, Microsoft agreed to be a party to the Anti-

---

[1] Plaintiffs alternate between referring to this alleged agreement as the "Restrictive Hiring Agreement" and the "Restricted Hiring Agreement." The Court will refer to the agreement as the "restricted hiring agreement," other than when quoting Plaintiffs' inconsistent usage.

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

Solicitation Agreement," which provided that Microsoft "and each of the other parties" to the agreement, would "'[n]ot . . . directly cold call into those companies [or their respective subsidiaries.]'" *Id.* ¶ 28. According to Plaintiffs, "[c]old calling serves as an essential and effective recruiting method," because current employees of competitors are "often the most highly qualified," but also "often unresponsive to other recruiting strategies." *Id.* ¶ 30. Plaintiffs allege that restrictions on cold calling have the effect of "limit[ing] an employee's leverage when negotiating his or her salary with his or her current employer," and, consequently, negatively "impact[s] all salaried employees of participating companies." *Id.* ¶ 32. More specifically, Plaintiffs contend that anti-solicitation agreements "alleviate[] pressure to retain good employees by paying higher salaries," and "suppress[] wages because other rivals are not actively soliciting employees through promises of higher salaries and benefits." *Id.* ¶ 33.

### b.  Restricted Hiring Agreement

In addition to the alleged anti-solicitation agreement, Plaintiffs further allege that "around May 2007, Microsoft, along with several other technology companies, entered into a Restrictive Hiring Agreement." *Id.* ¶ 36. Under this alleged restricted hiring agreement, Microsoft and some number of unknown technology companies allegedly agreed "[n]ot to pursue manager level and above candidates for Product, Sales, or G&A roles - even if they have applied" to any of the other "parties to the Anti-Solicitation Agreement." *Id.* According to Plaintiffs, Microsoft entered into the restricted hiring agreement with "the intent and effect of suppressing the compensation and mobility of [its] employees." *Id.* ¶ 37. Other than "the most senior executives, managerial employees and above at these companies were not aware of, and did not agree to, these restrictions." *Id.*

### 3.  Claims

Plaintiffs' complaint contains four claims for relief under the following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (4) California Business & Professions Code § 16600 *et seq.* Plaintiffs seek

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

damages, pre- and post-judgment interest, attorney's fees and expenses, and injunctive relief. Compl. at 18.

### C. Procedural History

In light of the relationship between the instant case and the *High-Tech* case, the Court briefly summarizes the relevant procedural history in *High-Tech* in addition to the instant case.

#### 1. *High-Tech* Procedural Background

The *High-Tech* defendants removed the first state-court action on May 23, 2011. No. 11-2509, ECF No. 1. On April 18, 2012, the Court granted in part and denied in part the *High-Tech* defendants' joint motion to dismiss and denied Lucasfilm's motion to dismiss. No. 11-2509, ECF No. 119. On April 5, 2013, the Court granted in part and denied in part the *High-Tech* plaintiffs' motion for class certification with leave to amend. No. 11-2509, ECF No. 382. The Court granted the *High-Tech* plaintiffs' supplemental motion for class certification on October 24, 2013. No. 11-2509, ECF No. 531. On November 13, 2013, the *High-Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class certification order. No. 13-80223, ECF No. 1. The Ninth Circuit denied the defendants' petition on January 14, 2014. No. 13-80223, ECF No. 18.

In the interim, three of the *High-Tech* defendants, Intuit, Lucasfilm, and Pixar, reached an early settlement with the plaintiffs. On September 21, 2013, the *High-Tech* plaintiffs filed a motion for preliminary approval of a proposed class action settlement as to defendants Intuit, Lucasfilm, and Pixar. No. 11-2509, ECF No. 501. On October 30, 2013, the Court preliminarily approved the proposed settlement with Intuit, Lucasfilm, and Pixar. No. 11-2509, ECF No. 540. The Court granted final approval as to that settlement on May 16, 2014. No. 11-2509, ECF No. 915. The Court entered a final judgment with regards to Lucasfilm, Pixar, and Intuit on June 9, 2014. No. 11-2509, ECF No. 936. At the request of Intuit, the Court entered an amended final judgment on June 20, 2014. No. 11-2509, ECF No. 947.

The remaining *High-Tech* defendants, Adobe, Apple, Google, and Intel, filed individual motions for summary judgment, and joint motions for summary judgment and to strike certain

expert testimony on January 9, 2014. No. 11-2509, ECF Nos. 554 (Intel), 556–57 (joint motions), 560 (Adobe), 561 (Apple), 564 (Google). The Court denied the *High-Tech* defendants' individual motions for summary judgment on March 28, 2014. No. 11-2509, ECF No. 771. On April 4, 2014, the Court granted in part and denied in part the *High-Tech* defendants' motion to strike, and denied the defendants' joint motion for summary judgment. No. 11-2509, ECF No. 778.

On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants. No. 11-2509, ECF No. 920. On August 8, 2014, the Court denied the *High-Tech* plaintiffs' motion for preliminary approval, concluding that the proposed settlement did not fall "within the range of reasonableness." No. 11-2509, ECF No. 974, at 30. On September 4, 2014, the *High-Tech* defendants filed a petition for a writ of mandamus with the Ninth Circuit. No. 14-72745, ECF No. 1. On January 13, 2015, the *High-Tech* defendants filed correspondence with the Ninth Circuit referring to a new proposed settlement agreement. No. 14-72745, ECF No. 21. On January 30, 2015, the defendants filed an unopposed motion to dismiss the petition, which the Ninth Circuit granted on February 2, 2015. No. 14-72745, ECF Nos. 23, 24.

On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants. No. 11-2509, ECF No. 1032. In this second proposed class action settlement, the parties had reached a settlement amount exceeding the previously rejected settlement by approximately $90.5 million dollars. *Id.* at 1. Following a fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015 settlement agreement on March 3, 2015. No. 11-1509, ECF Nos. 1051, 1054. A final approval hearing is scheduled for July 9, 2015.

## 2. Procedural Background in the Instant Action

Plaintiffs filed their complaint on October 16, 2014. ECF No. 1. The Court related this action to *In re High-Tech Employees Litigation*, No. 11-CV-2509-LHK, on November 19, 2014. ECF No. 24. Defendant Microsoft filed the instant motions to transfer venue and to dismiss on December 15, 2014. ECF Nos. 26, 31. Microsoft also filed a request for judicial notice in

6

1    connection with its motion to dismiss.[2] ECF No. 33. Plaintiffs filed oppositions to Defendant's

2    motions on January 15, 2015. ECF Nos. 37, 38. Defendant filed replies on January 28, 2015. ECF

3    Nos. 40, 41.

4    **II.     MOTION TO TRANSFER VENUE**

5            The Court begins by addressing Defendant's motion to transfer venue pursuant to 28

6    U.S.C. § 1404(a). The Court then turns to Defendant's motion to dismiss under Rule 12(b)(6).

7            In its motion to transfer venue, Microsoft contends that the Court should transfer this

8    action to the Western District of Washington because (1) Plaintiffs' employment agreements

9    "select the Western District of Washington forum" and (2) the convenience of the parties and

10   witnesses, and the interest of justice favor transfer.

