UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DESERAE RYAN, et al., | Case No. 14-CV-04634-LHK |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |
| v. | Re: Dkt. No. 67 |
| MICROSOFT CORPORATION, | |
| Defendant. | |

Before the Court is Defendant Microsoft Corporation's motion to dismiss.  ECF No. 67. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss with prejudice.

I.     **BACKGROUND**

   A.  **Factual Background**

      1.  **The Parties**

      Plaintiff Deserae Ryan ("Ryan") and Plaintiff Trent Rau ("Rau"), (collectively, "Plaintiffs"), bring this putative class action against Defendant Microsoft Corporation ("Defendant" or "Microsoft") for alleged violations of state and federal antitrust laws.  Plaintiff Ryan, an individual, is a resident of the State of California.  First Amended Compl. ("FAC"), ECF

No. 61, ¶ 16.  Plaintiff Ryan worked for Microsoft as a "Senior Product Manager" from April 2007 to September 2012 in Redmond, Washington.  *Id.* ¶ 15.  Plaintiff Rau, an individual, is a resident of the State of Washington.  *Id.* ¶ 18.  Plaintiff Rau worked for Microsoft as a "Lead Systems Engineer Senior" from June 2006 to June 2010.  *Id.* ¶ 17.

Defendant Microsoft is a Washington corporation with its principal place of business in Redmond, Washington.  *Id.* ¶ 19.

### 2.  *In re High-Tech* Employees Litigation

Here, Plaintiffs allege that Defendant Microsoft conspired with "other technology companies" in various "Anti-Solicitation and Restricted Hiring" agreements.  As the factual and procedural history of *In re High-Tech Employees Litigation*, No. 11-CV-02509-LHK, and the DOJ investigations and complaints are relevant to this action, the Court briefly summarizes the background of that litigation below.

From 2009 to 2010, the Antitrust Division of the DOJ investigated the employment and recruitment practices of various Silicon Valley technology companies, including Adobe Systems, Inc., Apple, Inc., Google, Inc., Intel Corp., and Intuit, Inc.  *See In re High-Tech Employees Litig.*, 856 F. Supp. 2d 1103, 1109 (N.D. Cal. 2012).  The DOJ filed its complaint against Adobe, Apple, Google, Intel, Intuit, and Pixar on September 24, 2010.  *Id.*  On December 21, 2010, the DOJ filed another complaint against Lucasfilm and Pixar.  *See* No. 11-CV-2509-LHK, ECF No. 65.  The defendants stipulated to proposed final judgments in which they agreed that the DOJ's complaints had stated claims under federal antitrust law and agreed to be "enjoined from attempting to enter into, maintaining or enforcing any agreement with any other person or in any way refrain from . . . soliciting, cold calling, recruiting, or otherwise competing for employees of the other person." *High-Tech*, 856 F. Supp. 2d at 1109–10 (quoting Adobe Proposed Final Judgment at 5).  The U.S. District Court for the District of Columbia entered the stipulated proposed final judgments in March and June of 2011.  *Id.* at 1110.

The *High-Tech* plaintiffs filed five separate state court actions between May and July of 2011.  Following removal, transfer to San Jose to the undersigned judge, and consolidation, the

2

*High-Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011. *Id.* at 1112–13. In their complaint, the *High-Tech* plaintiffs alleged antitrust claims against their employers, claiming that the defendants had conspired "to fix and suppress employee compensation and to restrict employee mobility." *Id.* at 1108. More specifically, the *High-Tech* plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral agreements." *Id.* at 1110. One agreement, the "Do Not Cold Call" agreement involved one company placing the names of the other company's employees on a "Do Not Cold Call" list and instructing its recruiters not to cold call the employees of the other company. *Id.* In addition to the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs also alleged that Pixar and Lucasfilm entered into express, written agreements to (1) not cold call each other's employees, (2) to notify the other company whenever making an offer to an employee of the other company, and (3) not to engage in "bidding wars." *Id.* at 1111.

### 3. Alleged Conspiracy in the Instant Action

In their original complaint, Plaintiffs alleged that Microsoft in May 2007 "was one of several parties to an Anti-Solicitation Agreement otherwise known as the 'Do Not Cold Call' list," ECF No. 1 ¶ 28, and that Microsoft allegedly entered into a "Restrictive Hiring Agreement" with "several other technology companies," *id.* ¶ 36.

In the First Amended Complaint, Plaintiffs appear to have abandoned their allegations that Microsoft was a party to two agreements in May 2007. Instead, Plaintiffs now allege that Microsoft entered into a series of independent anti-solicitation agreements with various companies. *See* FAC. Plaintiffs allege that each time Microsoft entered into an anti-solicitation agreement with a company, Microsoft added the company to an internal "Hands-Off List." *Id.* ¶ 33. The Hands-Off List allegedly consisted of those companies "with whom Microsoft entered into a Secret Agreement to restrict or prohibit the solicitation or hiring of each other's employees." *Id.* ¶ 34. The First Amended Complaint alleges that Microsoft entered into the following specific agreements:

- On April 19, 2005, Microsoft entered into a mutual non-solicitation agreement with

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

Transmeta and added Transmeta to the Hands-Off List.  *Id.* ¶ 29.

- In 2005 or 2006, Microsoft reached "an understanding" with Dell that Microsoft and Dell would not "poach" each other's employees, and Microsoft added Dell to the Hands-Off List.  *Id.* ¶ 31.

- In 2005, Microsoft entered into a mutual non-solicitation agreement with Yahoo! and added Yahoo! to the Hands-Off List.  *Id.* ¶ 32; ECF No. 38, Ex. 3.[1]

- By 2007, Hewlett Packard ("HP") was included on the Hands-Off List.  FAC ¶ 34.  In June 2009, Microsoft renewed a "Secret Agreement" with HP.  *Id.* ¶ 41.  The First Amended Complaint does not specify when the "Secret Agreement" began or when HP was added to the Hands-Off List.

- On an unspecified date, Microsoft and Avanade agreed "to refrain from soliciting each other's employees."  *Id.* ¶ 38.  By 2007, Avanade was included on the Hands-Off List.  *Id.* ¶ 34.  The First Amended Complaint does not allege when Avanade was added to the Hands-Off List.

- In 2007, Microsoft entered into mutual non-solicitation agreements with Nvidia, ATI, and Intel and added them to the Hands-Off List.  *Id.* ¶ 35.  In June 2009, Microsoft renewed its agreement with Nvidia.  *Id.* ¶ 41.

- By 2007, Microsoft agreed with Google "not to directly recruit or 'cold-call' each

_____

[1] Defendant's unopposed request for judicial notice is GRANTED, and the Court takes notice of the adjudicative facts contained therein.  *See* ECF No. 68.  Defendant requests that the Court take judicial notice of documents incorporated by reference into the FAC (emails quoted in the FAC ¶¶ 29, 31, 32, 34, 39, 41), matters of public record (SEC filings, filings submitted to the Oregon Secretary of State's Office, and filings submitted to the Pennsylvania Department of State), and newspaper articles.  These documents are appropriate for judicial notice.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (documents referenced in complaint but not physically attached); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (matters of public record), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (media publications); *see also* Fed. R. Evid. 201(d).
Plaintiffs' unopposed request for judicial notice is likewise GRANTED, and the Court takes notice of the adjudicative facts contained therein.  *See* ECF No. 70, Ex. 1.  Plaintiffs request that the Court take judicial notice of matters of public record (an official document in a DOJ file, complaints filed with federal district courts, and final judgments of federal district courts).  These documents are appropriate for judicial notice.  *See Lee*, 250 F.3d at 689-90.

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

other's employees, and to also refrain from hiring each other's manager-level and above employees." *Id.* ¶ 36.  The First Amended Complaint does not specify when this agreement began.

- On an unspecified date, Microsoft entered into a mutual non-solicitation agreement with ASAP Software Express, Inc.  *Id.* ¶ 37.

- By 2009, Microsoft agreed not to solicit candidates from IMPAQT and placed IMPAQT on the Hands-Off List.  *Id.* ¶ 41; ECF No. 68, Ex. 7.

- On an unspecified date, Microsoft entered into a mutual non-solicitation agreement with Waggener Edstrom Communications.  FAC ¶ 41.

- In June 2009, Microsoft renewed "Secret Agreements" with Real Networks, Wipro Limited, and Nortel.  *Id.*  The First Amended Complaint does not specify when these agreements first began.

- On an unspecified date, Microsoft entered into non-solicitation agreements with Avenue A, Borland, Digitas, OMD, RazzorFish, Real Networks, Satyam, Universal McCann, and InfoUSA, Inc..  *Id.* ¶ 77.

- On an unspecified date, Microsoft entered into an agreement with Expedia prohibiting Expedia from directly soliciting Microsoft's employees.  *Id.* ¶ 79.

Altogether, Plaintiffs identify 25 different companies with whom Microsoft allegedly entered into non-solicitation agreements.  These companies are not limited to Silicon Valley technology companies, but also include non-technology companies, including a public relations company and a marketing company.  *See* ECF No. 68, Exs. 9-17.  The latest dates by which Plaintiffs allege that Microsoft entered into these specific agreements are in 2009.  Plaintiffs additionally allege that between 2007 and 2013, "Microsoft continued to modify and add to its Hands-Off List as it continued to renew and engage in new Secret Agreements with over approximately 75 different companies, most of which were added to Microsoft's Hands-off List." *Id.* ¶ 41.  However, Plaintiffs do not allege the identity of these 75 companies, and do not allege when these 75 agreements were reached.

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    According to Plaintiffs, the effect of these agreements was to restrict competition in the

2    labor market and artificially depress compensation.  *Id.* ¶¶ 43, 44, 49.  Plaintiffs allege that the

3    agreements prohibited the parties to the agreements from cold calling or directly soliciting each

4    other's employees.  *Id.* ¶ 44.  Plaintiffs assert that "[c]old calling and direct solicitation serve as

5    essential and effective recruiting methods," because current employees of competitors are "often

6    the most highly qualified," but also "often unresponsive to other recruiting strategies."  *Id.* ¶ 45.

7    Plaintiffs allege that restrictions on cold calling have the effect of "limit[ing] an employee's

8    leverage when negotiating his or her salary with his or her current employer," and, consequently,

9    negatively "impact[s] all salaried employees of participating companies."  *Id.* ¶ 47.  More

10   specifically, Plaintiffs contend that anti-solicitation agreements "alleviate[] pressure to retain good

11   employees by paying higher salaries," and "suppress[] wages because other rivals are not actively

12   soliciting employees through promises of higher salaries and benefits."  *Id.* ¶ 48.