11           "For the convenience of parties and witnesses, in the interest of justice, a district court may

12   transfer any civil action to any other district or division where it might have been brought." 28

13   U.S.C. § 1404(a). In the Ninth Circuit, the district court has discretion to transfer under § 1404(a),

14   depending on a "case-by-case consideration of convenience and fairness." *Jones v. GNC*

15   *Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation and quotation marks

16   omitted). The Court must consider public factors relating to "the interest of justice" and private

17   factors relating to "the convenience of the parties and witnesses." *See Decker Coal Co. v.*

18   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Such factors may include: (1) the

19   location where relevant agreements were negotiated and executed; (2) the state that is most

20   familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with

21

22   _____

23   [2] The Court GRANTS Defendant's unopposed request for judicial notice and has taken judicial
     notice of the adjudicative facts contained therein. *See* ECF No. 33. Defendants request that the

24   Court take judicial notice of documents issued by the Department of Justice; public records; and
     media articles regarding the DOJ investigation. *See United States ex rel. Robinson Rancheria*

25   *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (holding a court may take
     notice of proceedings in other courts); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir.

26   2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26
     (9th Cir. 2002) (matters of public record); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th

27   Cir. 1986) (court records); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954,
     960 (9th Cir. 2010) (media publications); *see also* Fed. R. Evid. 201(d).

28

United States District Court
Northern District of California

7

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones*, 211 F.3d at 498–99. The moving party bears the burden of showing that transfer is appropriate. *Jones*, 211 F.3d at 499.

Transfer under § 1404(a) is only appropriate if the action could properly have been brought in the transferee venue. When deciding whether to transfer venue, the Court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Id.* Plaintiffs do not contest that this action could have been brought in the Western District of Washington. However, Plaintiffs have chosen to bring this action in this District because the alleged anti-solicitation and restricted hiring agreements were made and performed "in Silicon Valley," and the related *High-Tech* action is currently being litigated in this District. Generally, the plaintiff's choice of forum is treated with great deference, and only significant inconvenience or unfairness will justify transfer. *See Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-4568, 2011 WL 768735, at *3 (N.D. Cal. Feb. 28, 2011). As discussed below, however, Defendant contends that Plaintiffs' choice of forum warrants no deference.

### A.  Forum Selection Clause

Here, Microsoft contends that Plaintiffs' employment agreements contain valid forum selection clauses that require Plaintiffs to litigate the instant action in the Western District of Washington. A forum selection clause "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 134 S. Ct. 568, 579 (2013). Where a valid forum selection clause applies, it must "be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks omitted). More specifically, where a valid forum selection clause preselects a different forum than the one selected by the plaintiff, the § 1404(a) analysis is altered in three ways: (1) the plaintiff's choice of forum "merits no weight," and the burden shifts to the plaintiff to show why the action should not be transferred to the

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

preselected forum; (2) the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum"; and (3) a § 1404(a) transfer of venue "will not carry with it the original venue's choice-of-law rules." *Id.* at 582.

In support of its motion to transfer venue based on a forum selection clause, Microsoft relies on two provisions of Plaintiffs' employment agreements: the noncompetition clauses and the forum selection clauses. The identical noncompetition clauses in Plaintiff Ryan's and Plaintiff Rau's employment agreements provide:

> While employed at MICROSOFT and for a period of one year thereafter, I will not (a) engage in any competitive activities or accept employment by or agree to provide services to any person or entity that engages in competitive activities ("competitive activities" meaning the development, production or provision of any product, service, technology, product feature or project that is or is intended to be competitive with one or more products, services, technologies, product features or projects, including actual or demonstrably anticipated research or development, on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at MICROSOFT or a MICROSOFT subsidiary) . . . .

Declaration of Rob Greenall in support of Microsoft's motion to transfer ("Greenall Decl."), Exh. A, ECF No. 28-1, at 7; Greenall Decl, Exh. B, ECF No. 28-2 at 4. The identical forum selection clauses provide:

> I agree that this Agreement shall be governed for all purposes by the laws of the State of Washington as such laws apply to contracts performed within Washington by its residents and that exclusive venue and exclusive personal jurisdiction **for any action arising out of this Agreement** shall lie in state or federal court located in King County, Washington.

Greenall Decl., Exh. A, ECF No. 28-1, at 8 (emphasis added); Greenall Decl, Exh. B, ECF No. 28-2 at 5 (emphasis added).

As a general matter, forum selection clauses covering disputes "arising out of" a contract are narrower than those covering disputes "arising out of or relating to" a contract. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). Where a forum selection clause covers only disputes "arising out of" a contract, the Ninth Circuit has held that the forum selection clause should be "narrowly construed." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

1    F.3d 914, 922 (9th Cir. 2011). These "arising out of" and "arising under" forum selection clauses

2    apply only to "disputes and controversies relating to the interpretation of the contract and matters

3    of performance." *Mediterranean Enters.*, 708 F.2d at 1464. In contrast, a forum selection clause

4    which covers disputes "arising out of or relating to" a contract applies much more broadly, as "the

5    inclusion of the phrase 'relating to' should lead to a 'broad[er]' interpretation." *Perry v. AT&T

6    Mobility LLC*, No. C 11-01488 SI, 2011 WL 4080625, at *4 (N.D. Cal. Sept. 12, 2011) (quoting

7    *Cape Flattery*, 647 F.3d at 922–23).

8           Here, the relevant forum selection clauses cover "any action arising out of" Plaintiffs'

9    employment agreements. As such, the scope of the forum selection clauses is limited to disputes

10   which require "interpretation of the contract." *Mediterranean Enters.*, 708 F.2d at 1464. Microsoft

11   contends that because Plaintiff Ryan and Plaintiff Rau agreed to noncompetition clauses that

12   prevented Plaintiffs from working for competitor companies for a period of one year following the

13   termination of Plaintiffs' employment with Microsoft, those noncompetition clauses "create[d] a

14   powerful disincentive for competing companies to 'poach' them." ECF No. 26 at 8. According to

15   Microsoft, this "powerful disincentive" will be material to adjudicating Plaintiffs' claims against

16   Microsoft. However, Microsoft does not explain why resolution of Plaintiffs' antitrust claims will

17   require interpretation of the scope of Plaintiffs' noncompetition agreements. In the instant case,

18   the Court concludes that Plaintiffs' claims do not "arise out of" Plaintiffs' employment contracts

19   because whether Defendant violated federal and state antitrust laws does not require interpretation

20   of Plaintiffs' employment agreements.