### 4.  Statute of Limitations Allegations

13   The First Amended Complaint adds a new section titled "Statute of Limitations" that puts

14   forward two arguments as to why Plaintiffs' claims were timely filed.  Plaintiffs allege: (1) that

15   Microsoft's conspiracy was a continuing violation of antitrust laws until at least 2013; and (2) that

16   Microsoft fraudulently concealed the conspiracy from Plaintiffs until 2013.  Plaintiffs' specific

17   allegations as to each theory follow.

#### a.  Continuing Violation

18   Plaintiffs allege that "Microsoft's conspiracy was a continuing violation through which

19   Microsoft repeatedly invaded Plaintiffs' and the Plaintiff Class' interests by initiating[,] adhering

20   to, renewing, amending, enforcing, and reaffirming the anticompetitive Secret Agreements."  FAC

21   ¶ 74.  Plaintiffs allege that "Microsoft continued to add companies to its Hands-off List every year

22   beginning as early as 2005, and continued to amend and add companies to the Hands-off List until

23   at least 2013."  *Id.* ¶ 76.  Plaintiffs further allege that some of Microsoft's agreements did not

24   expire until after 2013.  *Id.* ¶ 77.  Plaintiffs allege that they were injured by these ongoing non-

25   solicitation agreements each year they worked for Microsoft because the agreements artificially

United States District Court
Northern District of California

6

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

depressed their compensation.  *Id.* ¶ 78.[2]  Plaintiffs additionally allege that they incurred ongoing

injury from the non-solicitation agreements because Plaintiffs were not able to obtain employment

at the companies with whom Microsoft had anti-solicitation agreements.  *Id.* ¶ 79.

### b.  Fraudulent Concealment

Plaintiffs allege that Microsoft fraudulently concealed the conspiracy and therefore

prevented the Plaintiffs from filing their claims on time.  For purposes of the fraudulent

concealment allegation, Plaintiffs allege the following actions constitute affirmative acts by

Microsoft to keep the non-solicitation agreements secret:

- Microsoft's Human Resources personnel did not mention the non-solicitation agreements when asked about compensation.  *Id.* ¶ 83.

- Microsoft "actively misinformed its employees" by asserting in its "Standards of Business Conduct" that Microsoft obeyed relevant antitrust laws.  *Id.* ¶ 85.

- Microsoft's Form K-10 SEC filings for 2008-2014 stated that Microsoft openly competed for employees.  *Id.* ¶¶ 86-87.

- Microsoft did not "widely disseminate[]" written information about the non-solicitation agreements, and ensured that the Hands-Off List itself was not forwarded.  *Id.* ¶ 88.

- Google's CEO Eric Schmidt labeled emails he sent about Google's non-solicitation agreement with eBay and Microsoft with the words "DO NOT FORWARD."  *Id.* ¶ 89.[3]

- Microsoft obtained agreement from the DOJ that any documents produced by Microsoft during the DOJ investigations would either not be publicly disclosed or would be "heavily redacted so as not to publicly reveal the substance of the Secret Agreements and the specific companies involved."  *Id.* ¶ 90.

---

[2] Plaintiff Ryan worked for Microsoft from April 2007 to September 2012.  FAC ¶ 15.  Plaintiff Rau worked for Microsoft from June 2006 to June 2010.  *Id.* ¶ 17.
[3] The DOJ ultimately filed lawsuits alleging antitrust violations against Google and eBay, but not against Microsoft.  *See* ECF No. 70.

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

### 5. Claims

Plaintiffs' complaint contains four claims for relief under the following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (4) California Business & Professions Code § 16600 *et seq.* Plaintiffs seek damages, pre- and post-judgment interest, attorney's fees and expenses, and injunctive relief. FAC at 38.

## B. Procedural History

In light of the relationship between the instant case and the *High-Tech* case, the Court briefly summarizes the relevant procedural history in *High-Tech* in addition to the instant case.

### 1. *High-Tech* Procedural Background

The *High-Tech* defendants removed the first state-court action on May 23, 2011. No. 11-2509, ECF No. 1. The last state-court action in the *High-Tech* litigation was removed on July 19, 2011. No. 11-2509, ECF No. 41. The *High-Tech* cases were reassigned to the undersigned judge on August 5, 2011. No. 11-2509, ECF No. 60. The *High-Tech* cases were consolidated on September 12, 2011. No. 11-2509, ECF No. 64. The First Consolidated Amended Complaint was filed on September 13, 2011. No. 11-2509, ECF No. 65. On April 18, 2012, the Court granted in part and denied in part the *High-Tech* defendants' joint motion to dismiss and denied Lucasfilm's motion to dismiss. No. 11-2509, ECF No. 119. On April 5, 2013, the Court granted in part and denied in part the *High-Tech* plaintiffs' motion for class certification with leave to amend. No. 11-2509, ECF No. 382. The Court granted the *High-Tech* plaintiffs' supplemental motion for class certification on October 24, 2013. No. 11-2509, ECF No. 531. On November 13, 2013, the *High-Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class certification order. No. 13-80223, ECF No. 1. The Ninth Circuit denied the defendants' petition on January 14, 2014. No. 13-80223, ECF No. 18.

In the interim, three of the *High-Tech* defendants, Intuit, Lucasfilm, and Pixar, reached an early settlement with the plaintiffs. On September 21, 2013, the *High-Tech* plaintiffs filed a

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

motion for preliminary approval of a proposed class action settlement as to defendants Intuit, Lucasfilm, and Pixar.  No. 11-2509, ECF No. 501.  On October 30, 2013, the Court granted preliminary approval.  No. 11-2509, ECF No. 540.  The Court granted final approval as to that settlement on May 16, 2014.  No. 11-2509, ECF No. 915.  The Court entered a final judgment with regards to Lucasfilm, Pixar, and Intuit on June 9, 2014.  No. 11-2509, ECF No. 936.  At the request of Intuit, the Court entered an amended final judgment on June 20, 2014.  No. 11-2509, ECF No. 947.

The remaining *High-Tech* defendants, Adobe, Apple, Google, and Intel, filed individual motions for summary judgment, and joint motions for summary judgment and to strike certain expert testimony on January 9, 2014.  No. 11-2509, ECF Nos. 554 (Intel), 556–57 (joint motions), 560 (Adobe), 561 (Apple), 564 (Google).  The Court denied the *High-Tech* defendants' five individual motions for summary judgment on March 28, 2014.  No. 11-2509, ECF No. 771.  On April 4, 2014, the Court granted in part and denied in part the *High-Tech* defendants' motion to strike, and denied the defendants' joint motion for summary judgment.  No. 11-2509, ECF No. 778.

On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants.  No. 11-2509, ECF No. 920.  On August 8, 2014, the Court denied the *High-Tech* plaintiffs' motion for preliminary approval and concluded that the proposed settlement of $324.5 million did not fall "within the range of reasonableness."  No. 11-2509, ECF No. 974, at 30.  On September 4, 2014, the *High-Tech* defendants filed a petition for a writ of mandamus with the Ninth Circuit.  No. 14-72745, ECF No. 1.  On September 22, 2014, the Ninth Circuit found that the petition "raises issues that warrant a response," and ordered briefing.  No. 14-72745, ECF No. 2.  On January 13, 2015, the *High-Tech* defendants filed correspondence with the Ninth Circuit referring to a new proposed settlement agreement.  No. 14-72745, ECF No. 21.  On January 30, 2015, the defendants filed an unopposed motion to dismiss the petition, which the Ninth Circuit granted on February 2, 2015. No. 14-72745, ECF Nos. 23, 24.

On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    class action settlement as to the remaining defendants.  No. 11-2509, ECF No. 1032.  In this

2    second proposed class action settlement, the parties had reached a settlement amount exceeding

3    the previously rejected settlement by approximately $90.5 million dollars.  *Id.* at 1.  Following a

4    fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015

5    settlement agreement on March 3, 2015.  No. 11-2509, ECF Nos. 1051, 1054.  A final approval

6    hearing was held on July 9, 2015.  Plaintiffs' counsel completed filing supplemental briefing on

7    attorney's fees on July 24, 2015.  No. 11-2509, ECF No. 1108.  The Court granted final approval

8    on September 2, 2015.  No. 11-2509, ECF No. 1111.  The Court entered final judgment with

9    regard to Adobe, Apple, Google, and Intel on September 2, 2015.  No. 11-2509, ECF No. 1113.

10              **2.   Procedural Background in the Instant Action**

11          Plaintiffs filed their complaint on October 16, 2014.  ECF No. 1.  The Court related this

12   action to *In re High-Tech Employees Litigation*, No. 11-CV-2509-LHK, on November 19, 2014.

13   ECF No. 24.  Defendant Microsoft filed motions to transfer venue and to dismiss on December 15,

14   2014.  ECF Nos. 26, 31.  Plaintiffs filed oppositions to Microsoft's motions on January 15, 2015.

15   ECF Nos. 37, 38.  Microsoft filed replies on January 28, 2015. ECF Nos. 40, 41.  On April 10,

16   2015, the Court denied Microsoft's motion to transfer venue and granted Microsoft's motion to

17   dismiss with leave to amend.  ECF No. 53.

18          Plaintiffs filed their First Amended Complaint on May 22, 2015.  ECF No. 61.  On June

19   17, 2015, Microsoft filed the instant motion to dismiss.  ECF No. 67.  Plaintiffs filed an opposition

20   to Microsoft's motion on July 15, 2015.  ECF No. 70.  Microsoft filed a reply on July 29, 2015.

21   ECF No. 71.

22   **II.      LEGAL STANDARD**

23           **A.  Rule 12(b)(6)**

24          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint

25   for failure to state a claim upon which relief can be granted.  Such a motion tests the legal

26   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

27   whether the complaint is sufficient, the Court must accept as true all of the factual allegations

28

United States District Court
Northern District of California

10

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the Court need

2   not accept as true "allegations that contradict matters properly subject to judicial notice or by

3   exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or

4   unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

5   (citation omitted).  While a complaint need not allege detailed factual allegations, it "must contain

6   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

7   *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

8   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

9   reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility

10  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

11  a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal citation omitted).

12      **B.  Rule 9(b)**

13      Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

14  Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with

15  particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor

16  Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule 9(b), the

17  allegations must be "specific enough to give defendants notice of the particular misconduct which

18  is alleged to constitute the fraud charged so that they can defend against the charge and not just

19  deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

20  1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific

21  content of the false representations as well as the identities of the parties to the

22  misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

23  (citation omitted).  "A plaintiff must set forth what is false or misleading about a statement, and

24  why it is false."  *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc),

25  *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir.