21          More specifically, Plaintiffs aver that Microsoft engaged in anticompetitive behavior by

22   conspiring with other technology companies to suppress employee compensation and restrict

23   mobility. *See* Compl. ¶¶ 28, 33, 36, 40–44. It may be the case that Plaintiffs were less likely to

24   have been "poached" as a result of the noncompetition clauses, but that argument alone does not

25   establish that adjudication of Plaintiffs' claims will require interpretation of their employment

26   agreements. Microsoft assumes that resolving Plaintiffs' claims will require a finding that but-for

27   Microsoft's alleged anticompetitive behavior, Plaintiffs would have taken positions at competing

28

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

companies in breach of Plaintiffs' employment agreements. This straw-man argument is both incorrect and not determinative to the scope of the forum selection clause. *See Cape Flattery*, 647 F.3d at 922 ("The fact that the tort claim would not have arisen 'but for' the parties' licensing agreement is not determinative [to the scope of the arbitration clause].") (internal quotation marks omitted).[3]

Here, Plaintiffs allege that Microsoft participated in a conspiracy which resulted in artificially depressed compensation for all employees at "high technology" companies, and restricted employee mobility because Microsoft and its co-conspirators agreed not to solicit each other's employees and restricted their hiring practices for certain types of employees. *See* Compl. ¶¶ 42–43. Whether Microsoft did in fact engage in a conspiracy that had the effect of depressing employee wages and restricting mobility does not require determining whether Plaintiffs' employment agreements were breached, or the scope of the rights and responsibilities of the parties under Plaintiffs' employment agreements. *See, e.g.*, *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *6 (N.D. Cal. Apr. 6, 2011) (plaintiff's claims "arose under" contract where the claims required "interpretation of the obligations [defendant] owed [plaintiff] under the contract, the services [defendant] agreed to perform under the contract, and the product and services [plaintiff] contracted to receive"). Nor are Plaintiffs' claims related to the conditions under which Plaintiffs agreed to work for Microsoft. Rather, Plaintiffs' claims are based on Microsoft's alleged illegal conduct that is wholly independent of Plaintiffs' agreements not to seek employment with a competitor for a period of one year.

In sum, the Court concludes that the forum selection clauses in Plaintiffs' employment agreements do not apply to the instant litigation as Plaintiffs' claims do not "arise out of" the employment agreements. Microsoft has failed to show that Plaintiffs' claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *See*

---

[3] As the Ninth Circuit explained in *Manetti-Farrow, Inc. v. Gucci Am., Inc*, 858 F.2d 509, 514 n.4 (9th Cir. 1988), "an agreement to arbitrate is actually a specialized forum selection clause," and the analysis of one is therefore applicable to the analysis of the other.

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

1   *Manetti-Farrow*, 858 F.2d at 514. As such, Plaintiffs' claims do not "arise out of" their

2   employment agreements, and the forum selection clauses do not cover the instant dispute. As such,

3   the burden of showing why transfer is warranted in this action remains with Defendant Microsoft,

4   and the Court evaluates Microsoft's motion under the normal § 1404(a) framework. *See Jones*,

5   211 F.3d at 499; *Atl. Marine*, 134 S. Ct. at 582.

### 1.   Private Factors

7          Microsoft argues, in the alternative, that even if the forum selection clauses do not apply,

8   the private factors under § 1404(a) weigh in favor of transfer. Under *Jones*, the private factors to

9   be considered in a § 1404(a) analysis include, where relevant: (1) the location where relevant

10  agreements were negotiated and executed; (2) the plaintiff's choice of forum; (3) the parties'

11  contacts with the forum; (4) the contacts relating to the plaintiff's cause of action in the chosen

12  forum; (5) the differences in the costs of litigation in the two forums; (6) the availability of

13  compulsory process to compel attendance of unwilling non-party witnesses; and (7) the ease of

14  access to sources of proof. *Jones*, 211 F.3d at 498–99.

15         *Relevant agreements*: Here, Microsoft argues that the "relevant agreements" are Plaintiffs'

16  employment agreements, which the parties entered into in the State of Washington. *See* ECF No.

17  26 at 10–11. However, as the Court concluded above, the "relevant agreements" at issue in this

18  litigation are not Plaintiffs' employment agreements, but rather the alleged anti-solicitation and

19  restricted hiring agreements. Plaintiffs argue in opposition to Defendant's motion that Defendant

20  negotiated and entered into the anti-solicitation and restricted hiring agreements in Silicon Valley,

21  i.e., within the geographic boundaries of this District. According to Plaintiffs, the anti-solicitation

22  and restricted hiring agreements were "discussed, negotiated, agreed upon, performed, and

23  enforced by Microsoft and others in California - particularly in Silicon Valley." Compl. ¶ 12. This

24  factor therefore weighs against transfer.

25         *Plaintiffs' Choice of Forum, the Parties' Contacts, and the Contacts Relating to Plaintiffs'*

26  *Claims in the Chosen Forum*: The Court concludes that these factors also weigh against transfer of

27  venue. As to Plaintiffs' choice of forum in the Northern District of California, the Court agrees

28

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

1    with Microsoft that Plaintiffs' choice is not entitled to the "substantial consideration generally

2    given to a plaintiff's choice of forum." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088,

3    1094 (N.D. Cal. 2013). As Microsoft notes, a plaintiff's choice of forum is afforded less deference

4    where "(1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims

5    occurred in a different forum; (3) the plaintiff sues on behalf of a putative class; or (4) plaintiff's

6    choice of forum was plaintiff's second choice." *Id.* (internal quotation marks and citations

7    omitted); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). In the instant case, Plaintiffs

8    bring suit on behalf of a putative class, a fact that detracts from the deference given to Plaintiffs'

9    choice of venue. Neither Plaintiff is a resident of this District, though Plaintiff Ryan is a resident

10    of California. These factors call for less deference. However, Plaintiffs allege that the

11    anticompetitive conduct giving rise to their claims took place in the Northern District of

12    California. Compl. ¶¶ 16, 12. Moreover, there is no indication that this District is Plaintiffs'

13    second choice. *See, e.g.*, *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. 10-00675, 2010 WL 1445666, at

14    *4 (N.D. Cal. Apr. 12, 2010) (plaintiffs first filed in Florida before filing in transferor district).

15    These two factors would therefore weigh in favor of deferring to Plaintiffs' choice of forum.

16    Balancing these factors, the Court finds that Plaintiffs' choice of forum is entitled to some

17    deference, though not the "substantial deference" normally afforded to a plaintiff's choice of

18    forum.

19        Moreover, in addition to Plaintiffs' decision to file the instant action in this District, the

20    Court finds that the parties have substantial contacts with this District. Plaintiffs point to

21    Microsoft's extensive contacts with this forum, including Microsoft's offices in Mountain View,

22    CA and San Francisco, CA. ECF No. 37 at 3. While Microsoft argues that its corporate

23    headquarters and the majority of its employees are located in Washington, Microsoft does not

24    contest that it has extensive contacts with the Northern District of California, including the

25    aforementioned corporate offices and several hundred California employees. ECF No. 37 at 7;

26    ECF No. 40 at 7. Furthermore, Plaintiffs contend that the conspiracy at issue in the instant

27    litigation is the "same anti-poaching agreement being litigated in the *In re High Tech* case," and

28

13

1    involves the same conspirators. ECF No. 37 at 3. The Court therefore concludes that these factors

2    weigh against transfer.