26  2011).  However, "intent, knowledge, and other conditions of a person's mind" need not be stated

27  with particularity, and "may be alleged generally."  Fed. R. Civ. P. 9(b).

28

11

United States District Court
Northern District of California

### C.  Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Microsoft moves to dismiss Plaintiffs' First Amended Complaint on the grounds that: (1) Plaintiffs' claims are barred under the applicable statutes of limitations; (2) Plaintiffs fail to plead an antitrust injury under the Sherman Act or the Cartwright Act; (3) Plaintiffs' allegations lack a sufficient connection to California to support the California law claims; and (4) Plaintiffs lack standing to pursue their California law claims.  The Court previously concluded that under the default accrual rules, Plaintiffs' federal and state law claims accrued when Microsoft allegedly injured Plaintiffs by entering into a non-solicitation conspiracy.  *Ryan v. Microsoft*, No. 14-CV-4634, 2015 WL 1738352, at *12, 16 (N.D. Cal. April 10, 2015).  Applying these default accrual rules, the Court found that Plaintiffs' federal and state claims, as alleged in the original complaint, accrued in 2007.  *Id.*  The Court concluded Plaintiffs' claims are time barred under the relevant statutes of limitations unless Plaintiffs adequately allege either an applicable exception to the default accrual rules or a tolling doctrine.  *Ryan*, 2015 WL 1738352, at *17.

In the First Amended Complaint, Plaintiffs have abandoned their allegation from the original complaint that Microsoft entered a non-solicitation conspiracy in 2007.  Instead, the First Amended Complaint alleges for the first time that Microsoft entered a series of individual non-

solicitation agreements with various companies beginning in 2005.  The Court therefore begins by discussing the statute of limitations and default accrual rules for Plaintiffs' new allegations.  The Court then addresses whether a tolling doctrine applies.  Finally, the Court addresses whether Plaintiffs have adequately pled an applicable federal or state law exception to the default accrual rules.  As the Court finds that Plaintiffs' claims are barred by the statutes of limitations, the Court need not address Microsoft's remaining arguments.

### A.  The Applicable Statues of Limitations

The Court previously found that Plaintiffs' claims under the Sherman Act, Cartwright Act, and UCL are all subject to a four year statute of limitations.  *Ryan v. Microsoft*, No. 14-CV-4634, 2015 WL 1738352, at *10; *see* 15 U.S.C. § 15b (Sherman Act); Cal. Bus. & Prof. Code § 16750.1 (Cartwright Act); Cal. Bus. & Prof. Code § 17208 (UCL).  Because Plaintiffs filed their original complaint on October 16, 2014, *see* ECF No. 1, Plaintiffs must allege either that their causes of action accrued after October 16, 2010, or that the statutes of limitations were tolled until at least October 16, 2010.

### B.  Accrual of Plaintiffs' Claims under the Default Accrual Rules

The Court begins by addressing when Plaintiffs' claims as alleged in the First Amended Complaint accrued under the applicable default accrual rules.

Plaintiffs' Sherman Act claim began to accrue at the time Microsoft allegedly injured Plaintiffs.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("Generally, [an antitrust cause] of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. . . .").  As the Ninth Circuit explained in *Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 274–75 (9th Cir. 1988), "[i]n [antitrust] actions governed by 15 U.S.C. § 15b, the plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs."

Here, Plaintiffs' First Amended Complaint alleges that Microsoft entered into specific anti-solicitation agreements with various technology companies.  The first of these alleged agreements was entered into in 2005.  *See* FAC ¶¶ 29-32.  Accordingly, the earliest the Plaintiffs' Sherman

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    Act claim could have accrued was 2006, when Plaintiff Rau began working for Microsoft and

2    allegedly was injured by Microsoft's antitrust agreements. *See id.* ¶ 17.[4]  If each subsequent anti-

3    solicitation agreement entered into by Microsoft constituted a new antitrust violation, then

4    Plaintiffs' Sherman Act claim could have accrued as late as 2009, the last year in which Plaintiffs

5    allege that a specific new antitrust agreement was entered into by Microsoft. *See id.*  However, in

6    order for Plaintiffs' Sherman Act claim to be timely, it would have had to accrue after October 16,

7    2010.  Even assuming that the Sherman Act claim accrued in 2009, and not 2006, the statute of

8    limitations expired in 2013—a year before Plaintiffs filed their original complaint in 2014—unless

9    Plaintiffs can show that an exception to the accrual rule or a tolling doctrine applies.

10       Plaintiffs First Amended Complaint also contains causes of action under three California

11   statutes: (1) California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; (2) California's Unfair

12   Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (3) California Business

13   & Professions Code § 16600 *et seq.*  As a general rule, under California law the default accrual

14   rule is the "last element rule," where a claim accrues "'when [it] is complete with all of its

15   elements'—those elements being wrongdoing, harm, and causation." *Pooshs v. Philip Morris*

16   *USA, Inc.*, 51 Cal. 4th 788, 797 (2011) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397

17   (1999)).  The Court previously concluded that the "last element rule" applied to Plaintiffs'

18   California claims. *See Ryan*, 2015 WL 1738352, at *16.  Under the "last element rule," Plaintiffs'

19   claims accrued no later than 2009, and the statutes of limitations expired in 2013, a year before

20   Plaintiffs filed their original complaint.  Thus, Plaintiffs' California law claims, like Plaintiffs'

21   Sherman Act claim, are time barred unless an exception to the default accrual rule or a tolling

22   doctrine applies.

23       Because none of Plaintiffs' federal or state law claims are timely under the applicable

24   default accrual rules, the Court turns to whether an exception to the default accrual rules or a

25   tolling doctrine applies.  Plaintiffs argue: (1) that they are entitled to statutory tolling under 15

26

27   ───────────────────────
     [4] Plaintiff Ryan began working for Microsoft in 2007.  FAC ¶ 17.

28
                                                        14
     Case No. 14-CV-04634-LHK
     ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

U.S.C. § 16(i), (2) that the "continuing violations" doctrine under federal law should apply, (3) that the fraudulent concealment doctrine under federal law should apply, (4) that the California "discovery rule" for accrual should apply to their UCL claim, and (5) that the California "continuous accrual" rule should apply to all of their California law claims.  The Court addresses each argument in turn.

### C.  Statutory Tolling

In opposition to Microsoft's motion to dismiss, Plaintiffs argue that the statutes of limitations were statutorily tolled by 15 U.S.C. § 16(i).  Section 16(i) provides:

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

15 U.S.C. § 16(i) (emphasis in original).

To receive tolling under section 16(i), "[t]he plaintiff bears the burden of showing that the two suits are based in whole or in part on the same matter."  *Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985).  To determine whether a private suit is "based in whole or in part on any matter complained of" in a prior government action, the Court is "limited to a comparison of the two complaints on their face."  *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983).  There must be a "real relation" between the government and private causes of action.  *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965).  "The real relation test is met where the conspiratorial acts of the defendants are intertwined with and fundamentally the same" as those alleged in the three government-filed lawsuits.  *Charley's Tour*, 618 F. Supp. at 86.  Factors the Court considers to assess the existence of a "real relation" between the two suits include whether "there is substantial identity of parties" between the two

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   suits, *Leh*, 382 U.S. at 63; whether the private suit alleges "a conspiracy that included the

2   objectives, means, time span, and geographic scope of the conspiracy alleged in the government

3   suit;" and whether "evidence adduced in the trial of the government suit would be of practical

4   assistance to plaintiffs in proving their own complaint," *Chipanno*, 702 F.2d at 832.

5       Plaintiffs first argue that the DOJ investigation into Microsoft is entitled to statutory tolling

6   under 15 U.S.C. § 16(i).  The DOJ opened an investigation into possible antitrust violations by

7   Microsoft in 2009.  *See* ECF No. 70-1, Ex. A.  The DOJ informed Microsoft that the DOJ would

8   not pursue a case against Microsoft on October 29, 2014, nearly two weeks after Plaintiffs filed

9   the instant action.  *Id.*

10      In support of their argument that the investigation is entitled to statutory tolling, Plaintiffs

11  cite only to *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 1978).  *See* ECF No. 70

12  at 6.  In *Dungan*, the Ninth Circuit discussed how to assess the date on which statutory tolling

13  should begin by stating that "[t]he initiation of an investigation or a decision to prosecute more

14  comfortably fits the statutory language than does empaneling the grand jury."  570 F.2d at 871.

15  However, the Ninth Circuit went on to say that to select either the date of the initiation of an

16  investigation or the date on which a decision to prosecute was made for the start of tolling "would

17  introduce great uncertainty in fixing the time at which the suspension period commences" and

18  "would frustrate the statute-of-repose purpose of section 16(i)."  *Id.*  The Ninth Circuit therefore

19  *declined* to select the date of the initiation of an investigation as the time for the start of statutory

20  tolling.  *Id.*  Instead, courts use the date on which the government filed a complaint as the date on

21  which statutory tolling began.  *See Leh*, 382 U.S. at 55-63 (giving tolling effect from the time the

22  government filed a complaint); *Chipanno*, 702 F.2d at 832-33 (giving tolling effect from the time

23  the government filed a complaint); *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 693

24  (9th Cir. 1982) (evaluating tolling during the pendency of a government-filed lawsuit); *Charley's

25  Tour*, 618 F. Supp. at 86 (evaluating tolling from the time the government filed its actions); *In re

26  Scrap Metal Antitrust Litigation*, 2006 WL 2850453 (rejecting the argument that tolling begins at

27  the time of the investigation and holding that tolling begins when the government filed a lawsuit).

28

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  In 2014, the DOJ "closed its investigation of [Microsoft] relating to potential agreements among

2  certain firms regarding employee recruiting" without filing a complaint against Microsoft.  ECF

3  No. 70-2.  Because the DOJ never filed a complaint against Microsoft, Plaintiffs are not entitled to

4  any tolling based on the DOJ's investigation of Microsoft.