3        *Differences in Costs, Compulsory Process, and Availability of Witnesses and Evidence*:

4    The Court finds that these factors weigh in favor of transfer. Here, Microsoft contends that its

5    personnel management records are located in Washington. Greenall Dec. ¶ 3. These documents

6    will be relevant evidence as to Microsoft's "recruiting, hiring, and compensation of the proposed

7    class members." ECF No. 26 at 10. As Microsoft concedes, however, the availability of electronic

8    records and methods of electronic conveyance have substantially reduced the costs of transferring

9    documents from one locale to another. *See Park*, 964 F. Supp. 2d at 1095. This factor therefore

10   only weighs slightly in favor of transfer.

11       Microsoft also argues that several potential witnesses, including Plaintiffs' former

12   supervisors, and Microsoft's "Senior Personnel Management Manager," and "Staffing Director,"

13   live in Washington. ECF No. 26 at 9. According to Microsoft, two former employees that

14   managed and supervised Plaintiffs' work at Microsoft would not be subject to compulsory process

15   in this District. Plaintiffs dispute whether Plaintiffs' former supervisors' testimony will be relevant

16   to whether Microsoft was part of a conspiracy to suppress employee compensation and restrict

17   employee mobility. The Court agrees that this may be true. However, Plaintiffs' individual

18   performances may be relevant to determining damages and Plaintiffs' ability to represent the class.

19   Moreover, Plaintiffs concede that Microsoft and its witnesses would incur travel expenses and be

20   inconvenienced by venue in the Northern District of California, and that certain nonparty

21   witnesses may not be available for live testimony outside of Washington. Balancing the costs and

22   inconvenience to potential witnesses and the possibility that some of Microsoft's purported

23   witnesses are unlikely to offer relevant testimony, the Court concludes that these factors weigh

24   somewhat in favor of transfer.

25       On balance, the Court finds that the private factors weigh slightly against transfer of this

26   action to the Western District of Washington. Plaintiffs' choice of forum is entitled to some

27   deference, and Plaintiffs have alleged that the relevant agreements implicated by Plaintiffs' state

28

United States District Court
Northern District of California

14

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

1    and federal antitrust claims were negotiated, entered into, and enforced within this District.

2    Moreover, Microsoft has substantial contacts with this District, and Plaintiff Ryan is a resident of

3    California. While the Court concludes that Microsoft has shown that certain witnesses would be

4    inconvenienced by Plaintiffs' choice of venue and that the cost of litigation may be higher in this

5    District, these factors alone are not determinative. In sum, the private factors weigh slightly

6    against transfer.

7                                    **2.    Public Factors**

8            In evaluating whether transfer would serve the interest of justice, a court may consider

9    "public interest factors such as court congestion, local interest in deciding local controversies,

10   conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Decker Coal*, 805

11   F.2d at 843.

12           Here, Plaintiffs contend that venue is appropriate in the instant District because of the

13   related action *In re High-Tech*. As discussed above, there is substantial factual overlap between

14   the instant case and the alleged conspiracies in *High-Tech*. Plaintiffs allege that Microsoft was a

15   party to the same anti-solicitation agreements at issue in the *High-Tech* litigation. Based on this

16   apparent factual overlap, the Court related the instant case to *High-Tech* on November 19, 2014.

17   ECF No. 24. Microsoft disputes the veracity of Plaintiffs' allegations and contends that the record

18   in *High-Tech* illustrates the implausibility of Plaintiffs' claims. *See* ECF No. 26 at 15. However,

19   whether or not Plaintiffs will ultimately prevail on their claims does not impact whether it would

20   best conserve judicial resources for this Court to retain jurisdiction over this action in light of its

21   familiarity with the *High-Tech* litigation. The Court concludes that the significant overlap between

22   Plaintiffs' claims in the instant action and the related action *High-Tech* weigh against transfer. *See,*

23   *e.g.*, *FTC v. Watson Pharm., Inc.*, 611 F. Supp. 2d 1081, 1089 (C.D. Cal. 2009) (familiarity with

24   underlying facts weighed against transfer). Additionally, court congestion weighs in favor of

25   transfer, as Defendant argues that the Western District of Washington has "materially fewer

26   pending cases" than the Northern District of California. However, in light of this District's

27   familiarity with alleged underlying agreements, the Court concludes that court congestion is of

28
                                                        15

United States District Court
Northern District of California

1    less importance here.

2         Moreover, Microsoft argues that Washington has a significant interest in resolving

3    controversies between its citizens, including Microsoft, putative class members, and Plaintiff Rau.

4    ECF No. 26 at 14. However, as Plaintiffs note, Plaintiff Ryan is a citizen of California, and

5    Plaintiffs have alleged that a number of potential class members reside in California. Furthermore,

6    to the extent Plaintiffs contend that the relevant, alleged anticompetitive agreements were

7    negotiated, entered into, and performed in this District, this would support California's interest in

8    this action. On balance, the Court concludes that this factor is neutral.

9         Defendant also contends that Washington law governs Plaintiffs' employment agreements

10   and will therefore be "central" to this dispute. As discussed above, the Court is not persuaded that

11   the enforceability or terms of Plaintiffs' employment agreements are material to Plaintiffs' claims

12   in the instant action. Moreover, Plaintiffs also assert claims under California law, and have alleged

13   negative effects of Microsoft's alleged anticompetitive behavior within the State of California.

14   Whether or not the Court has to apply California or Washington law, the Court notes that both the

15   Western District of Washington and the Northern District of California are capable of applying

16   both Washington and California law. *Cf. Foster v. Nationwide Mut. Ins. Co.*, No. 07-04928, 2007

17   WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (noting that federal courts are "fully capable" of

18   applying the laws of different states). While each District may be more familiar with the law of the

19   state in which it sits, here the parties assert that both California and Washington state law may be

20   implicated. As such, the Court finds that the "familiarity of each forum with the applicable law"

21   factor neither weighs for nor against transfer.

22        In sum, the Court finds that the "interest of justice" would not be best served by transfer of

23   the instant litigation to the Western District of Washington. While court congestion might weigh

24   in favor of transfer, this District's familiarity with the related *High-Tech* litigation would also

25   conserve judicial resources. The "applicable state law" and "local interest" factors are neutral, as

26   both California and Washington have interests in this litigation, and both the Western District of

27   Washington and Northern District of California are fully capable of applying either or both

28

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    California and Washington law. Having evaluated these factors, the Court concludes that the

2    public factors do not weigh in favor of transfer.

### 3.    Conclusion

4        The Court therefore concludes that Defendant Microsoft has failed to carry its burden of

5    showing that transfer of venue to the Western District of Washington is warranted in the instant

6    action. Viewing the totality of the circumstances, the Court concludes that while this action could

7    have been brought in the Western District of Washington, the interest of justice and the

8    convenience of the parties do not call for transfer of the instant action to Washington.

9    Accordingly, Microsoft's motion to transfer venue is denied.

## III. MOTION TO DISMISS

11        In addition to its motion to transfer venue, Microsoft also moves to dismiss Plaintiffs'

12    complaint. The Court turns to this motion below.