5       Plaintiffs additionally argue that they are entitled to statutory tolling during the pendency

6  of three government-filed lawsuits related to the *High-Tech* cases: *United States v. Adobe Sys.,*

7  *Inc.*, No. 10-cv-1629 (D.D.C.); *United States v. Lucasfilm, Inc.*, No. 10-cv-2220 (D.D.C.); and

8  *United States v. eBay, Inc.*, No. 12-cv-5869 (N.D. Cal.).  To receive statutory tolling for the

9  pendency of these lawsuits, Plaintiffs must show that these lawsuits are "based in whole or in part

10 on the same matter" as the instant lawsuit.  *Charley's Tour*, 618 F. Supp. at 86.[5]  First, the Court

11 notes that there is no overlap between the parties in the government-filed lawsuits and the instant

12 lawsuit.  The defendants in *United States v. Adobe* were Adobe Systems, Apple, Google, Intel,

13 Intuit, and Pixar.  ECF No. 70-1, Ex. B.  The sole defendant in *United States v. Lucasfilm* was

14 Lucasfilm, and the sole defendant in *United States v. eBay* was eBay.  *Id.* Exs. C, F.  Microsoft

15 was not a defendant in any of the three government-filed lawsuits.

16      Moreover, none of the complaints in the three government-filed lawsuits mentions any

17 actions taken by Microsoft or any agreement entered into with Microsoft.  *Id.* Exs. B, C, F.

18 Although the government complaints relate to non-solicitation agreements by technology

19 companies in the early 2000s, they do not relate to any non-solicitation agreements with

20 Microsoft.  The *Adobe* complaint alleges the existence of five agreements not to cold call each

21

_____

22 [5] Microsoft argues that only *United States v. eBay* could provide sufficient tolling to render
Plaintiffs' claims timely because both *United States v. Adobe* and *United States v. Lucasfilm*

23 concluded more than a year prior to October 16, 2014.  *See* ECF No. 71, at 1-2.  Section 16(i)
provides that the statute of limitations for Sherman Act claims brought by private individuals

24 expires no later than one year after the termination of a related government proceeding or within
four years after the cause of action accrued.  *See Aurora Enters.*, 688 F.2d at 693 (holding that a

25 DOJ action that settled more than a year before the filing of the plaintiff's Sherman Act claim did
not toll the statute of limitations).  However, section 16(i) does not place the same limit on state

26 law claims, so section 16(i) may toll the statute of limitations longer for state law claims.  *See* 15
U.S.C. § 16(i)  Because Plaintiffs' arguments for tolling based on each of the three government-

27 filed lawsuits all fail, the Court need not reach whether Plaintiffs' state law claims could be tolled
for longer than Plaintiffs' Sherman Act claim.

28

17

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1   other's employees, each between two companies.  ECF No. 70-1 Ex. B ¶ 15.  These agreements

2   were between: (1) Apple and Google, (2) Apple and Adobe, (3) Apple and Pixar, (4) Google and

3   Intel, and (5) Google and Intuit.  *Id.*  Microsoft was not a party to any of these agreements, and

4   none of the alleged agreements restricted any of the named companies from hiring employees

5   from Microsoft.  *Id.*

6   　　　　Similarly, the *Lucasfilm* complaint alleged a conspiracy between Lucasfilm and Pixar not

7   to compete for each other's employees.  ECF No. 70-1, Ex. C ¶ 16.  The *Lucasfilm* complaint does

8   not mention any other technology companies.  *See id.*

9   　　　　Likewise, the *eBay* complaint alleges a conspiracy between eBay and Intuit in which the

10   two companies agreed to restrict their ability to recruit each other's employees.  ECF No. 70-1,

11   Ex. F ¶ 14.  No other technology companies are mentioned in the *eBay* complaint.  *See id.*

12   　　　　Because the conspiracies alleged in the *Adobe*, *Lucasfilm*, and *eBay* complaints do not

13   involve Microsoft, Plaintiffs' allegations of misconduct by Microsoft in the instant lawsuit are not

14   "intertwined with and fundamentally the same as those alleged in the government action[s]."

15   *Charley's Tour*, 618 F. Supp. at 86.  As a result of the disparity between the government-filed

16   lawsuits and Plaintiffs' lawsuit, Plaintiffs cannot show that "evidence adduced in the trial of the

17   government suit would be of practical assistance to plaintiffs in proving their own complaint."

18   *Chipanno*, 702 F.2d at 832.  Consequently, Plaintiffs have not met their burden of showing a "real

19   relation" between the government-filed lawsuits and the instant lawsuit.  *Leh*, 382 U.S. at 59.

20   Thus, Plaintiffs are not entitled to statutory tolling.

21   　　　　**D.  Continuing Violation**

22   　　　　Plaintiffs next argue that the First Amended Complaint alleges "continuing violations" by

23   Microsoft beyond October 16, 2010, thus meriting the application of the federal "continuing

24   violation" doctrine to render Plaintiffs' Sherman Act claim timely.

25   　　　　Under the "continuing violation" doctrine, "each overt act that is part of the [antitrust]

26   violation and that injures the plaintiff . . . starts the statutory period running again, regardless of

27   the plaintiff's knowledge of the alleged illegality at much earlier times."  *Klehr v. A.O Smith*

28   

18

1    *Corp.*, 521 U.S. 179, 189 (1997) (quotations omitted); *Pace Indus. v. Three Phoenix Co.*, 813 F.2d

2    234, 237 (9th Cir. 1987) ("A continuing violation is one in which the plaintiff's interests are

3    repeatedly invaded and a cause of action arises each time the plaintiff is injured.").   In the Ninth

4    Circuit, an overt act restarts the statute of limitations if it: (1) is "a new and independent act that is

5    not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating injury on

6    the plaintiff."  *Pace*, 813 F.2d at 237; *see also Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d

7    1199, 1202–03 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1157 (2015).

8            Plaintiffs' First Amended Complaint alleges that Microsoft engaged in continuing

9    violations beyond October 2010 by entering into new non-solicitation agreements and maintaining

10   existing non-solicitation agreements until at least 2013.  FAC ¶¶ 74-77.  Although the Court

11   accepts "factual allegations in the complaint as true," *Manzarek v. St. Paul Fire & Marine Ins.*

12   *Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), the Court need not accept as true "allegations that are

13   merely conclusory," *Gilead Scis.*, 536 F.3d at 1055.  In dismissing Plaintiffs' original complaint,

14   the Court noted that the complaint was "bereft of *any* dates or details with regards to Microsoft's

15   specific conduct." *Ryan*, 2015 WL 1738352, at *13.  Specifically, Plaintiffs failed to allege "any

16   new or independent actions taken by the Defendants after October 16, 2010." *Id.*  Accordingly,

17   the Court concluded that Plaintiffs had not pled a continuing violation. *Id.*  The Court warned

18   Plaintiff that failure to cure the timeliness deficiencies in an amended complaint would lead to

19   dismissal with prejudice. *Id.* at *17.

20           Plaintiffs' First Amended Complaint states the years in which Microsoft allegedly entered

21   into anti-solicitation agreements before 2009, but the First Amended Complaint still does not

22   include any dates or details as to Microsoft's specific conduct from 2010 onward.  In spite of the

23   Court's warning that the Plaintiffs need to allege details regarding "new or independent actions

24   taken by the Defendants after October 16, 2010" in order plead a continuing violation, *Ryan*, 2015

25   WL 1738352, at *13, the First Amended Complaint does not provide any specific information

26   regarding any new agreement entered into by Microsoft after 2009. *See* FAC.  Furthermore, prior

27   to filing the First Amended Complaint, Plaintiffs had the benefit of the documents from the DOJ's

28
Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    2009-2014 investigation of possible antitrust violations by Microsoft.  *See* ECF No. 70-1, Ex. A.

2    Despite years of discovery by the DOJ, Plaintiffs have not identified a single anti-solicitation

3    agreement allegedly entered into by Microsoft after 2009.

4            Instead, Plaintiffs argue that the Court should find a continuing violation after 2009 based

5    on: (1) Microsoft's maintenance and renewal of agreements entered into before 2009, and (2) the

6    fact that Plaintiffs were not invited to interview with the companies with whom Microsoft

7    allegedly entered into anti-solicitation agreements prior to 2009.  ECF No. 70 at 9.  The First

8    Amended Complaint additionally states that Microsoft "continued to amend and add companies to

9    the Hands-off List until at least 2013."  FAC ¶ 76.  However, Plaintiffs in their opposition to

10   Microsoft's motion to dismiss have abandoned the argument that Microsoft entered into new non-

11   solicitation agreements after 2009 and that such entry into the new agreements constitutes overt

12   acts under the continuing violation doctrine.  *See* ECF No. 70 at 9.  Moreover, Plaintiffs'

13   allegation that Microsoft "continued to add companies to its Hands-off List every year beginning

14   as early as 2005, and continued to amend and add companies to the Hands-off List until at least

15   2013" is merely conclusory and insufficient to plead a continuing violation based on new

16   agreements after 2009.  *See Gilead Scis.*, 536 F.3d at 1055.  The Court therefore turns first to

17   Microsoft's alleged maintenance and renewal of agreements and then to the fact that Plaintiffs

18   were not interviewed by other companies.

19           Plaintiffs' allegations that Microsoft had non-solicitation agreements that Microsoft

20   maintained and renewed past October 2010 are insufficient to qualify for the continuing violation

21   doctrine.  To satisfy the continuing violation doctrine, Plaintiffs must allege an overt act:

22           A continuing violation is one in which the plaintiff's interests are repeatedly
             invaded and a cause of action arises each time the plaintiff is injured. However,
23           even when a plaintiff alleges a continuing violation, an overt act by the defendant is
             required to restart the statute of limitations and the statute runs from the last overt
24           act.

25   *Pace*, 813 F.2d at 237.  Accordingly, where the defendant entered into an allegedly unlawful

26   contract prior to the limitations period, the defendant still must take an unlawful "new and

27   independent act that is not merely a reaffirmation of a previous act" during the limitations period.