### A.    Legal Standard

#### 1.    Rule 12(b)(6)

15        Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint

16    for failure to state a claim upon which relief can be granted. Such a motion tests the legal

17    sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering

18    whether the complaint is sufficient, the Court must accept as true all of the factual allegations

19    contained in the complaint. *Iqbal*, 556 U.S. at 678. However, the Court need not accept as true

20    "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations

21    that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re

22    Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a

23    complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

24    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

25    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

26    when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

27    the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

28

17

1    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2    unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

3                                    **2.    Rule 9(b)**

4            Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

5    Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with

6    particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

7    *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the

8    allegations must be "specific enough to give defendants notice of the particular misconduct which

9    is alleged to constitute the fraud charged so that they can defend against the charge and not just

10   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

11   1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific

12   content of the false representations as well as the identities of the parties to the

13   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

14   (internal quotation marks and citation omitted). A plaintiff must set forth what is false or

15   misleading about a statement, and why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541,

16   1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman*

17   *Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However,

18   "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity,

19   and "may be alleged generally." Fed. R. Civ. P. 9(b).

20                                   **3.    Leave to Amend**

21          If the court concludes that the complaint should be dismissed, it must then decide whether

22   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

23   "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

24   15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*

25   *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation

26   omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay,

27   bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

28
                                                     18
     Case No. 14-CV-04634-LHK
     ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

2    the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512

3    F.3d 522, 532 (9th Cir. 2008).

4        **B.    Discussion**

5        Defendant moves to dismiss Plaintiffs' complaint on five grounds: (1) Plaintiffs' claims

6    are time barred; (2) Plaintiffs fail to adequately allege facts supporting their antitrust claims; (3)

7    Plaintiffs fail to plead facts to support the application of California law; (4) Plaintiffs have no right

8    to restitution as a remedy under California's Unfair Competition Law ("UCL"); and (5) Plaintiffs

9    lack standing to assert a claim under California Business & Professions Code § 16600. As the

10   Court concludes that Plaintiffs' claims are time barred, the Court does not reach the remainder of

11   Defendant's arguments.

12       Microsoft contends that Plaintiffs' claims are time barred. The parties agree that Plaintiffs'

13   Sherman Act, Cartwright Act, and UCL claims are subject to a four year statute of limitations. The

14   parties dispute: (1) whether Plaintiffs' California Business & Professions Code § 16600 claim is

15   subject to a four year statute of limitations; (2) when Plaintiffs' federal and state law claims

16   accrued; and (3) whether Plaintiffs have sufficiently alleged fraudulent concealment so as to toll

17   the statute of limitations.

18       **1.    Statutes of Limitations**

19       As a threshold matter, the Court agrees that Plaintiffs' claims under the Sherman Act,

20   Cartwright Act, and UCL are all subject to a four year statute of limitations. *See* 15 U.S.C. § 15b

21   (Sherman Act); Cal. Bus. & Prof. Code § 16750.1 (Cartwright Act); Cal. Bus. & Prof. Code

22   § 17208 (UCL). The statute of limitations provision in the Sherman Act provides:

23               Any action to enforce any cause of action under section 15, 15a, or
                 15c of this title shall be forever barred unless commenced within
24               four years after the cause of action accrued. No cause of action
                 barred under existing law on the effective date of this Act shall be
25               revived by this Act.

26   15 U.S.C. § 15b. The statute of limitations provision under California's Cartwright Act is

27   functionally identical:

28   Case No.  14-CV-04634-LHK
     ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

> Any civil action to enforce any cause of action for a violation of this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of the amendment of this section at the 1977-78 Regular Session of the Legislature shall be revived by such amendment.

Cal. Bus. & Prof. Code § 16750.1. California's UCL similarly provides for a four-year statute of limitations:

> Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment.

Cal. Bus. & Prof. Code § 17208 (UCL).

As to the California Business & Professions Code § 16600 claim, Microsoft argues that § 16600 is part of the Cartwright Act and therefore subject to the Cartwright Act's four year statute of limitations. *See* Cal. Bus. & Profs. Code §16750.1. Microsoft relies on references to the Cartwright Act as "California Business and Professions Code §§ 16600 *et seq*." *See* ECF No 41 at 2 (citing *ABC Int'l Traders v. Yamaha Corp. of Am.*, No. CV-86-7892, 1993 U.S. Dist. LEXIS 20947, at *20 (N.D. Cal. Jan. 27, 1993; *Cal. ex rel. Lockyer v. Mirant Corp.*, No. 2-1787, 2002 U.S. Dist. LEXIS 15733, at *17 (N.D. Cal. Aug. 6, 2002)). However, that part of the California Business & Professions Code, part 2 of division 7 (titled "General Business Regulations"), includes the Cartwright Act, §§ 16700–16770, the Unfair Practices Act, §§ 17000–17101, and the Unfair Competition Act, §§ 17200–17210, in addition to other statutory restrictions on covenants not to compete.

Moreover, the language of § 16750.1, the Cartwright Act's statute of limitations, expressly provides that "[a]ny civil action to enforce any cause of action for *a violation of this chapter* shall be commenced within four years after the cause of action accrued." The chapter to which § 16750.1 refers is "Chapter 2. Combinations in Restraint of Trade," which includes §§ 16700–16770, i.e., the Cartwright Act. *See* Cal. Bus. & Profs. Code § 16750.1. As Microsoft cites no authority actually concluding that the express language of § 16750.1 has been interpreted to apply to "Chapter 1. Contracts in Restraint of Trade," which includes §§ 16600–16607, the Court

20

1  concludes that § 16600 is neither a part of the Cartwright Act nor governed by the Cartwright

2  Act's four year statute of limitations.

3         However, Plaintiffs are incorrect in stating that there is no applicable statute of limitations

4  for § 16600 whatsoever. Section 343 of the California Code of Civil Procedure provides that "[a]n

5  action for relief not hereinbefore provided for must be commenced within four years after the

6  cause of action shall have accrued." While § 16750.1 of the Cartwright Act may not apply to

7  Plaintiffs' § 16600 claim, the Court finds no reason why California's catch-all statute of

8  limitations provision in California Code of Civil Procedure § 343 would not apply to this action.

9  *See, e.g.*, *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d

10  832, 846 (Fed. Cir. 2009) (noting that § 343 is a "residuary four-year limitation period to all

11  causes of action that do not fall under specific statutes of limitation").

12        In sum, the Court concludes that each of Plaintiffs' four claims is subject to a four year

13  statute of limitations.

14                    **2.    Accrual Rule**

15        As the parties separately dispute when Plaintiffs' federal and state law claims accrued, the

16  Court begins by addressing Plaintiffs' federal Sherman Act claim before turning to Plaintiffs' state

17  law claims.

18                    **a.    Sherman Act**

19        Under the Sherman Act, Plaintiffs' claims began to accrue at the time Microsoft allegedly

20  injured Plaintiffs. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)

21  ("Generally, [an antitrust cause of] action accrues and the statute begins to run when a defendant

22  commits an act that injures a plaintiff's business. . . ."). As the Ninth Circuit explained in

23  *Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 274–75 (9th Cir. 1988), "In

24  [antitrust] actions governed by 15 U.S.C. § 15b, the plaintiff's knowledge is generally irrelevant to

25  accrual, which is determined according to the date on which injury occurs." Plaintiffs concede, as

26  they must, that the "injury rule" of accrual applies to their Sherman Act claims. *See also In re*

27  *Animation Workers Antitrust Litig.*, --- F. Supp. 2d. ---, 2014 WL 1522368, at *10–11 (N.D. Cal.