28
     Case No. 14-CV-04634-LHK
     ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

See *Pace*, 813 F.2d at 237; *see Samsung*, 747 F.3d at 1204 (expanding a license agreement in 2006 to include products not covered by the previous 2003 license agreement was an overt act because the "2003 license did not contemplate future expansion"); *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444-45 (9th Cir. 1996), *cert. denied*, 523 U.S. 1112 (1998) (refusal, based on a prior agreement, to wheel electricity to the plaintiff qualified as an overt act because the previous agreement "was not a permanent and final decision that controlled the later act"); *Hennegan v. Pacifico Creative Servs., Inc.*, 787 F.2d 1299, 1300-01 (9th Cir. 1986), *cert. denied*, 479 U.S. 886 (1986) (holding that payments by souvenir vendors to tour operators and the tour operators steering tourists away from the plaintiffs' shop qualified as overt acts). Merely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act. *See In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71-72 (9th Cir. 1979) (holding that the defendants' refusal during the limitations period to purchase afterburner devices from a particular company did not constitute an overt act to restart the limitations period because the defendants' refusal was based on an agreement entered into prior to the limitations period). Here, Plaintiffs allege only that Microsoft maintained and reaffirmed its preexisting non-solicitation agreements after 2009. *See* FAC ¶¶ 75-77. Plaintiffs do not allege that Microsoft took any new and independent act after 2009, beyond maintaining and reaffirming the existing agreements. Maintaining and reaffirming prior agreements do not suffice to show an overt act. *Pace*, 813 F.2d at 237 (the continuing violation doctrine requires Plaintiffs to allege "a new and independent act that is not merely a reaffirmation of a previous act"). Thus, the maintenance and renewal of the preexisting non-solicitation agreements does not qualify as an overt act. *See id.*

Finally, Plaintiffs argue that the fact that they were not recruited, interviewed or hired by Microsoft's alleged co-conspirators after 2010 constitutes a continuing violation. *See* ECF No. 70 at 9. However, other companies' inaction by not interviewing or hiring Plaintiffs is not "an overt act" by Microsoft, as required to show a continuing violation. *See Pace*, 813 F.2d at 237 ("[A]n overt act *by the defendant* is required to restart the statute of limitations." (emphasis added)).

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    Therefore, Plaintiffs have not alleged a continuing violation that would restart the statute

2    of limitations.

3        **E.  Fraudulent Concealment**

4        The Court next turns to Plaintiffs' argument that their complaint is timely because

5    Microsoft fraudulently concealed the alleged conspiracy until at least May 17, 2013.

6        The purpose of the fraudulent concealment doctrine is to prevent a defendant from

7    "concealing a fraud . . . until such a time as the party committing the fraud could plead the statute

8    of limitations to protect it." *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874).  Thus, "[a]

9    statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause

10   of action in such a way that the plaintiff, acting as a reasonable person, did not know of its

11   existence." *Hexcel Corp. v. Ienos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  The

12   plaintiff bears the burden of pleading and proving fraudulent concealment.  *Id.*; *see also Conmar*

13   *Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).

14       To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took

15   affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive

16   knowledge of the facts giving rise to its claim"; and (3) the plaintiff acted diligently in trying to

17   uncover the facts giving rise to its claim.  *Hexcel*, 681 F.3d at 1060; *see also Conmar*, 858 F.2d at

18   502; *Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988).

19       Moreover, allegations of fraudulent concealment must be pled with particularity.  *Conmar*,

20   858 F.2d at 502.  Although "it is generally inappropriate to resolve the fact-intensive allegations of

21   fraudulent concealment at the motion to dismiss stage," *In re Rubber Chemicals Antitrust Litig.*,

22   504 F. Supp. 2d 777, 789 (N.D. Cal. 2007), Plaintiffs nevertheless must allege specific factual

23   allegations of fraudulent concealment to survive a motion to dismiss.  *In re Transpacific*

24   *Passenger Air Transp. Antitrust Litigation*, No. C 07-5634 CRB, 2011 WL 1753738, at *20-21

25   (N.D. Cal. May 9, 2011).  "Conclusory statements are not enough." *Conmar*, 858 F.2d at 502.

26       The Court first addresses whether Plaintiffs have alleged the first element of fraudulent

27   concealment, whether Microsoft took affirmative acts to mislead Plaintiffs.  Because the Court

28

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

concludes that Plaintiffs have not met their burden to plead affirmative acts to mislead, the Court need not address the remaining elements of the fraudulent concealment analysis.

To satisfy the first element of fraudulent concealment, "[a] plaintiff alleging fraudulent concealment must establish that its failure to have notice of its claim was the result of affirmative conduct by the defendant." *Conmar*, 858 F.2d at 505. "Passive concealment of information is not enough to toll the statute of limitations unless the defendant had a fiduciary duty to disclose information to the plaintiff." *Id.* An affirmative act of denial constitutes an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable." *Id.* Thus, the mere "failure to own up to illegal conduct" in response to an inquiry about whether the defendant engaged in illegal antitrust activity is not sufficient for fraudulent concealment, and to find otherwise "would effectively nullify the statute of limitations in these cases." *Pocahontas Supreme Coal. Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987); *see also Conmar*, 858 F.2d at 505 (citing favorably *Pocahontas*, 828 F.2d at 218).

In its prior order granting Microsoft's motion to dismiss Plaintiffs' original complaint, the Court held that Microsoft had no obligation to affirmatively disclose its alleged illicit conduct, and thus that Plaintiffs were required to plead affirmative acts to mislead. *Ryan*, 2015 WL 1738352, at *14. The Court then addressed Plaintiffs' allegations that Microsoft "provided pretextual, incomplete, or materially false and misleading explanations." *Id.* at *15. The Court found that Plaintiffs had not alleged "when, where, or to whom Microsoft allegedly provided these false and misleading explanations, or the content of these allegedly misleading explanations." *Id.* As a result, the Court held that Plaintiffs' allegations did not satisfy Rule 9(b)'s heightened pleading standard, as required for allegations of fraudulent concealment. *Id.* Therefore, the Court concluded that Plaintiffs had failed to adequately allege fraudulent concealment. *Id.* The Court warned Plaintiffs that failure to cure the deficiencies in the complaint would lead to dismissal with prejudice. *Id.* at *17.

Plaintiffs do not challenge this Court's previous finding that Microsoft had no obligation to affirmatively disclose its alleged illicit conduct. *See* ECF No. 70 at 10-11. Instead, Plaintiffs

United States District Court
Northern District of California

argue that they have met their burden to plead affirmative conduct by alleging: (1) "misleading oral and written statements issued by Microsoft both before and during the limitations period, including false statements in annual reports" (2) "efforts by Microsoft to limit access to and circulation of documents reflecting its secret agreements," and (3) "attempts by Microsoft in the DOJ proceedings and follow-on private litigation to conceal portions of key documents from public scrutiny." ECF No. 70 at 11. Microsoft counters that: (1) Plaintiffs' allegations are insufficient under Rule 9(b); (2) Microsoft's alleged efforts at secrecy did not amount to active concealment, and (3) Plaintiffs have failed to allege that they reasonably relied upon Microsoft's allegedly misleading statements. ECF Nos. 67 at 10; 71 at 6-8. The Court addresses each of Microsoft's arguments in turn.

### 1. Rule 9(b)

The Court finds that Plaintiffs' allegations of two categories of affirmative acts of misconduct again fail to meet the heightened pleading standard of Rule 9(b). To satisfy Rule 9(b), Plaintiffs must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). First, Plaintiffs fail to sufficiently allege misleading conversations between Microsoft personnel and Plaintiffs. Second, Plaintiffs fail to sufficiently allege affirmative acts of concealment during the DOJ proceedings.

### a. Allegedly misleading conversations

Plaintiffs' First Amended Complaint alleges that Plaintiffs' conversations with Microsoft employees constitute affirmative acts of fraudulent concealment. Specifically, Plaintiffs allege that when asked by Plaintiffs about Microsoft's compensation, Plaintiffs' unnamed supervisors and other "Human Resources personnel" failed to disclose the non-solicitation agreements. FAC ¶ 83. Plaintiffs allege that instead "Microsoft's Human Resources and senior management responded by misleading Plaintiffs, telling them that their compensation and the compensation of all Microsoft employees was 'competitive,' that it was based on compensation levels commensurate with Microsoft's competitors." *Id.* Plaintiffs allege that Plaintiff Ryan's and

24

United States District Court
Northern District of California

1    Plaintiff Rau's conversations about compensation with Microsoft employees took place "in 2011

2    and 2012" and "in approximately 2008," respectively.  *Id.*  The First Amended Complaint

3    provides no further information about the names of the individuals at Microsoft who spoke to

4    Plaintiffs, where these conversations allegedly took place, the date and time of the alleged

5    conversations, whether the conversations occurred in person or over email, or what exactly

6    Plaintiffs were told.

7        In order to satisfy the pleading requirements of Rule 9(b), Plaintiffs must identify the

8    "time, place, and specific content of the false representations as well as the identities of the parties

9    to the misrepresentations."  *Swartz*, 476 F.3d at 764 (quoting *Edwards v. Marin Park, Inc.*, 356

10   F.3d 1058, 1066 (9th Cir. 2004)).  "The complaint must specify such facts as the times, dates,

11   places, benefits received, and other details of the alleged fraudulent activity."  *Neubronner v.*

12   *Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  "To comply with Rule 9(b), allegations of fraud must be

13   specific enough to give defendants notice of the particular misconduct which is alleged to

14   constitute the fraud charged so that they can defend against the charge and not just deny that they

15   have done anything wrong."  *Swartz*, 476 F.3d at 764 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014,

16   1019 (9th Cir. 2001)).

17       In this case, Plaintiffs allegations lack sufficient specificity to give Microsoft notice of the

18   particular misconduct alleged to have been fraudulent.  For example, the First Amended

19   Complaint does not specify the identity of the parties who allegedly made false representations to

20   Plaintiffs beyond the broad descriptors of "Human Resources and senior management."  *See* FAC

21   ¶ 83.  Plaintiff additionally does not specify the time, date, or place of the allegedly misleading

22   conversations.  *See Neubronner*, 6 F.3d at 672 ("The complaint must specify such facts as the

23   times, dates, places, benefits received, and other details of the alleged fraudulent activity.").