28

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

April 3, 2015).

Here, Plaintiffs' claim began to accrue in 2007, when Plaintiff Ryan worked for Microsoft as a Senior Product Manager, and Plaintiff Rau worked for Microsoft as a Lead Systems Engineer Senior. Compl. ¶¶ 16, 18. Plaintiffs further allege that Microsoft entered into the anti-solicitation agreement and restricted hiring agreement "around May 2007." *Id.* ¶¶ 28, 36. Consequently, the four year statute of limitations ran on Plaintiffs' claim in 2011. As Plaintiffs filed their complaint on October 16, 2014, Plaintiffs' claim is time barred unless Plaintiffs have sufficiently alleged that their claim falls within two narrow statute of limitations exceptions or that a tolling doctrine applies. The Court first addresses the applicability of: (1) an exception for unascertainable damages; and (2) an exception for "continuing violations" by Defendant. The Court then addresses whether Defendant's alleged fraudulent concealment should toll the statute of limitations.

First, Plaintiffs contend that their Sherman Act claim is subject to the narrow exception for unascertainable damages. *See Zenith*, 401 U.S. at 340. As the Ninth Circuit has explained, if "harm is uncertain or speculative at the time of the antitrust violation, the statute of limitations period begins on the date that the plaintiff's damages first accrued and became ascertainable." *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1204 (9th Cir. 2014) (internal quotation marks omitted). Here, Plaintiffs argue that their damages were "unascertainable" until May 2013, when Plaintiffs first discovered Microsoft's alleged involvement in the anti-solicitation and restricted hiring agreements, because Plaintiffs "did not know" the terms, existence, parties, or scope of the agreements. ECF No. 38 at 6. This argument fails as a matter of law.

As an initial matter, Plaintiffs misunderstand the scope of the speculative damages exception. The unascertainable damages exception is not related to whether Plaintiffs were aware of the existence of their injuries. *See* P. Areeda and H. Hovencamp, Antitrust Law § 320d ("The question of whether there is a right to recovery is not to be confused with the difficulty in ascertaining the scope or extent of the injury."). Instead, the unascertainable damages exception addresses situations where it is not certain that a plaintiff has been injured at the time a defendant commits the relevant anticompetitive act. More specifically, "the key question in determining

22

United States District Court
Northern District of California

whether damages were overly speculative such that recovery would be unavailable at the time of the initial act is whether the existence of the harm is determinable, not the specific dollar value of that harm." *Samsung*, 747 F.3d at 1204 (citing *Pace*, 813 F.2d at 240). That Plaintiffs "did not 'know for certain' whether or to what extent they had been damaged prior to May 2013," does not show Plaintiffs would not have been able to allege the fact of damages at the time Microsoft allegedly entered into the anticompetitive agreements.

Plaintiffs rely on *Samsung*, but that case is distinguishable. In *Samsung*, the Ninth Circuit concluded that the unascertainable damages exception applied to Samsung's claims because at the time the defendants entered into the illegal conspiracy, whether or not Samsung would actually suffer damages was too speculative to support a claim. *Samsung*, 747 F.3d at 1205. More specifically, the Ninth Circuit noted that at the time the defendants allegedly conspired and entered into their anticompetitive agreement in 2003, Samsung was not in the same market as the defendants, and no one could have predicted that Samsung would enter that market in late 2006. *Id.* at 1202, 1204–05. As such, Samsung's damages were unascertainable in 2003, that is, at the time defendants entered into the alleged anticompetitive conspiracy. Here, in contrast, at the time of the alleged "initial wrong," e.g., Microsoft becoming a party to the anti-solicitation and restricted hiring agreements in 2007, Plaintiffs allegedly suffered ascertainable damages as Microsoft employees who were injured by Microsoft's alleged illegal conduct. Unlike in *Samsung*, where Samsung could not have alleged an actual injury in 2003 when the defendants entered into their conspiracy, here Plaintiffs could have alleged actual damages and injury in 2007 when Microsoft allegedly entered into the anti-solicitation and restricted hiring agreements. *See id.* That Plaintiffs were unaware of the scope or precise amount of damages in 2007 is not relevant to whether Plaintiffs suffered an ascertainable injury in 2007. *See Samsung*, 747 F.3d at 1204; *Pace*, 813 F.2d at 240.

The Court therefore concludes that Plaintiffs' claims do not fall within the unascertainable damages exception.

Second, Plaintiffs further argue that even if their claim would otherwise be time barred,

23

United States District Court
Northern District of California

1   Microsoft engaged in "continuing violations" that would render Plaintiffs' claim timely.

2   Defendant argues that Plaintiffs have failed to allege any facts showing that Defendant engaged in

3   any "overt acts" that would restart the statute of limitations.

4       Under the "continuing violation" doctrine, "each overt act that is part of the [antitrust]

5   violation and that injures the plaintiff . . . starts the statutory period running again, regardless of

6   the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O Smith Corp.*,

7   521 U.S. 178, 189 (1997) (internal citations and quotations omitted); *Pace Indus. v. Three Phoenix*

8   *Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the plaintiff's

9   interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."). In

10  the Ninth Circuit, an overt act restarts the statute of limitations if it: (1) is "a new and independent

11  act that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating

12  injury on the plaintiff." *Pace*, 813 F.2d at 237; *see also Samsung*, 747 F.3d at 1202–03.

13      Here, the Court concludes that the bald assertion that "Microsoft's conspiracy was a

14  continuing violation through which Microsoft repeatedly invaded Plaintiffs' and Plaintiff Classes'

15  interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described

16  herein" is insufficient to show a continuing violation. *See* Compl. ¶ 55. A review of the specific

17  factual allegations in Plaintiffs' complaint reveals no alleged wrongful communications or specific

18  conduct during the limitations period. Other than the two allegations that Microsoft entered into

19  the anti-solicitation and restricted hiring agreements in or around May 2007, the complaint is

20  bereft of *any* dates or details with regards to Microsoft's specific conduct. *See generally* Compl.

21  There are no allegations of any new or independent actions taken by the Defendants after October

22  16, 2010, i.e., within four years of the filing date of this complaint, that caused Plaintiffs any new

23  or accumulating injury. *See Pace*, 813 F.2d at 237. This is not entirely surprising given the

24  complaint's conspicuous absence of specific factual allegations regarding Microsoft's alleged

25  conduct before, during, or after the limitations period, with the exception of the two allegations

26  that Microsoft entered into the anti-solicitation and restricted hiring agreements in May 2007.