24   Without more specific information as to who spoke to Plaintiffs when, Plaintiffs have not given

25   Microsoft sufficient notice of what conversations Plaintiffs allege were fraudulent.  As such,

26   Microsoft is hindered in its ability to adequately defend against the accusation through the

27   testimony of the Microsoft employees involved.  *See Swartz*, 476 F.3d at 764 ("To comply with

28

25

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular

2    misconduct which is alleged to constitute the fraud charged so that they can defend against the

3    charge."); *see also Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011)

4    ("Plaintiffs, for instance, did not plead with the requisite particularity the name of the AmNet

5    employee who concealed material facts . . . .  As such, Plaintiffs have failed to sufficiently allege

6    the circumstances constituting the alleged fraudulent concealment.").  Moreover, the First

7    Amended Complaint does not include the specific content of the alleged conversations, such that

8    Microsoft cannot evaluate what its employees allegedly told Plaintiffs nor whether those alleged

9    statements were false or misleading.  *See id.*  Thus, Plaintiffs' allegations regarding allegedly

10   misleading conversations do not satisfy Rule 9(b).  *Id.*

11         The lack of detail provided in the First Amended Complaint stands in stark contrast to the

12   allegations that did satisfy Rule 9(b) in *In re Animation Workers Antitrust Litig. ("Animation*

13   *Workers II")*, --- F. Supp. 3d ---, No. 14-CV-4062, 2015 WL 4974343, at *9 (N.D. Cal. Aug. 20,

14   2015).  The *Animation Workers II* plaintiffs alleged that the defendants' human resources

15   departments were exchanging detailed information regarding employees' compensation levels.  *Id.*

16   at *6.  The *Animation Workers II* plaintiffs further provided specific allegations of the "who, what,

17   where, when, and how" of the misleading conversations the human resources departments then

18   had with defendants, such as that "on August 24, 2009, ILM recruiter Lori Beck emailed Class

19   member Frankie Rodriguez that the ILM offer was 'based upon a comparable rate to . . . ILM

20   individuals,' without disclosing that it was based in large part on comparisons exchanged with

21   competing studios."  *Animation Workers II*, No. 14-CV-4062-LHK, Second Consolidated

22   Amended Class Action Compl., ECF No. 121, ¶ 150.  By contrast, Plaintiffs' allegations in the

23   instant case do not provide the specific dates or even the months in which the alleged

24   conversations occurred, do not identify the parties to the conversations, do not identify the method

25   of communication used, and do not identify the specific content of any alleged conversation.

26   Because Plaintiffs' allegations do not include "an account of the time, place, and specific content

27   of the false representations as well as the identities of the parties to the misrepresentations,"

28

26

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    Plaintiffs have not met the heightened pleading standard of Rule 9(b) as to their alleged

2    conversations with Microsoft employees.  *See Swartz*, 476 F.3d at 764.

3              **b.   Concealment during DOJ proceedings**

4          The Court similarly finds insufficient under Rule 9(b) Plaintiffs' argument that Microsoft's

5    conduct during the DOJ investigation was an affirmative act of fraudulent concealment.  ECF No.

6    70 at 11.  Plaintiffs allege that "Microsoft refused to produce any documents without first securing

7    agreements that the document production would not be publicly filed or disclosed, including

8    requiring that any documents that were publicly filed or disclose[d] would be heavily redacted so

9    as not to publicly reveal the substance of the Secret Agreements and the specific companies

10   involved."  FAC ¶ 90.  Plaintiffs do not cite, and the Court is not aware of, any case holding that

11   agreements with the DOJ to redact the public versions of documents properly produced during a

12   government investigation are acts of fraudulent concealment.  Furthermore, under Rule 9(b), "[a]

13   plaintiff must set forth what is false or misleading about a statement, and why it is false."

14   *GlenFed*, 42 F.3d at 1548.  Plaintiffs here have not alleged that Microsoft's redactions were in any

15   way false, misleading, or beyond the scope of Microsoft's agreement with the DOJ to produce

16   documents under seal. Thus, Plaintiffs' allegation that Microsoft misled Plaintiffs during the DOJ

17   investigation does not satisfy the pleading requirements of Rule 9(b).  *See id.*

18           **2.   Alleged Efforts at Secrecy**

19         Plaintiffs additionally argue that Microsoft's efforts "to limit access to and circulation of

20   documents reflecting its secret agreements" qualify as an affirmative act of fraudulent

21   concealment.  ECF No. 70 at 11.  Microsoft argues that these allegations amount to no more than

22   passive concealment, at most.  ECF No. 71 at 6.

23         Although Plaintiffs do not cite which allegations in the First Amended Complaint show

24   Microsoft's efforts to limit access to and circulation of documents reflecting the alleged antitrust

25   violations, the Court presumes Plaintiffs refer to their allegation that "Microsoft took active

26   measures to keep the Secret Agreements secret by, among other things, ensuring that any written

27   memorialization of the Secret Agreements was not widely disseminated or disclosed to any

28   Case No. 14-CV-04634-LHK
     ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

employees other than a limited group of Microsoft's senior officers." FAC ¶ 88.  This allegation proceeds to allege that Microsoft saved its Hands-Off List in a format that prevented forwarding the document and indicated that the Hands-Off List should not be saved, printed, or emailed.  *Id.* However, Plaintiffs do not make any specific factual allegations that Microsoft avoided *discussing* the Hands-Off List and the non-solicitation agreements over email.

Instead, Plaintiffs' specific factual allegations contradict Plaintiffs' general statements about secrecy.  The First Amended Complaint excerpts numerous emails from Microsoft employees freely discussing the existence and content of the Hands-Off List both within Microsoft and with other companies.  *Id.* ¶¶ 29, 31, 34, 35, 39, 41, 51, 77, 88 (quoting emails from Microsoft employees discussing the Hands-Off List).  For example, in support of Plaintiffs' allegation that Microsoft enforced its anti-solicitation agreements, Plaintiffs quote the following email between Microsoft "recruitment managers" discussing the Hands-Off List: "To confirm first, we will not be hiring from, nor rewarding our employees for, hiring employees of partners on our 'hands off' list." *Id.* ¶ 51.  As evidence of a non-solicitation agreement with Transmeta, Plaintiffs quote an internal Microsoft email stating that the sender would "notify the rest of the recruiters that Transmeta is now considered hands-off." *Id.* ¶ 29.  Rather than indicate that the Hands-Off List should be kept secret, these emails show Microsoft employees documenting and readily discussing the existence and content of the Hands-Off List.[6]

In fact, although Plaintiffs quote from over a dozen emails sent by Microsoft employees about the Hands-Off List, Plaintiffs have not identified any email in which a Microsoft employee

---

[6] Microsoft argues that all of the alleged non-solicitation agreements were unilateral agreements in which Microsoft agreed not to solicit from its partners in order to "protect Microsoft's business partners, customers, vendors, and affiliated companies from Microsoft's recruiting efforts."  *See* ECF No. 67 at 14-16.  Several emails quoted in the First Amended Complaint indicate that the Hands-Off List was a list of Microsoft business partners.  For example, the First Amended Complaints quotes an unidentified Microsoft executive as stating that "[t]he purpose of this list is an internal record for staffing of [Microsoft's] non-solicit commitments to partners & customers [worldwide.]" FAC ¶ 34.  The First Amended Complaint also quotes an email from Dell's CEO to Microsoft asking to discuss entering a non-solicitation agreement in light of "our partnership." *Id.* As stated above, Plaintiffs also quote an email between Microsoft "recruitment managers" confirming that "we will not be hiring from, nor rewarding our employees for, hiring employees of partners on our 'hands off' list." *Id.* ¶ 51.

28

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

marked an email as confidential, stated that the recipient should not forward or discuss the contents of the email, or took efforts to discuss the alleged agreements in code.  The First Amended Complaint contains no examples of efforts by Microsoft personnel to keep discussions about the Hands-Off List confidential.[7]  If anything, the emails suggest that Microsoft readily discussed its non-solicitation agreements to ensure that Microsoft employees adhered to the No-Hire List.  In light of the emails freely discussing the Hands-Off List, the fact that the Hands-Off List itself could not be shared does not amount to affirmative acts by Microsoft to keep the non-solicitation agreements secret.

By comparison, in *Animation Workers II*, the Court found that the plaintiffs had alleged affirmative acts to keep the conspiracy secret.  The *Animation Workers II* plaintiffs alleged that the defendants took efforts to avoid sending emails related to the non-solicitation agreements, to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper trail relating to the agreements by using a code name for the agreements.  2015 WL 4974343 at *19.  These allegations of secrecy in *Animation Workers II* detailed the specific conduct taken by the defendants to disguise the conspiracy.  For example, the complaint in *Animation Workers II* alleged that one of the defendants, Lucasfilm, "made affirmative efforts to eliminate a paper trail regarding its code-named 'DNR' agreements.  In an October 2009 'Recruiting Staff Meeting Summary,' Lucasfilm staff emphasized in bolded, all-caps lettering that all discussions of 'DNR' needed to be conducted over the phone: 'DNR questions CALL Steve.  If you see an email forward to Steve and one of our lawyers.'"  *Animation Workers II*, Second Consolidated Amended Class Action Compl. ¶ 138.

Likewise, in *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014), the plaintiffs alleged that the defendants "instruct[ed] the recipient of documents or emails to destroy, delete, or discard them after reading, instruct[ed]

---

[7] The only example of an effort to keep an email secret is an allegation that Google's CEO, Eric Schmidt, labeled a single email discussing Google's agreements with both eBay and Microsoft with the words "DO NOT FORWARD."  *See* FAC ¶ 89.  The DOJ ultimately brought lawsuits alleging antitrust violations against Google and eBay, but not against Microsoft.  *See* ECF No. 70.

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   personnel to refrain from memorializing conversations, and used code to refer to particular entities

2   or topics." *Id.* at *16 (citations omitted).  The *Lithium Ion* plaintiffs supported their allegations by

3   quoting specific examples of the defendants' affirmative acts to keep the conspiracy secret, such

4   as an email in which the representative of one of the defendants "asked that the recipients of his

5   email . . . 'destroy this e-mail immediately.'"  No. 13-MD-2420-YGR, Second Consolidated

6   Amended Compl., ECF No. 415, ¶ 219.

7         Plaintiffs here, on the other hand, make no allegations of efforts by Microsoft to eliminate

8   a paper trail relating to the alleged non-solicitation agreements.  Plaintiffs do not allege that

9   Microsoft used a code name to refer to the agreements, that Microsoft avoided discussing the

10  agreements over email, or that Microsoft instructed recipients of documents or emails to destroy

11  the documents or emails after reading them.  Plaintiffs' conclusory allegation that Microsoft "took

12  active measures to keep the Secret Agreements secret by . . . ensuring that any written

13  memorialization of the Secret Agreements was not widely disseminated" is belied by Plaintiffs'

14  numerous allegations of emails that Microsoft did not try to keep secret.  The First Amended

15  Complaint includes no allegations of specific conduct comparable to that alleged in *Animation*

16  *Workers II* and *Lithium Ion*.[8]

17

18  _____

19  [8] To the contrary, the purported allegations of efforts by Microsoft to keep information about the
    Hands-Off List secret more closely resembles the allegations in the original *Animation Workers*
20  complaint, which this Court dismissed without prejudice in *In re Animation Workers Antitrust
    Litig. ("Animation Workers I")*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015).  In *Animation Workers I*,
21  this Court found insufficient to plead affirmative concealment the *Animation Workers I* plaintiffs'
    allegations "that [the defendants'] senior human resources directors and senior management
22  discussed the conspiracy in small in-person group meetings, avoided memorializing the scheme in
    writing, and attempted to keep the conspiracy secret from [the plaintiffs]."  87 F. Supp. 3d at 1215.
23  The Court acknowledged that the *Animation Workers I* plaintiffs had made "detailed allegations of
    when and where certain Defendants met and conspired," but the Court concluded that these
24  allegations showed only that the defendants "engaged in a conspiracy, that 'by nature [is] self-
    concealing.'"  *Id.* (quoting *Conmar*, 858 F.2d at 505).  The Court concluded that the plaintiffs
25  failed "to aver any affirmative attempts to mislead 'above and beyond' the existence of the
    conspiracy itself," and thus the secretive conduct alleged amounted to merely passive
26  concealment.  *Id.* (citing *Conmar*, 858 F.2d at 505).  So too here, the fact that the Hands-Off List
    that embodied Microsoft's alleged conspiratorial conduct was not distributed does not show
27  conduct "above and beyond" the existence of the alleged conspiracy itself.  The Court dismissed
    the complaint in *Animation Workers I* on April 3, 2015, over a month before Plaintiffs filed their
28  First Amended Complaint in the instant case.