27      In opposition, Plaintiffs rely on their allegations that Microsoft "communicated by phone

28

United States District Court
Northern District of California

24

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

and e-mail and through in-person meetings to further the conspiracy," and the use of the present

tense in describing the effect of the alleged anti-solicitation and restricted hiring agreements. *See*

ECF No. 38 at 15. The Court finds these allegations woefully lacking. Plaintiffs have pled no facts

supporting their allegations. At a minimum, under *Twombly*, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556

U.S. at 678. Plaintiffs offer no facts detailing who Microsoft's alleged co-conspirators were, much

less any facts showing when, where, or with whom these alleged phone calls, emails, and in-

person meetings took place. Similarly, allegations that the anti-solicitation agreement "suppresses

wages," or that "[a]s additional companies joined the conspiracy . . . competition among

participating companies for skilled labor continued to drop," do not show that Microsoft took any

overt act within the limitations period. As a threshold matter, Plaintiffs need to do more than

merely allege a continuing violation—they must also allege an overt act:

> A continuing violation is one in which the plaintiff's interests are
> repeatedly invaded and a cause of action arises each time the
> plaintiff is injured. *However, even when a plaintiff alleges a*
> *continuing violation, an overt act by the defendant is required* to
> restart the statute of limitations and the statute runs from the last
> overt act.

*Pace*, 813 F.2d at 237 (emphasis added). Plaintiffs' bare allegation that their interests were

"repeatedly invaded" is therefore insufficient as a matter of law. Here, the Court finds that

Plaintiffs have failed to plead that Microsoft engaged in an overt act, e.g., that Microsoft engaged

in a "new and independent act that is not merely a reaffirmation of a previous act," which

"inflict[ed] new and accumulating injury" on Plaintiffs. *Id.* at 238.

In sum, Plaintiffs have failed to allege a continuing violation.

Third, Plaintiffs also argue that the statute of limitations on their Sherman Act claim

should be tolled under the fraudulent concealment doctrine. Defendant contends that Plaintiffs'

allegations are insufficient under Rule 9(b), Plaintiffs have failed to plead diligence, and Plaintiffs

were on inquiry notice of their claims.

"A statute of limitations may be tolled if the defendant fraudulently concealed the

25

existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ienos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The plaintiff bears the burden of pleading and proving fraudulent concealment. *Id.*; *see also Conmar v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim" as a result of defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Hexcel*, 681 F.3d at 1060; *see also Conmar*, 858 F.2d at 502; *Beneficial Life Ins.*, 851 F.2d at 276. Moreover, allegations of fraudulent concealment must be pled with particularity. *Conmar*, 858 F.2d at 502.

As a threshold matter, Plaintiffs contend that they do not need to plead affirmative acts of concealment because Microsoft had a duty to disclose its participation in the alleged anticompetitive conspiracy to Plaintiffs. *See* ECF No. 38 at 7 ("Defendant absolutely had a duty to disclose to Plaintiffs its unlawful Agreement . . . ."). In the Ninth Circuit, "passive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information to the plaintiff." *Conmar*, 858 F.2d at 505 (internal citation omitted). Plaintiffs rely on a single case, *Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272, 1276 (9th Cir. 1991), for the proposition that Microsoft owed Plaintiffs, and all of Microsoft's employees, a fiduciary duty. *Harris*, however, is inapposite. In *Harris*, the Ninth Circuit held that tour guides did not owe fiduciary duties to tourists under California law. *Id.* at 1275. Moreover, as a general matter, the fact of an employer-employee relationship alone is insufficient to create a fiduciary relationship. *See, e.g.*, *Salsgiver v. Am. Online, Inc.*, 32 F. App'x 894 (9th Cir. 2002) (citing *O'Dell v. Freightliner Corp.*, 10 Cal. App. 4th 645, 659 (Ct. App. 1992)) ("[T]here is generally no fiduciary relationship between employee and employer."); *see also Amid v. Hawthorne Comm. Medical Grp., Inc.*, 212 Cal. App. 3d 1383, 1391 (Ct. App. 1989) ("A bare employee-employer relationship does not create a confidential relationship."). Plaintiffs offer no other argument or authority for the proposition that Microsoft owes fiduciary duties to Plaintiffs,

26

United States District Court
Northern District of California

much less to all of Microsoft's employees. As Plaintiffs have provided no basis for the Court to conclude that Defendant owed Plaintiffs fiduciary duties, the Court concludes that Microsoft had no obligation to affirmatively disclose its alleged illicit conduct.

Moreover, having reviewed Plaintiffs' complaint, the Court concludes that Plaintiffs' allegations with respect to Microsoft's alleged fraudulent concealment of Plaintiffs' claims fail to pass muster under Rule 9(b). To satisfy the heightened standard under Rule 9(b), Plaintiffs must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764 (9th Cir. 2007). Plaintiffs fail to allege any facts whatsoever showing the "who, what, where, when, and how" of Microsoft's alleged fraudulent concealment. For example, Plaintiffs allege that "Microsoft also provided pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions made under the conspiracy." Compl. ¶ 59. Plaintiffs do not allege when, where, or to whom Microsoft allegedly provided these false and misleading explanations, or the content of these allegedly misleading explanations. This conclusory allegation devoid of factual content does not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s heightened pleading standard. In the absence of any factual allegations regarding Microsoft's alleged wrongful conduct in fraudulently concealing the existence of Plaintiffs' claims, the Court concludes that Plaintiffs have failed to adequately allege an essential element of fraudulent concealment. *See Hexcel*, 681 F.3d at 1060.

In sum, the Court finds that Plaintiffs' Sherman Act claim is time barred, and that Plaintiffs have failed to adequately allege an applicable exception to the normal accrual rule or a plausible tolling theory. This dismissal is without prejudice, as the Court concludes that amendment would not necessarily be futile, as Plaintiffs may be able to allege sufficient facts to support their claims of continuing violations and equitable tolling. *See Leadsinger*, 512 F.3d at 532.

**b.    Cartwright Act, UCL, and California Business & Professions Code § 16600**

While Plaintiffs concede that the injury rule applies to Sherman Act claims, Plaintiffs

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  contend that the Ninth Circuit has applied the "discovery rule" to Cartwright Act and UCL claims.

2  Plaintiffs rely on *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086–87 (9th Cir. 2014), and *Samsung*

3  *Electronics Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1201–02 (9th Cir. 2014). According to

4  Plaintiffs, their California state law claims did not begin to accrue until they "discovered" their

5  claims on May 17, 2013, rather than in May 2007 when Microsoft allegedly entered into the

6  anticompetitive agreements and injured the Plaintiffs. Compl. ¶ 57.

7          As a general rule, under California law the default accrual rule is the "last element rule,"

8  where a claim accrues "'when [it] is complete with all of its elements'—those elements being

9  wrongdoing, harm, and causation." *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011)

10  (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). The "discovery rule" is an

11  exception to the common law accrual rule. *Id.* In California, the discovery rule postpones accrual

12  of a claim until the plaintiff discovers, or has reason to discover, the cause of action." *Clemens v.*

13  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (internal quotation marks omitted).

14  The discovery rule "may be expressed by the Legislature or implied by the courts." *Norgart*, 21

15  Cal. 4th at 397. By statute, the discovery rule applies to fraud actions. *See E-Fab, Inc. v.*

16  *Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (Ct. App. 2007).