30

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

*United States District Court*
*Northern District of California*

### 3.  Reasonable Reliance on Public Filings

Plaintiffs' remaining allegation of an affirmative act of concealment is Microsoft's allegedly misleading statements in annual SEC filings and company documents that Microsoft's hiring and compensation were competitive and that Microsoft obeyed all applicable antitrust laws. Microsoft argues that these public statements are insufficient for fraudulent concealment because Plaintiffs could not have reasonably relied upon them.

Plaintiffs do not cite, and the Court is not aware of, any case finding that a defendant's statements in routine public filings that the defendant obeys antitrust laws and participates in a competitive market alone suffice to show fraudulent concealment, absent other evidence that the defendant attempted to conceal its alleged antitrust behavior.  *See* ECF No. 70 at 11.  Rather, in the Ninth Circuit, an affirmative act of denial of wrongdoing constitutes an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable."  *Conmar*, 858 F.2d at 505.

Plaintiffs rely solely upon *Lithium Ion*, 2014 WL 309192, to support their argument that Microsoft's allegedly misleading public statements constitute affirmative acts of fraudulent concealment.  However, *Lithium Ion* did not hold that the defendants' public, putatively false statements were sufficient on their own to support an allegation of fraudulent concealment. Instead, as this Court has previously observed in another case, "[i]t was the combination of those misleading, pretextual statements and the affirmative efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret that supported the respective plaintiffs' fraudulent concealment allegations."  *Animation Workers II*, 2015 WL 4974343, at *18. Similarly, the allegations in *Lithium Ion* that the defendants attempted to conceal their conspiracy by destroying documents, instructing employees not to memorialize conversations, and using code names constituted circumstances that rendered the plaintiffs' reliance on the defendants' public statements reasonable.  *See Lithium Ion*, 2014 WL 309192, at *16 (describing how the *Lithium Ion* defendants "instruct[ed] the recipient of documents or emails to destroy, delete, or discard them after reading, instruct[ed] personnel to refrain from memorializing conversations, and used code to

refer to particular entities or topics"); *see also Conmar*, 858 F.2d at 505 (denial of antitrust violations is an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable").

Similarly, in *Animation Workers II*, the plaintiffs made ample allegations of affirmative acts of fraudulent concealment that rendered reliance upon the defendants' allegedly misleading public filings with the SEC reasonable. 2015 WL 4974343, at *10. These included allegations that the *Animation Workers II* defendants' Human Resources departments were exchanging voluminous information about salary ranges and bonuses and colluding to fix compensation. *Id.* at *6-7. For example, the *Animation Workers II* plaintiffs alleged that the defendants held meetings at which they "set the parameters of a compensation survey" that "provides wage and salary ranges for the studios' technical or artistic positions, broken down by position and experience level." *Id.* at *6. The *Animation Workers II* plaintiffs further alleged that after participating in these meetings fixing compensation, defendant Pixar circulated annual "talking points" memos instructing managers on how to explain compensation. *Id.* at *18-19. The *Animation Workers II* plaintiffs alleged that Pixar's "talking points" memos did not mention Pixar's agreements colluding with Pixar's competitors to fix salary ranges. *Id.* at *18-19. The *Animation Workers II* plaintiffs specifically alleged that the 2007 "talking points" memo instructed managers to explain that "one of the main reasons" compensation increases were low was in order to "fund additional benefit programs," again without mentioning the collusive agreements to fix salary ranges. *Id.* The plaintiffs alleged that Pixar's president similarly sent a company-wide email justifying the modest compensation increases as a result of the company's construction of a new child-care center. *Id.*

The *Animation Workers II* plaintiffs additionally alleged in detail that they had discussed their compensation with specific, named individuals, and the plaintiffs provided the dates, method of communication, and content of these conversations. *Id.* The *Animation Workers II* plaintiffs alleged that in these specifically identified conversations, the individuals with whom they spoke did not mention the collusive salary agreements. *Id.* The *Animation Workers II* plaintiffs alleged

32

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    that the defendants took efforts to avoid sending emails related to the non-solicitation agreements,

2    to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper

3    trail relating to the agreements by using a code name for the agreements.  2015 WL 4974343 at

4    *19.  This Court found that the *Animation Workers II* plaintiffs' allegations in combination were

5    adequate to allege that the defendants provided pretextual explanations to the plaintiffs.  *Id.*  As in

6    *Lithium Ion*, the *Animation Workers II* plaintiffs alleged sufficient circumstances to render reliance

7    upon the allegedly misleading SEC filings reasonable.

8         In the instant case, on the other hand, Plaintiffs have not alleged circumstances that would

9    render their reliance on Microsoft's allegedly misleading public statements reasonable.  Plaintiffs'

10   allegations of allegedly misleading conversations with Microsoft employees and of efforts by

11   Microsoft to conceal the conspiracy during the DOJ investigation do not satisfy Rule 9(b), and

12   Plaintiffs' allegations of efforts to keep the conspiracy secret by avoiding disseminating

13   information about the Hands-Off List is contradicted by the numerous emails quoted by Plaintiffs

14   in which Microsoft freely discussed the Hands-Off List.  *See supra*.  Unlike the plaintiffs in

15   *Animation Workers II* and *Lithium Ion*, Plaintiffs here have not alleged that Microsoft used a code

16   name to refer to the alleged anti-solicitation agreements or that Microsoft instructed employees not

17   to discuss the anti-solicitation agreements by email.  Plaintiffs have not provided a single example

18   of any Microsoft email that was labeled confidential, nor have Plaintiffs identified any email in

19   which the recipient was instructed to destroy, delete, or not to forward the email.  Plaintiffs have

20   not alleged that Microsoft instructed supervisors or Human Resources personnel to respond to

21   inquiries about compensation with a misleading, fraudulent, or pretextual response.  Plaintiffs

22   have not alleged that Microsoft's human resources personnel exchanged compensation range

23   information with competitors.  Plaintiffs have not alleged that Microsoft intentionally provided a

24   false justification for why compensation was not higher, or that Microsoft's supervisors and

25   Human Resources personnel would have known about the effect of the anti-solicitation

26   agreements on compensation.

27         Absent any evidence of specific efforts to provide pretextual justifications for

28
                                                33

1   compensation or to actively prevent disclosure of the agreements, such as that alleged in

2   *Animation Workers II* and *Lithium Ion*, Plaintiffs' remaining allegation that Microsoft represented

3   in public filings that it abides by antitrust laws is inadequate on its own to satisfy Plaintiffs'

4   burden that Microsoft took affirmative acts to fraudulently conceal the alleged conspiracy. *See*

5   *Hexcel*, 681 F.3d at 1060 ("[The plaintiff] carries the burden of pleading and proving fraudulent

6   concealment."); *Conmar*, 858 F.2d at 505 (denial of antitrust violations is an affirmative act of

7   fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial

8   reasonable").[9]  Thus, fraudulent concealment does not delay the accrual of Plaintiffs' claims in this

9   case.

10      Because Plaintiffs have not shown that either a tolling doctrine or an exception to the

11   default accrual rule should apply, the Court concludes that Plaintiffs' Sherman Act claim accrued

12   no later than 2009.  Therefore, the four-year statute of limitations for the Sherman Act claim

13   expired no later than 2013, and Plaintiffs' 2014 Sherman Act claim is time barred.  The Court now

14   turns to Plaintiffs' two arguments that an exception to the California default accrual rule should

15   apply to Plaintiffs' California claims.

16      **F.  The California "Discovery Rule"**

17      Plaintiffs' first argument for the application of a California accrual rule exception is that

18   the Court should apply the "discovery rule" to Plaintiffs' UCL claim.  ECF No. 70 at 8.  The UCL

19   prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code

20

21   _____

22   [9] Other courts have found that misleading statements constitute affirmative acts of fraudulent
     concealment only if Plaintiffs allege actual reliance upon the allegedly misleading statements. *See*
23   *Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047, 1061 (D. Minn. 2014) (finding no fraudulent
     concealment based on allegedly false public statements where plaintiffs did not show that they
24   were aware of the public statements); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090,
     at *23 (D.N.J. Oct. 20, 2011) ("Implicit in the notion that a plaintiff's inquiry was misled or
25   relaxed by an act of concealment is that the plaintiff relied on that act of concealment. . . . Here,
     Plaintiffs make no allegations that they were misled by Defendants' concealment of the alleged
26   conspiracy and therefore have failed to meet the second element of fraudulent concealment."). In
     the instant case, Plaintiffs have not alleged that they read or were aware of Microsoft's Form 10-K
27   SEC filings, let alone that they relied upon any statements made in the Form 10-K filings. *See*
     FAC at 86.  Though the Court need not resolve whether Plaintiffs must allege actual reliance, the
28   Court is skeptical that Plaintiffs could satisfy any such actual reliance requirement.

§ 17200.  Plaintiffs' UCL claim alleges that the following alleged conduct by Defendant constituted "unfair and unlawful competition, unfair, and fraudulent business acts and practices within the meaning of [the UCL]": "(1) creating and carrying out restrictions on trade and commerce; (2) eliminating competition for skilled labor; and (3) fixing compensation of employees at artificially low levels."  FAC ¶ 114.  Plaintiffs' UCL claim additionally alleges that Microsoft engaged in "unfair, unlawful, and or [sic] unconscionable" behavior by entering "Secret Agreements which contained an illegal anti-solicitation agreement and an illegal restrictive hiring agreement to suppress wages of their respective workforce by restricting the ability of their respective employees from attaining employment with the other participants in the Secret Agreements."  *Id.* ¶ 112.  Plaintiffs allege that "Defendant's acts were unfair, unlawful, and or unconscionable, both in their own right and because they violated the Sherman Act and the Cartwright Act as well as California's public policy in favor of competition and employee mobility."  *Id.* ¶ 113.