17          As an initial matter, the Court concludes that neither *Oliver* nor *Samsung* applied the

18  discovery rule to California antitrust and unfair competition claims, much less to § 16600 claims.[4]

19  Plaintiffs overstate the breadth of the Ninth Circuit's decisions in *Oliver* and *Samsung*. In both

20  *Oliver* and *Samsung*, the Ninth Circuit concluded that the district court had erred in finding that

21  the plaintiffs' federal antitrust claims were time barred. *See Oliver*, 751 F.3d at 1086–87;

22  *Samsung*, 747 F.3d at 1204–05. As the district court had assumed that resolution of the federal

23  claims was dispositive as to the plaintiffs' California antitrust and unfair competition claims, the

24  district court had not specifically addressed the timeliness of the state law claims. *See Oliver*, 751

25  F.3d at 1087. The Ninth Circuit vacated and remanded for the district court to "apply the

26

27  ---
[4] Plaintiffs fail to mention that neither *Oliver* nor *Samsung* involved California Business &
Professions Code § 16600 claims.

28
Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

California Supreme Court's [intervening] decision in *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 781 (2013)[,] in determining whether Plaintiffs' Cartwright Act claim was timely filed." *Id.* The Ninth Circuit did not hold that the discovery rule applied to the plaintiffs' state law claims. Instead, the Ninth Circuit noted that *Aryeh* had changed the law in California by holding that interpretations of federal antitrust law were only instructive and not conclusive with respect to state antitrust law. *Samsung*, 747 F.3d at 1205 n.4.

Plaintiffs further assert that *Aryeh* held that the discovery rule applies to their Cartwright Act, UCL, and § 16600 claims. *See* ECF No. 38 at 5. However, the California Supreme Court did not hold so broadly in *Aryeh.* The *Aryeh* Court specifically addressed the issue of whether the "common law theory of continuous accrual" could "apply to actions under the [UCL]." 292 P.3d at 873. The *Aryeh* Court began with the premise that the traditional common law accrual rule is the "last element" accrual rule, where "the statute of limitations runs from the occurrence of the last element essential to the cause of action." *Id.* at 875 (internal quotation marks omitted). In deciding whether equitable exceptions to the "last element rule" apply to the UCL, the *Aryeh* Court held only that the UCL does not categorically *forbid* the application of equitable exceptions like the discovery rule under appropriate circumstances. *See id.* at 878–79. The *Aryeh* Court did not hold that the UCL *requires* application of particular equitable exceptions to every cause of action. *See id.* More specifically, the *Aryeh* court explained that the "UCL is a chameleon," and that "a UCL claim in some circumstances might support the application of one or another exception, and in others might not." *Id.* at 878 (internal citations omitted). Accordingly, "the nature of the right sued upon and the circumstances attending its invocation control the point of accrual." *Id.* (internal quotation marks and citation omitted).

Here, the Court finds that Plaintiffs have failed to identify any circumstances warranting a deviation from the default common law last element accrual rule. *See id.* at 878. Unlike the exemplar UCL claims involving fraudulent misrepresentations and deceptive practices, which the *Aryeh* Court identified as instances where equitable exceptions might apply, Plaintiffs' UCL claim appears to rely solely on Microsoft's alleged anticompetitive conduct. *See id.*; Compl. ¶¶ 77–84.

29

1   More specifically, Plaintiffs allege that Microsoft entered into an unlawful trust in restraint of

2   trade and commerce as the basis of their UCL claim. *See* Compl. ¶¶ 69–72. Plaintiffs have

3   presented no argument or authority as to why the circumstances of Plaintiffs' particular UCL

4   claim support the application of any equitable exception, including the delayed discovery rule. As

5   the "last element" accrual rule functions as the default accrual rule under California law, and

6   Plaintiffs have failed to make any showing as to why the Court should deviate from the default

7   rule, the Court concludes that Plaintiffs' UCL claim began to accrue in 2007 and is now time

8   barred.

9        Plaintiffs cite only to *Aryeh* in support of their assertion that the discovery rule also applies

10  to their Cartwright Act and § 16600 claims. As discussed above, however, *Aryeh* addressed only

11  whether certain equitable exceptions could apply to UCL claims such as UCL claims based on

12  misrepresentation and fraud. Moreover, the *Aryeh* Court specifically rejected the notion that

13  Cartwright Act claims are equivalent to unfair competition claims under the UCL, and the

14  California Supreme Court limited its analysis to UCL claims. *See id.* at 877–78. Plaintiffs' reliance

15  on *Aryeh* is therefore misplaced.

16       In California, the default accrual rule is the "last element rule." *Id.* at 875; *see also*

17  *Consortium Info. Servs., Inc. v. Experian Info. Solutions, Inc.*, No. G043781, 2011 WL 1782114,

18  at 5 (Cal. Ct. App. May 10, 2011) (applying last element rule to Cartwright Act claim). Under that

19  rule, Plaintiffs' claims began to accrue in 2007, when Microsoft allegedly injured Plaintiffs by

20  entering into anticompetitive conspiracies that had the effect of suppressing Plaintiffs' wages and

21  restricting their mobility. Compl. ¶¶ 28, 36, 44. At that point, the elements of Plaintiffs' claims,

22  "wrongdoing, harm, and causation," were complete. *See Pooshs*, 51 Cal. 4th 788, 797.

23       The Court therefore concludes that all of Plaintiffs' state law claims began to accrue in

24  2007 and are time barred. Moreover, Plaintiffs have failed to adequately allege an equitable

25  exception or tolling doctrine that would render Plaintiffs' state law claims timely. As such, the

26  Court grants Microsoft's motion to dismiss Plaintiffs' Cartwright Act, UCL, and § 16600 claims.

27  This dismissal is without prejudice, as the Court concludes that amendment would not necessarily

28

Case No.  14-CV-04634-LHK
ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   be futile, as Plaintiffs may be able to allege sufficient facts to support their claims of continuing

2   violations and equitable tolling. *See Leadsinger*, 512 F.3d at 532.

3       **3.  Conclusion**

4       In sum, the Court finds that Plaintiffs' Sherman Act, Cartwright Act, UCL, and California

5   Business & Professions Code § 16600 claims are time barred. As Plaintiffs have failed to

6   adequately allege an applicable exception or tolling doctrine, the Court grants Defendant's motion

7   to dismiss Plaintiff's complaint.

8   **IV.   CONCLUSION**

9       For the foregoing reasons, the Court DENIES Defendant's motion to transfer venue and

10  GRANTS Defendant's motion to dismiss. Should Plaintiffs elect to file an Amended Complaint

11  curing the deficiencies identified herein, Plaintiffs shall do so within 30 days of the date of this

12  Order. Failure to meet the 30-day deadline to file an Amended Complaint or failure to cure the

13  deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add

14  new causes of action or parties without leave of the Court or stipulation of the parties pursuant to

15  Federal Rule of Civil Procedure 15.

16  **IT IS SO ORDERED.**

17  Dated: April 10, 2015

18                                              _____

19                                              LUCY H. KOH
                                                United States District Judge

20

21

22

23

24

25

26

27

28
    Case No.  14-CV-04634-LHK
    ORDER DENYING MOTION TO TRANSFER VENUE; GRANTING MOTION TO DISMISS

*United States District Court*
*Northern District of California*