In California, the discovery rule postpones accrual of a claim until the plaintiff discovers, or has reason to discover, the cause of action."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (internal quotation marks omitted).  In *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1196 (2013), the California Supreme Court held that the UCL does not categorically forbid the application of the discovery rule under appropriate circumstances.  *See id.* at 1196-97.  More specifically, the *Aryeh* court explained that the "UCL is a chameleon," and whether the discovery rule may apply is determined by "the nature of the right sued upon."  *Id.* Under Cal. Code Civ. Proc. § 338(d), the discovery rule applies to fraud actions.  *See E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (Ct. App. 2007) ("By statute, the discovery rule applies to fraud actions. (citing Cal. Code Civ. Proc. § 338(d))).  Thus, the *Aryeh* court held that the discovery rule might be appropriate for UCL claims based on allegations of fraud, but the discovery rule does not apply to UCL claims based purely on allegations of unfair competition.  *See Aryeh*, 55 Cal. 4th at 1196 (citing approvingly *M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 202 Cal. App. 4th 1509, 1531–32 (Ct. App. 2012) (nature of UCL unfair

35

United States District Court
Northern District of California

1    competition claim rendered discovery rule inappropriate)).  For example, the court in *M&F*

2    *Fishing* concluded that the discovery rule did not apply to the plaintiff's UCL claims based on the

3    defendant's failure to provide statutorily required disclosures because the court found that the

4    failure to provide the disclosures was not fraudulent.  202 Cal. App. 4th at 1531-32.

5         As Plaintiffs acknowledge, *see* ECF No. 70 at 8 n.1, this Court has already concluded that

6    the discovery rule does not apply to UCL claims based purely on alleged anticompetitive conduct

7    because an allegation purely of anticompetitive conduct is not an allegation based on fraud or

8    misrepresentation.  *See In re Animation Workers Antitrust Litig. ("Animation Workers I")*, 87 F.

9    Supp. 3d 1195, 1210-11 (N.D. Cal. 2015).  In *Animation Workers I*, the plaintiffs based their UCL

10   claim on the defendants' "efforts to limit competition for and suppress compensation of their

11   employees" and the defendants' agreement "to restrict competition for class members' services

12   through anti-solicitation agreements and agreements to set and fix the compensation of class

13   members."  *See Animation Workers I*, No. 14-CV-4062-LHK, Consolidated Amended Class

14   Action Compl., ECF No. 63, ¶ 143.  The Court concluded that these allegations were allegations

15   purely of anticompetitive conduct and not allegations of fraud.  *Animation Workers I*, 87 F. Supp.

16   3d at 1210-11.  Therefore, the Court held that the discovery rule did not apply to the plaintiffs'

17   UCL claim.  *Id.*

18        In this case, the conduct alleged as the basis for Plaintiffs' UCL claim consists of: "(1)

19   creating and carrying out restrictions on trade and commerce; (2) eliminating competition for

20   skilled labor; and (3) fixing compensation of employees at artificially low levels."  FAC ¶ 114.

21   These allegations are equivalent to the allegations in *Animation Workers I* that the *Animation*

22   *Workers I* defendants took "efforts to limit competition for and suppress compensation of their

23   employees" and "agreed to restrict competition for class members' services through anti-

24   solicitation agreements and agreements to set and fix the compensation of class members."

25   *Animation Workers I*, Consolidated Amended Class Action Compl. ¶ 143.  Like the allegations in

26   *Animation Workers I*, Plaintiffs' allegations for the UCL claim are purely of anticompetitive

27   behavior.

28

Case No. 14-CV-04634-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

Although elsewhere in the FAC Plaintiffs allege that Microsoft engaged in fraudulent concealment, Plaintiffs' UCL claim does not mention fraudulent concealment or any alleged act of fraudulent concealment by Microsoft as a basis for the alleged UCL violation. *See* FAC ¶¶ 110-17 (Plaintiffs' UCL claim). Indeed, Plaintiffs do not specify any fraudulent conduct by Microsoft that violates the UCL. Furthermore, the Court has already held that Plaintiffs have not sufficiently alleged that Microsoft fraudulently concealed its alleged antitrust violations. *See supra*. Thus, the First Amended Complaint does not include allegations of fraudulent concealment to support the application of the discovery rule to the UCL claim.

As in *Animation Workers I*, the default accrual rule and not the discovery rule applies to Plaintiffs' UCL claim. Under the default accrual rule, the UCL claim accrued no later than 2009, the last year in which Microsoft allegedly entered into an agreement that injured Plaintiffs. *See Pooshs*, 51 Cal. 4th at 797 (holding that under the default accrual rule in California, a claim accrues "when [it] is complete with all of its elements—those elements being wrongdoing, harm, and causation")

**G. The California "Continuous Accrual" Rule**

Plaintiffs finally argue that the Court should apply "continuous accrual" to all of Plaintiffs' state law claims. ECF No. 70 at 10. Under the "continuous accrual" doctrine, "a series of wrongs or injuries may be viewed as each triggering its own limitations period." *Aryeh*, 55 Cal. 4th at 1192. "[S]eparate, recurring invasions of the same right can each trigger their own statute of limitations." *Id.* at 1198. "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'" *Id.* at 1199 (quoting *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal. Appl. 4th 1288, 1295 (2003)). Accordingly, California courts have held that disputes regarding monthly billing and payments qualify for continuous accrual, with each month triggering a new limitations period. *See, e.g.*, *Aryeh*, 55 Cal. 4th at 1200-01 (allegations of unlawful charges in monthly bills were recurring obligations); *Tsemetzin v. Coast Fed'l Sav. & Loan Ass'n*, 57 Cal. App. 4th 1334, 1344

37

United States District Court
Northern District of California

1   (1997) (periodic monthly rent payments owed were a recurring obligation); *Armstrong Petroleum*

2   *Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388-89 (2004) (monthly payments on

3   a gas and oil lease created a recurring obligation).  However, if the alleged recurring injuries

4   during the limitations period "arose out of a single transaction" that occurred before the limitations

5   period, the continuous accrual doctrine does not apply.  *State ex rel. Metz v. C.C.C. Info. Servs.,*

6   *Inc.*, 149 Cal. App. 4th 402, 418 (2007).  Thus, allegedly fraudulent statements and admissions

7   following an inaccurate valuation in an insurance claim did not trigger new limitations periods

8   under the continuous accrual doctrine because all of the false statements arose out of the same

9   insurance valuation, which occurred before the limitations period.  *Id.*

10        In the instant case, Plaintiffs allege that Microsoft had "a continuing obligation not to

11   collude with competitors to restrict free competition for engineers and managers."  ECF No. 70 at

12   10.  However, because the First Amended Complaint does not allege any specific new agreements

13   Microsoft entered into after 2009, the First Amended Complaint does not specify any "separate,

14   recurring invasions" of Plaintiffs' rights after 2009.  *See Aryeh*, 55 Cal. 4th at 1198.  The First

15   Amended Complaint alleges no new overt acts after 2009.  Without separate wrongful acts to

16   trigger the statute of limitations, continuous accrual does not apply.  *See id.* at 1192, 1198.

17   Furthermore, Microsoft's continuing obligation to avoid anticompetitive behavior is not a

18   periodic, recurring obligation such as a monthly payment or monthly bill, and as such the

19   continuous accrual doctrine does not apply.  *See Metz*, 149 Cal. App. 4th at 418 (holding that

20   continuous accrual does not apply where "[the plaintiff's] action does not involve a recurring

21   obligation or any such period payment obligations"); *see also Aryeh*, 55 Cal. 4th at 1200-01

22   (applying continuous accrual to dispute over monthly bills); *Tsemetzin*, 57 Cal. App. 4th at 1344

23   (applying continuous accrual to dispute over monthly rent payments); *Armstrong Petroleum*, 116

24   Cal. App. 4th at 1388-89 (applying continuous accrual to dispute over monthly lease payments).

25   The First Amended Complaint contains no allegation of unlawful behavior by Microsoft with

26   regards to any such periodic transaction.  *See* FAC.

27        Because Plaintiffs' claims accrued no later than 2009 and were subject to 4-year statutes of

28
38

1 │ limitations, and because Plaintiffs have not shown that an exception to the statutes of limitations

2 │ or tolling doctrine should apply, Plaintiffs' claims are all untimely.  Therefore, the Court

3 │ GRANTS Defendant Microsoft's motion to dismiss Plaintiffs' First Amended Complaint.

4 │ **H.  Leave to Amend**

5 │        The Court now turns to whether to grant Plaintiffs leave to amend their complaint.  The

6 │ Court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on

7 │ the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

8 │ undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

9 │ amendment."  *See Leadsinger*, 512 F.3d at 532.

10 │        In the instant case, the Court previously dismissed Plaintiffs' claims as untimely and gave

11 │ Plaintiffs an opportunity to amend their complaint to address the Court's timeliness concerns.  *See*

12 │ *Ryan*, 2015 WL 1738352, at *17.  The Court's previous order stated that "failure to cure the

13 │ deficiencies identified in this Order will result in a dismissal with prejudice."  *Id.*  Plaintiffs' First

14 │ Amended Complaint has failed to cure the timeliness deficiencies.  Giving Plaintiffs an additional

15 │ opportunity to amend their complaint to address the statutes of limitations would cause undue

16 │ delay, would unduly prejudice Microsoft by requiring Microsoft to file repeated motions to

17 │ dismiss on timeliness grounds, and would be futile.  Therefore, the Court's dismissal of Plaintiffs'

18 │ First Amended Complaint is with prejudice.  *See Leadsinger*, 512 F.3d at 532.

19 │ **IV.    CONCLUSION**

20 │        For the foregoing reasons, Microsoft's motion to dismiss Plaintiffs' First Amended

21 │ Complaint is GRANTED with prejudice.

22 │ **IT IS SO ORDERED.**

23 │

24 │ Dated: November 23, 2015

25 │                                             _Lucy H. Koh_____

26 │                                             LUCY H. KOH
    │                                             United States District Judge

27 │

28 │                                        39

United States District Court
Northern District of California